1  Howard M. Ehrenberg (CA State Bar No. 125527)
   *hehrenberg@sulmeyerlaw.com*
2  Steven F. Werth (CA State Bar No. 205434)
   *swerth@sulmeyerlaw.com*
3  **Sulmeyer**Kupetz
   A Professional Corporation
4  333 South Hope Street, Thirty-Fifth Floor
   Los Angeles, California 90071-1406
5  Telephone: 213.626.2311
   Facsimile: 213.629.4520
6
   Attorneys for
7  John J. Menchaca, Chapter 7 Trustee

8              **UNITED STATES BANKRUPTCY COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10             **LOS ANGELES DIVISION**

11 In re                          Case No. 2:17-bk-14240-BR

12 SHORB DCE, LLC,                Chapter 7

13         Debtor.               **CHAPTER 7 TRUSTEE'S MOTION FOR
                                 ORDER (1) AUTHORIZING SALE OF 910-
14                               912 WEST SHORB STREET, ALHAMBRA,
                                 CALIFORNIA, FREE AND CLEAR OF
15                               LIENS, CLAIMS, AND INTERESTS; (2)
                                 APPROVING PURCHASE AND SALE
16                               AGREEMENT; (3) ASSUMING AND
                                 ASSIGNING EXECUTORY CONTRACTS
17                               AND LEASES RELATING TO THE
                                 PROPERTY; (4) DETERMINING THAT
18                               BUYERS ARE GOOD FAITH PURCHASERS;
                                 AND (5) WAIVING THE FOURTEEN (14)
19                               DAY STAY PRESCRIBED BY RULE 6004(h)
                                 OF THE FEDERAL RULES OF
20                               BANKRUPTCY PROCEDURE;
                                 MEMORANDUM OF POINTS AND
21                               AUTHORITIES; DECLARATIONS OF JOHN
                                 J. MENCHACA, STEVEN F. WERTH, AND
22                               JAMES QUAN IN SUPPORT THEREOF

23                               [11 U.S.C. §§ 363(b)(1), 541; Fed. R. Bankr. P.
                                 6004]
24
                                 DATE:   To Be Set
25                               TIME:
                                 PLACE:  Courtroom 1668
26                                       Roybal Federal Building
                                         255 East Temple Street
27                                       Los Angeles, California 90012

28

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

SFW\ 2606395.3

1

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................5

I. INTRODUCTION ...........................................................................................................5

II. BACKGROUND .............................................................................................................5

    A.    Introductory Facts ............................................................................................5

    B.    The Property ......................................................................................................6

    C.    The Buyer ..........................................................................................................6

    D.    Liens And Encumbrances Against The Property And Their Proposed
           Treatment Through The Sale.............................................................................6

    E.    Sale And Disposition of Proceeds ....................................................................7

    F.    The Proposed Sale Is Not Subject To Overbid ................................................8

III. THE SALE IS IN THE BEST INTERESTS OF THE ESTATE ....................................9

    A.    Sale of the Property Free and Clear of Liens Under 11 U.S.C. § 363(f) .................10

    B.    Assumption And Assignment Of Leases And Executory Contracts.......................10

    C.    Waiver of the Fourteen-Day Period for Effectiveness of Sale Order ....................11

    D.    Good Faith Purchaser Determination ..........................................................11

    E.    Tax Consequences ..........................................................................................12

IV. THE SALE ENABLES THE TRUSTEE TO PROPERLY DISCHARGE HIS
       FIDUCIARY DUTY TO UNSECURED CREDITORS ....................................................12

V. CONCLUSION ................................................................................................................12

DECLARATION OF JOHN J. MENCHACA..................................................................14

DECLARATION OF STEVEN F. WERTH.....................................................................16

DECLARATION OF JAMES QUAN ..............................................................................18

# TABLE OF AUTHORITIES

**Page**

## CASES

Darby v. Zimmerman (In re Popp)
        323 B.R. 260 (B.A.P. 9th Cir. 2005) ............................................................... 10

## STATUTES

11 U.S.C.
        § 363(b) ............................................................................................................ 11

11 U.S.C.
        § 363(b)(1) ......................................................................................................... 3

11 U.S.C.
        § 363(f)(3) ........................................................................................................ 10

11 U.S.C.
        § 363(m) ......................................................................................................... 3, 11

11 U.S.C.
        § 704(1) ............................................................................................................ 12

## RULES

Fed. R. Bankr. P.
        Rule 6004 ...................................................................................................... 3, 11

Fed. R. Bankr. P.
        Rule 6006 ........................................................................................................... 3

L. Bankr. R.
        Rule 6004-1(c)(2)(B) ......................................................................................... 8

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  **TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE,**

2  **THE OFFICE OF THE UNITED STATES TRUSTEE, THE DEBTOR AND ITS**

3  **COUNSEL, CREDITORS WITH LIENS SECURED BY THE PROPERTY PROPOSED**

4  **TO BE SOLD, ALL CREDITORS, AND PARTIES ENTITLED TO NOTICE:**

5      John J. Menchaca, ("Trustee") the duly-appointed and acting Chapter 7 trustee of the

6  bankruptcy estate ("Estate") of Shorb DCE, LLC ("Trustee"), hereby submits his "Chapter 7

7  Trustee's Motion For Order (1) Authorizing Sale Of 910-912 West Shorb Street, Alhambra,

8  California, Free And Clear Of Liens, Claims, And Interests; (2) Approving Purchase And Sale

9  Agreement; (3) Assuming And Assigning Executory Contracts And Leases Relating To The

10 Property; (4) Determining That Buyers Are Good Faith Purchasers; And (5) Waiving The

11 Fourteen (14) Day Stay Prescribed By Rule 6004(h) Of The Federal Rules Of Bankruptcy

12 Procedure" ("Motion"), and respectfully represents as follows:

13     Through the Motion, the Trustee seeks an order approving the sale ("Sale") of the Estate's

14 sole material asset:  its right, title and interest in real property located at 910-912 West Shorb

15 Street, Alhambra, California 91803 [APN 5350-016-033] ("Property"), and related rights,

16 including security deposits made by tenants at the Property, furniture and fixtures located at the

17 Property, and other personal property located on the Property.  The Trustee seeks to sell the

18 Property on the terms and conditions stated in the "Agreement Of Purchase And Sale And Joint

19 Escrow Instructions," ("Purchase Agreement") between the Trustee and James Quan and Zhong

20 Qiu Li, husband and wife (collectively, "Buyer"), for $2,450,000.00 ("Purchase Price").  A true

21 and correct copy of the Purchase Agreement is attached hereto as **Exhibit 1**.

22     The Sale is not subject to overbid.  The Sale will result in proceeds sufficient to pay all

23 claims in this case, and costs of administration and trustee fees, in full.

24     The Trustee seeks to sell the Property free and clear of all liens, claims, and interests, with

25 said liens, claims, and interests attaching to the Sale proceeds in the amounts set forth in this

26 Motion, which will be paid full out of escrow upon close of the Sale.  The Property is being sold

27 on an "as is, where is" basis, with no warranties, recourse, contingencies, or representations of any

28 kind.

1    The Trustee also seeks an order (i) assuming and assigning all leases relating to the

2   Property to the Buyer (the Property is an 11-unit apartment building which is currently fully

3   occupied by tenants) (ii) determining that the Buyer is entitled to 11 U.S.C. § 363(m) protection;

4   (iii) authorizing payment of costs of Sale from escrow, and (iv) waiving the fourteen (14) day stay

5   prescribed by Rule 6004(h) of the Federal Rules of Bankruptcy Procedure.

6    This Motion is made pursuant to 11 U.S.C. § 363(b)(1) and Federal Rules of Bankruptcy

7   Procedure 6004 and 6006 on the grounds that, as set forth in the attached Declaration of John J.

8   Menchaca, the Trustee believes the Sale is in the best interests of the Estate.  In support of this

9   Motion, the Trustee will rely on these moving papers, the accompanying Memorandum of Points

10  and Authorities, the declarations of John J. Menchaca, Steven F. Werth, and James Quan attached

11  hereto, the exhibits attached to this Motion, the notice of Motion that will be filed when the

12  Trustee learns from the Court the date and time of the hearing on the Motion, Local Rule Form

13  6004-2, the record in this case, all facts and documents that are judicially noticeable and any other

14  or further evidence or arguments presented to the Court prior to or at the hearing on the Motion.

15   Accordingly, the Trustee respectfully requests that this Court enter an order:

16   1.    Granting the Motion;

17   2.    Approving the Sale to the Buyer free and clear of all liens, claims, and

18  encumbrances, with creditors' liens, encumbrances, and claims attaching to the Sale proceeds in

19  the amounts set forth in this Motion;

20   3.    Assuming and assigning all executory contracts and leases relating to the Property

21  to the Buyer;

22   4.    Finding that the Buyer purchased the Property in "good faith," as defined in 11

23  U.S.C. § 363(m);

24   5.    Authorizing the Trustee to execute any documents necessary to implement the

25  terms of the Sale;

26   6.    Providing that the notice given by the Trustee in connection with the Sale and the

27  hearing thereon is proper and complies with all applicable provisions of the Bankruptcy Code and

28  Federal Rules of Bankruptcy Procedure;

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1     7.     Authorizing the payment of the valid liens against the Property in the amounts set

2  forth in the Motion, any unpaid property taxes, and related Sale costs directly from escrow;

3     8.     Waiving the 14-day stay prescribed by Rule 6004(h) of the Federal Rules of

4  Bankruptcy Procedure; and

5     9.     Granting such other and further relief as is just and appropriate.

6  DATED: September 28, 2017       Respectfully submitted,

7         **Sulmeyer**Kupetz
         A Professional Corporation

8

9         By:  _____

10           Steven F. Werth
           Attorneys for John J. Menchaca

11           Chapter 7 Trustee

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SFW\ 2606395.3

4

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

The Trustee seeks an order approving the sale of the Estate's interest in the Property—an 11-unit apartment complex. The Property, and the rents the Trustee obtains from operating the Property, are the sole material asset of the Estate. The Trustee does not seek to sell the Property subject to overbid, but seeks to sell the Property to the Buyer for the fixed price of $2.45 million. The Trustee has investigated the claims against the Estate and believes that the Sale will result in sufficient proceeds to pay all claims against the Estate in full, after payment of all costs of administration as well as the Trustee's fee, with a balance remaining to go to the Debtor after the Sale closes and the Trustee closes this case. The Trustee has not received a higher and better offer to acquire the Property from any party.

Based on the foregoing, the Trustee submits that the Sale is in the best interests of the Estate and its creditors. The Trustee believes all prerequisites for approval of the Sale under applicable provisions of the Bankruptcy Code have been satisfied and respectfully requests that the Court grant the Motion.

### II.

### BACKGROUND

**A.    Introductory Facts**

On April 4, 2017, the Debtor filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code. On June 6, 2017, creditor William B. Wright filed his "Motion Of Secured Creditor William B. Wright To Convert Case To Chapter 7 Pursuant To 11 U.S.C. §1112(b)(1)" [Docket No. 34], which this Court granted on August 30, 2017 [Docket No. 85]. On August 30, 2017, John J. Menchaca was appointed as interim Chapter 7 Trustee of the Debtor's bankruptcy estate (see Docket No. 86), in which capacity he continues to act.

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

**B.    The Property**

The Debtor filed schedules in this case together with its voluntary petition, on April 6, 2017 (Docket No. 1, "Schedules").[1]   The Schedules identify the Debtor's interest in the Property and value it at $2.6 million.  The Schedules do not identify any other assets.

Through his investigation of the Property, his communications with bankruptcy counsel for the Debtor, and his review of relevant documents including the Debtor's Monthly Operating Reports filed in this case, the Trustee has learned that the Property is an 11-unit apartment complex which is fully occupied, and that the Debtor rents the Property to tenants ("Tenants") and collects approximately $10,100 per month from them.  Pending the Sale, the Trustee is operating the Property, but seeks to conduct the Sale as soon as possible to minimize the amount of time that he must operate it.

**C.    The Buyer**

Upon his appointment, the Debtor informed the Trustee that the Debtor had identified the Buyer as interested in acquiring the Property.  The Debtor and the Buyer had not entered into a purchase agreement, however.  The Trustee prepared the Purchase Agreement and that agreement has now been approved by the Buyer as well as A&A Escrow Services, Inc. ("Escrow").  The Trustee is informed and believes that James Quan and Zhong Qiu Li have no connection to the Debtor other than their interest in acquiring the Property and their communications with the Debtor about acquiring the Property.

**D.    Liens And Encumbrances Against The Property And Their Proposed Treatment Through The Sale**

The following chart sets forth the liens and encumbrances against the Property as detailed in the Updated Preliminary Title Report dated as of September 6, 2017 ("Title Report"), a true and

---

[1]    The Trustee requests that the Court take judicial notice of the Schedules pursuant to Federal Rule of Evidence 201.

correct copy of which is attached as **Exhibit 2**, and the proposed treatment of the liens and encumbrances through the Sale:

| **Creditor** | **Description** | **Estimated Amount Owing** | **Treatment of Lien Through Sale** |
|---|---|---|---|
| Metro United Bank/East West Bank | Deed of Trust Recorded March 16, 2007 in the Official Records of Los Angeles County, Instrument No. 07-589536 | $1,124,064 | Upon closing of Sale, lien will be paid in full from Escrow. |
| William B. Wright | Deed of Trust Recorded December 10, 2014 in the Official Records of Los Angeles County, Instrument No. 14-1339689 | $163,655 | Upon closing of Sale, lien will be paid in full from Escrow. |
| James Wang | Deed of Trust Recorded September 29, 2015 in the Official Records of Los Angeles County, Instrument No. 15-1205624 | $71,500 | Upon closing of Sale, lien will be paid in full from Escrow. |
| The Wright Trust Dated 11-19-1984 | Deed of Trust Recorded June 3, 2016 in the Official Records of Los Angeles County, Instrument No. 16-641824 | $13,485 | Upon closing of Sale, lien will be paid in full from Escrow. |
| Los Angeles County Treasurer And Tax Collector | Property Tax Liens | $40,791 | Upon closing of Sale, unpaid tax liens will be paid in full from Escrow. |
| **TOTAL** | | $1,413,495 | |

**E.    Sale And Disposition of Proceeds**

The Buyer has already delivered a deposit of $100,000 to Escrow. The deposit is only refundable to the Buyer under certain circumstances. The Sale shall be free and clear of all liens, claims and other encumbrances. The sale shall close within thirty days of entry of an order approving the Motion, should such approval be obtained. The sale is on an "as is, where is" basis without any warranties or representations from the Trustee. For more details on the proposed sale, the Trustee encourages parties and creditors to review the Purchase Agreement, **Exhibit 1**.

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL  213.626.2311 • FAX  213.629.4520

The Trustee anticipates that the Sale will generate proceeds sufficient to pay all claims in this case, even after costs of administration, which the Trustee estimates as follows:

| Description | Amount |
| --- | --- |
| Sale Price | $2,450,000 |
|  |  |
| Administrative Expense:  Trustee Fee Estimate[2] | $70,400 |
| Administrative Expense:  Trustee's Legal Fees And Costs[3] | $40,000 |
| Administrative Expense:  Accounting Fees[4] | $10,000 |
|  |  |
| **Estimated Net Proceeds To Estate** | $2,329,600 |

### F.    The Proposed Sale Is Not Subject To Overbid

Local Bankruptcy Rule 6004-1(c)(2)(B) requires the Trustee certify that he has not been contacted by any potential overbidder and that there are no viable alternative purchasers.  The Trustee has been contacted by one party interested in acquiring the Property, however the proposed purchase price was less than $2.45 million.  The Trustee has not been contacted by any party willing to bid more than $2.45 million for the Property.  Further, the Sale will result in proceeds substantially in excess of those needed to pay all claims against the Estate, as shown in the chart below:

| Purchase Price | $2,450,000 |
| --- | --- |

---

[2]    The Trustee's commission will not be paid from the Sale, but only after approval by the Bankruptcy Court upon application by the Trustee.

[3]    The Trustee's legal fees and costs will not be paid from the Sale, but only after approval of such fees and costs by the Bankruptcy Court upon application by the Trustee's counsel.

[4]    The Trustee's accounting fees and costs will not be paid from the Sale, but only after approval of such fees and costs by the Bankruptcy Court upon application by the Trustee's accountant.

| | |
|---|---|
| Liens Paid Through Escrow (see II.D. above) | $1,413,495 |
| Costs Of Administration (see II.E. above) | $120,000 |
| Unsecured Claims:  Scheduled Claims | $0.00 |
| Unsecured Claims:  Filed Claims[5] | Approximately $4,600 |
| Unsecured Claims:  Claims Anticipated To Be Filed: | Approximately $180,000 |
| Remaining After Above Payments Are Made | Approximately $730,000 |

The Property possesses substantial equity, far above the amount of claims filed against this Estate or even anticipated to be filed.  As such, the Trustee submits that overbidding is not necessary for the Sale to be in the best interests of the Estate, and that the Sale to the Buyer without overbid is justified under the circumstances.

**III.**

**THE SALE IS IN THE BEST INTERESTS OF THE ESTATE**

The Trustee will give notice of the Motion to the Debtor, the United States Trustee, all known creditors, all creditors who have asserted liens against the Property, the Tenants, and the Buyer.  The Trustee submits that such service constitutes adequate and reasonable notice. Moreover, notice of the sale of the Property will be published on the website for the United States Bankruptcy Court for the Central District of California.

The Sale of the Property was negotiated at arm's length.  There is no fraud, collusion, or insider transaction present here, and the Buyer received no special treatment or consideration.

---

[5] The Franchise Tax Board has filed a proof of claim in the amount of $2,651.87.  The Internal Revenue Service has filed a claim in the amount of $2,000.00.  Other filed claims are identified as secured claims and are already considered in that category.  The Trustee is aware of at least one asserted creditor, Curt Wang, who has informed the Trustee that he will file a proof of claim in the amount of approximately $180,000.

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

**A.** **Sale of the Property Free and Clear of Liens Under 11 U.S.C. § 363(f)**

The Trustee seeks authority to complete the Sale free and clear of all liens, claims, and interests that are not being paid in full or by agreement. 11 U.S.C. § 363(f) allows a trustee to sell property of the bankruptcy estate "free and clear of any interest in such property of an entity," if any one of the following five conditions is met:

> (1)    Applicable non-bankruptcy law permits a sale of such property free and clear of such interest;
>
> (2)    Such entity consents;
>
> (3)    Such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4)    Such interest is in bona fide dispute; or
>
> (5)    Such entity could be compelled, in a legal or equitable proceeding, to accept money satisfaction of such interest.

11 U.S.C. § 363(f).

The Trustee conducted a search of purported holders of liens against the Property in conjunction with the proposed Sale. The Trustee served or will serve such purported lienholders with notice of the Motion, and will serve notice of any Sale order approving the relief requested by the Motion. As set forth in detail in Section II.D above, there are numerous known liens on the Property. All such liens will be paid in full from Escrow, upon close of the Sale.

The Trustee may sell the Property free and clear of these liens pursuant to 11 U.S.C. § 363(f)(3), as they will be paid in full from escrow on the transaction closing date. *See* <u>Darby v. Zimmerman (In re Popp)</u>, 323 B.R. 260 (B.A.P. 9th Cir. 2005) ("Section 363(f)(3) recognizes that a lien holder has an interest in a sale of its collateral, and can successfully oppose the sale if the proceeds do not pay the full amount of debt secured by the property being sold.").

**B.** **Assumption And Assignment Of Leases And Executory Contracts**

The Property is an 11-unit apartment complex which is fully leased by the Tenants. The Debtor has entered into lease agreements with the Tenants, and through the Sale, the Trustee seeks to assume and assign all of these leases to the Buyer. The Trustee is not aware of any cure

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  amounts that will be required to be paid in order to assign these leases.  The Debtor may also be

2  party to certain executory contracts relating to utility services being provided to the Property.  The

3  Trustee seeks to assign these contracts as well, to the extent the Buyer desires to acquire them in

4  connection with the Sale.

### C.    Waiver of the Fourteen-Day Period for Effectiveness of Sale Order

5

6  Rule 6004(h) provides that "An order authorizing the use, sale, or lease of property other

7  than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the

8  court orders otherwise." FRBP 6004(h).  The legislative history to Rule 6004 provides:

9         The court may, in its discretion, order that Rule 6004(g) [now
          6004(h)] is not applicable so that the property may be used, sold, or
10        leased immediately in accordance with the order entered by the
          court.  Alternatively, the court may order that the stay under Rule
11        6004(g) [now 6004(h)] is for a fixed period less than 10 [now 14]
          days.

12

13  Given the notice and full opportunity to object to the Motion, the Trustee believes that,

14  unless there are objections to the Motion that are not consensually resolved, it is appropriate and

15  good cause exists for the Court to order that Rule 6004(h) is not applicable, and the Property may

16  be sold immediately.  The Trustee's goal is to sell the Property as quickly as possible to minimize

17  the time he must operate it.  An expedient conclusion to the Sale process will inure to the benefit

18  of the Estate and its creditors, and minimize the risk that exists whenever a trustee operates a

19  debtor's business pending a sale.

### D.    Good Faith Purchaser Determination

20

21  The proposed Buyer is a good faith purchaser entitled to the protections of § 363(m).  The

22  Trustee negotiated at arm's length with the Buyer regarding the terms of the Purchase Agreement,

23  which the Buyer had not previously agreed to (other than the Sale price) when communicated with

24  the Debtor regarding purchase of the Property.  The proposed Sale is not predicated on fraud or

25  collusion, and the Buyer is not an insider.  Based upon the foregoing, the Trustee submits that the

26  Motion satisfies the standards for approval of a Sale of the Property outside of the ordinary course

27  of business pursuant to § 363(b), and good cause exists to make a finding that the Buyer is

28  purchasing the Property in "good faith" pursuant to § 363(m).

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

E.    **Tax Consequences**

As the Debtor is a limited liability company, all income taxes arising as a result of the Sale will be paid by the Debtor's owners, and will not become a liability to the Estate.  The Debtor will be liable for an LLC Tax of $800 and an LLC Fee of $6,000.

## IV.

## THE SALE ENABLES THE TRUSTEE TO PROPERLY DISCHARGE HIS FIDUCIARY DUTY TO UNSECURED CREDITORS

Section 704 of the Bankruptcy Code requires the Trustee to do the following:

> collect and reduce to money the property of the estate
> for which such trustee serves, and close such estate as
> expeditiously as is compatible with the best interests
> of parties in interest.

11 U.S.C. § 704(1).  With this goal in mind, the Trustee determined that the proposed Sale is the best option to pay claims of the Estate in full and promptly.  Additionally, the Trustee believes that the Purchase Price is fair and reasonable.  For the foregoing reasons, the Trustee respectfully submits that the Sale is in the best interests of the Estate and the creditors.

## V.

## CONCLUSION

Based on the foregoing, the Trustee respectfully requests that the Court enter an order as follows:

1.    Granting the Motion;

2.    Approving the Sale of the Property to Buyer free and clear of all liens, encumbrances, and claims, with creditors' liens, encumbrances and claims attaching to the Sale proceeds;

3.    Assuming and assigning all executory contracts and leases relating to the Property to the Buyer;

4.    Finding that the Buyer or the successful overbidder purchased the Property in "good faith," as defined in 11 U.S.C. § 363(m);

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1       5.      Providing that the Trustee is authorized to execute and deliver on behalf of the

2  Estate any documents as may be necessary to implement the terms of the Sale;

3       6.      Providing that the notice given by the Trustee in connection with the Sale and the

4  hearing thereon is adequate and complies with all applicable provisions of the Bankruptcy Code

5  and Federal Rules of Bankruptcy Procedure;

6       7.      Authorizing the payment directly from escrow of the liens against the Property.

7       8.      Authorizing the payment of any unpaid property taxes and related Sale costs

8  directly from escrow;

9       9.      Waiving the 14-day stay prescribed by Rule 6004(h) of the Federal Rules of

10  Bankruptcy Procedure; and

11       10.      Granting such other and further relief as is just and appropriate.

12

13  DATED: September 28, 2017          Respectfully submitted,

14                **Sulmeyer**Kupetz

15                A Professional Corporation

16            By: _____

17                Steven F. Werth

18                Attorneys for John J. Menchaca
              Chapter 7 Trustee

19

20

21

22

23

24

25

26

27

28

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

SFW\ 2606395.3

13

## DECLARATION OF JOHN J. MENCHACA

I, John J. Menchaca, declare as follows:

1.      I am an individual over the age of eighteen, and I am the duly appointed, qualified and acting Chapter 7 trustee of the bankruptcy estate of Shorb DCE, LLC.

2.      Unless otherwise stated, the facts set forth in this declaration are personally known to me and if called as a witness, I could and would competently testify thereto.

3.      I make this declaration in support of the "Chapter 7 Trustee's Motion For Order (1) Authorizing Sale Of 910-912 West Shorb Street, Alhambra, California, Free And Clear Of Liens, Claims, And Interests; (2) Approving Purchase And Sale Agreement; (3) Assuming And Assigning Executory Contracts And Leases Relating To The Property; (4) Determining That Buyers Are Good Faith Purchasers; And (5) Waiving The Fourteen (14) Day Stay Prescribed By Rule 6004(h) Of The Federal Rules Of Bankruptcy Procedure" (the "Motion").  Capitalized terms not defined in this declaration have the meaning given them in the Motion.

4.      Through my investigation of the Property, my communications with the Debtor, and my review of relevant documents including the Debtor's Monthly Operating Reports filed in this case, the Trustee I have learned that the Property is an 11-unit apartment complex which is fully occupied, and that the Debtor rents the Property to tenants and collects approximately $10,100 per month from them.  Pending the Sale, I am operating the Property, but I seek to conduct the Sale as soon as possible to minimize the amount of time that I must do so.

5.      Upon my appointment, the Debtor informed me that the Buyer was interested in acquiring the Property.  There was no written purchase agreement between the Buyer and the Debtor at the time of my appointment.

6.      As the Debtor is a limited liability company, all income taxes arising as a result of the Sale will be paid by the Debtor's owners, and will not become a liability to the Estate.  The Debtor will be liable for an LLC Tax of $800 and an LLC Fee of $6,000.

7.      To the best of my knowledge, I do not have any connection or relationship with the Buyer.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    8.    To the best of my knowledge, Buyer does not have any connection or relationship

2  with the Debtor or me.

3    9.    I believe that it is in the best interest of the Estate to proceed with the Sale to the

4  Buyer for the sum of $2,450,000.00, without overbid.

5    I declare under penalty of perjury under the laws of the United States of America that the

6  foregoing is true and correct.

7    Executed September 27, 2017, at Los Angeles, California.

8

9                                                        _____

10                                                       John J. Menchaca
                                                         Chapter 7 Trustee
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

## <u>DECLARATION OF STEVEN F. WERTH</u>

I, Steven F. Werth, declare as follows:

1.      I am over the age of eighteen.  I have personal knowledge of the information contained herein and if called upon to testify, I could and would competently testify thereto.

2.      Unless otherwise stated, the facts set forth in this declaration are personally known to me and if called as a witness, I could and would competently testify thereto.

3.      I make this declaration in support of the "Chapter 7 Trustee's Motion For Order (1) Authorizing Sale Of 910-912 West Shorb Street, Alhambra, California, Free And Clear Of Liens, Claims, And Interests; (2) Approving Purchase And Sale Agreement; (3) Assuming And Assigning Executory Contracts And Leases Relating To The Property; (4) Determining That Buyers Are Good Faith Purchasers; And (5) Waiving The Fourteen (14) Day Stay Prescribed By Rule 6004(h) Of The Federal Rules Of Bankruptcy Procedure" (the "<u>Motion</u>").  Capitalized terms not defined in this declaration have the meaning given them in the Motion.

4.      I am one of the attorneys at **Sulmeyer**Kupetz, A Professional Corporation, primarily involved in representing the Trustee in this bankruptcy case.  I am familiar with the facts of the Sale and have communicated with the Debtor through his proposed counsel and with the Buyer regarding the Property, the Sale, and the terms of the Sale.

5.      I prepared the Purchase Agreement.  A true and correct copy of the Purchase Agreement is attached hereto as **<u>Exhibit 1</u>**.

6.      I have reviewed all the scheduled and filed claims in this case, and have communicated with the Trustee regarding potential administrative claims and other costs of administration that could arise in this case.  The amounts of those claims, and costs, to the best of my understanding, are as set forth in the Motion.  Based upon these claims, the Sale will result in a significant amount of excess proceeds even after payment of all claims, administrative expenses, and trustee fees.

7.      I have spoken on numerous occasions with James Quan.  Certain of those discussions involved the terms of the Purchase Agreement, and I made certain changes to the Purchase Agreement based upon Mr. Quan's requests.  I believe, based on those communications,

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  that the Buyer has no connection to the Debtor other than their interest in acquiring the Property

2  and their communications with the Debtor about acquiring the Property.

3       8.      I am aware of one other person who has expressed an interest in acquiring the

4  Property. Curt Wang offered to purchase the Property, but for less than the amount that the Buyer

5  offered to purchase the Property. I have not communicated with any other party interested in

6  acquiring the Property, and I am not aware of any other person or entity who has made an offer to

7  acquire the Property.

8       9.      I have reviewed the Title Report, a true and correct copy of which is attached as

9  **Exhibit 2**, and believe that the Motion accurately identifies all holders of liens against the

10  Property. To the extent that additional liens are discovered prior to the hearing on the Motion,

11  those will be identified prior to the hearing on the Motion.

12       10.     I am informed and believe that the Tenants have entered into leases relating to the

13  Property. I am also informed and believe that these Tenants have made security deposits relating

14  to these leases, and that the Buyer by the Purchase Agreement seeks to acquire both the leases

15  (through an assignment) as well as the Tenants' security deposits.

16       I declare under penalty of perjury under the laws of the United States of America that the

17  foregoing is true and correct.

18       Executed September 28, 2017, at Los Angeles, California.

20                                        Steven F. Werth

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SulmeyerKupetz,** A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

## **DECLARATION OF JAMES QUAN**

I, James Quan, declare as follows:

1.    I am over the age of eighteen.  I have personal knowledge of the information contained herein and if called upon to testify, I could and would competently testify thereto.

2.    I make this declaration in support of the "Chapter 7 Trustee's Motion For Order (1) Authorizing Sale Of 910-912 West Shorb Street, Alhambra, California, Free And Clear Of Liens, Claims, And Interests; (2) Approving Purchase And Sale Agreement; (3) Assuming And Assigning Executory Contracts And Leases Relating To The Property; (4) Determining That Buyers Are Good Faith Purchasers; And (5) Waiving The Fourteen (14) Day Stay Prescribed By Rule 6004(h) Of The Federal Rules Of Bankruptcy Procedure" (the "Motion").  Capitalized terms not defined in this declaration have the meaning given them in the Motion.

3.    My wife and I desire to purchase the Property, as set forth in the Purchase Agreement.  My wife and I have executed the Purchase Agreement, a true and correct copy of which is attached hereto as Exhibit 1.

4.    Neither I nor may wife are a relative of any officer, director, owner, or affiliate of the Debtor.  Prior to communicating with the Debtor regarding my interest in acquiring the Property, I had never spoken to the Debtor before.

5.    I have not communicated with any other prospective or actual bidders in connection with my purchase of the Property.  I have not communicated with any party in an effort to prevent other parties from making an offer to acquire the Property.

6.    I have not entered into any arrangement that is not disclosed in the Motion or the Purchase Agreement, with any party, relating to the Sale.  I have not entered into any agreement with any officer, director, owner, or affiliate of the Debtor regarding the Property other than that which is disclosed in the Purchase Agreement.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

SFW\ 2606395.3

1    Executed September 28, 2017, at Los Angeles, California.

2

3    _____

4    James Quan

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

# EXHIBIT 1

# AGREEMENT OF PURCHASE AND SALE
# AND
# <u>JOINT ESCROW INSTRUCTIONS</u>

TO:   A&A Escrow Services, Inc.        Escrow No.: _____
      415 N. Crescent Drive, Suite 320    Escrow Officer: _____
      Beverly Hills, CA 90210         Title Order No. _____
      (“***Escrow Holder***”)          Title Officer: _____

THIS AGREEMENT OF PURCHASE AND SALE AND JOINT ESCROW INSTRUCTIONS
(“***Agreement***”), dated for reference September 21, 2017 (“***Effective Date***”), is made by and among
John J. Menchaca, in his sole and limited capacity as chapter 7 trustee  (“***Trustee***” or “***Seller***”*)* for
the estate of the debtor Shorb DCE, LLC (“***Debtor***”), and James Quan and Zhong Qiu Li, husband
and wife (collectively, “***Buyer***”) with reference to the following:

      A.     Trustee is the trustee in chapter 7 Case No.: 2:17-bk-14240-BR (“***Case***”), which is
pending in the United States Bankruptcy Court, Central District of California, Los Angeles
Division (“***Bankruptcy Court***”).  In connection with the Case, the Debtor owns improved
real property located in the State of California, County of Los Angeles, consisting of land
(“***Land***” which is described on **<u>Exhibit A</u>** attached hereto) bearing APN No. 5350-016-
033, commonly known as and located at 910-912 West Shorb Street, Alhambra, California,
91803, improved with a +/- 9,017 square foot, 11-unit apartment building on 13,733 square
feet of land, associated parking areas, and all other improvements located thereon or
appurtenant thereto (the “***Improvements***”), together with all rights and appurtenances
including:  (a) any easements, right-of-ways, rights of ingress or egress and other interests
in, on or to any land, highway, street, road or avenue, open or proposed in, on, across from,
in front of, abutting or adjoining the Land; (b) all plans, drawings, surveys and reports
pertaining to the Land and Improvements which were or shall be prepared by consultants,
agents, architects, engineers or surveyors for the inspection, testing, investigation, design,
planning or development of the Land or Improvements (collectively herein referred to as
the “***Plans and Reports***”); (c) any valid and enforceable leases (the “***Leases***”) including
any security deposits therefor and any prepaid rents; (d) all easements, licenses,
development rights, entitlements, permits (grading, foundation, building or otherwise), and
air rights, water and water rights to the extent that any such items are appurtenant to the
Land; and (e) all furniture, fixtures, appliances, equipment, machinery, furnishings,
supplies and any and all other personal property owned by Seller, located on the Land, or
which are used exclusively in connection with the Land or Improvements (the “***Personal
Property***”, and together with the Land, Improvements, Plans and Reports, and Leases, the
“***Property***.”).

B.     Seller desires to sell all of Seller's right, title, and interest in and to the Property to Buyer and Buyer desires to purchase all of Seller's right, title, and interest in and to the Property from Seller upon the terms and subject to the conditions hereinafter set forth.

**NOW THEREFORE**, in consideration of the mutual covenants and agreements herein contained and for other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, Seller and Buyer hereby agree that the terms and conditions of this Agreement and the instructions to Escrow Holder with regard to the escrow (the "***Escrow***") created pursuant hereto are as follows:

## AGREEMENT

1.     <u>**Purchase and Sale.**</u>   Subject to the entry of the Approval Order (as defined below) by the Bankruptcy Court, Seller agrees to sell, transfer, and convey to Buyer, and Buyer agrees to purchase from Seller all of Seller's right, title, and interest in and to the Property on an "as-is, where is" basis, upon the terms and conditions of this Agreement, subject to Conditions of Title (as defined below).   Seller also agrees to assign the Leases to the Buyer as of the Closing Date.

2.     <u>**Purchase Price; Payment of Purchase Price.**</u>   The purchase price ("***Purchase Price***") for the Property shall be the sum of Two Million Four Hundred Fifty Thousand Dollars, and Zero Cents ($2,450,000.00). The Purchase Price for the Property shall be paid by Buyer as follows:

(a)     Within two (2) Business Days (as defined at Section 20(m) below) after execution of this Agreement, to the extent the Buyer has not already done so, Buyer shall deposit or cause to be deposited with Escrow Holder the sum of One Hundred Thousand Dollars and Zero Cents ($100,000.00) in immediately available funds; such sum, along with all interest accrued thereon, shall be referred to herein as the "***Deposit***." The Deposit shall be deposited by Escrow Holder in an interest bearing account and shall be refundable to Buyer if Buyer terminates this Agreement in accordance with Buyer's right to do so under Section 16 below.   The Deposit shall be applicable to the Purchase Price upon the Closing (as defined in Section 3(b) below).

**BUYER AND SELLER AGREE THAT BASED UPON THE CIRCUMSTANCES NOW EXISTING, KNOWN OR UNKNOWN, IT WOULD BE IMPRACTICAL OR EXTREMELY DIFFICULT TO ESTABLISH SELLER'S DAMAGE BY REASON OF BUYER'S DEFAULT**

2

**UNDER THIS AGREEMENT AND FAILURE TO CLOSE ESCROW. ACCORDINGLY, BUYER AND SELLER AGREE THAT IN THE EVENT OF DEFAULT AND FAILURE TO CLOSE ESCROW BY BUYER UNDER THIS AGREEMENT, IT WOULD BE REASONABLE AT SUCH TIME TO AWARD SELLER, AS SELLER'S SOLE AND EXCLUSIVE REMEDY AT LAW, "LIQUIDATED DAMAGES" EQUAL TO THE AMOUNT REPRESENTED BY THE DEPOSIT.   THEREFORE, IF BUYER COMMITS A DEFAULT UNDER THIS AGREEMENT AND FAILS TO CLOSE ESCROW, SELLER MAY INSTRUCT ESCROW HOLDER TO CANCEL THE ESCROW WHEREUPON ESCROW HOLDER SHALL IMMEDIATELY PAY OVER TO SELLER THE DEPOSIT HELD BY ESCROW HOLDER AND SELLER SHALL BE RELIEVED FROM ALL OBLIGATIONS AND LIABILITIES HEREUNDER, AND, PROMPTLY FOLLOWING ESCROW HOLDER'S RECEIPT OF SUCH INSTRUCTION, ESCROW HOLDER SHALL CANCEL THE ESCROW.**

Seller Initials                    Buyer Initials

(b)  On or prior to Closing, Buyer shall deposit or cause to be deposited with Escrow Holder in immediately available funds the sum of Two Million Three Hundred Fifty Thousand Dollars ($2,350,000), plus Escrow Holder's estimate of Buyer's share of closing costs, prorations and charges payable pursuant to this Agreement.

3.   **Escrow.**

(a)  Opening of Escrow.    For purposes of this Agreement, Escrow shall be deemed opened on the date Escrow Holder shall have received a fully executed original or originally executed counterparts of this Agreement from Seller and Buyer (the "*Opening of Escrow*"), and Escrow Holder shall notify Buyer and Seller, in writing, of the date Escrow is opened and provide each of the parties hereto with a full set of signature pages to this Agreement.   Buyer and Seller agree to execute, deliver and be bound by any reasonable and customary supplemental escrow instructions of Escrow Holder or other instruments as may reasonably be required by Escrow Holder in order to consummate the transaction contemplated by this Agreement; provided, however, that any such supplemental instructions shall not conflict with, amend or supersede any portions of this Agreement.   To the extent of any inconsistency between the provisions of such supplemental instructions and the provisions of this Agreement, the provisions of this Agreement shall control.

3

(b)     Closing.   For purposes of this Agreement, the "**Closing**" shall be defined as the date that the grant deed ("**Grant Deed**"), the form of which is attached hereto as **Exhibit B**, is recorded in the Official Records of the Los Angeles County, California Recorder's Office (the "**Official Records**").  This Escrow shall close on or before thirty (30) days after entry of the Approval Order (the "**Closing Date**"), provided the Approval Order is not subject to a stay.  If the Approval Order is subject to a stay, the Closing Date shall occur on or before fifteen (15) calendar days from the date the stay is lifted.

4.     **Title Review; Condition of Title.**

(a)     Title Review.  Within three (3) Business Days after the Opening of Escrow, Seller shall deliver or cause Escrow Holder to deliver to Buyer a preliminary title report for the Property, together with copies of all instruments and documents referred to therein and all easements plotted (the preliminary title report together with such other instruments is herein collectively called the "**Preliminary Report**").  On or before 15 calendar days after the Effective Date (the "**Title Objection Date**"), Buyer shall approve or disapprove the title matters as set forth in the Preliminary Report. Buyer shall determine whether or not the Preliminary Report is acceptable in Buyer's sole discretion.  If Buyer fails to give notice of its disapproval of the Preliminary Report or its election pursuant to the foregoing sentence on or before the Title Objection Date, then Buyer shall be deemed to have approved of the Preliminary Report in whole.

(b)     Condition of the Property.  Buyer acknowledges having had the opportunity to review and investigate, in its sole discretion, all aspects as to the condition of the Property, including the Improvements, the soil, groundwater, and suitability for Buyer's intended use, and Buyer expressly acknowledges and agrees that Buyer is purchasing the Property on an "as is, where is" basis, that neither Seller or any Person has made any representations, warranties, covenants or agreements of whatsoever kind and nature concerning the Property, including, without limitation, its merchantability, condition or use, which are not expressly set forth herein.  As such, there are no such conditions to Buyer's obligation to consummate the transaction contemplated herein.  Buyer further acknowledges and agrees that Buyer has retained independent counsel and advisors, and has had the opportunity to review and discuss this Agreement and the other Transaction Documents (as defined below), and understands the terms and conditions set forth in the Transaction Documents and the status and condition of the Property, all prior to entering into this Agreement and the other Transaction Documents. To the extent that Buyer has not undertaken investigations or other forms of due diligence in

4

regard to the condition of the Property, Buyer hereby expressly acknowledges that Buyer is relying solely on Buyer's own due diligence and investigations, and further expressly waives any and all claims and causes of action of whatsoever kind and nature as to any matters which may have been disclosed if such investigations were undertaken.

**5.**    **Conditions to Closing.**

(a)    <u>Conditions to Buyer's Obligations</u>.    Buyer's obligation to consummate the transaction contemplated by this Agreement is subject to the satisfaction of the following conditions for Buyer's benefit (or Buyer's waiver thereof, it being agreed that Buyer may waive any or all of such conditions) on or prior to the dates designated below for the satisfaction of such conditions.

(i)    The Bankruptcy Court shall have entered the Approval Order (defined below), which order shall not be subject to any stay, approving the Sale Motion (as defined below) and approving and authorizing Seller to implement this Agreement and the other Transaction Documents.  Seller shall upon execution of this Agreement file a motion seeking authorization of, among other things, the sale of the Property pursuant to this Agreement (the "***Sale Motion***").  Seller must obtain an order on the Sale Motion (the "***Approval Order***"), which shall not be subject to a stay, in a form that, among other things, (A) authorizes Buyer and Seller to enter into such documents and agreements as may be necessary to implement such transaction (the "***Transaction Documents***"); (B) approves and authorizes pursuant to Sections 105, 363, 365 and any other applicable provisions of the Bankruptcy Code the sale and transfer of the Property to Buyer free and clear of liens, liabilities, adverse claims of ownership and other interests of any kind and nature, with such liens, liabilities, adverse claims of ownership and other interests, if any, to attach to the proceeds of the sale; and (C) contains a finding that Buyer's purchase of the Property constitutes a purchase in good faith within the meaning of Section 363(m) of the Bankruptcy Code and that Buyer is entitled to have the protections afforded by that section.

(ii)    Escrow Holder in its capacity as title insurer ("***Title Company***") shall be irrevocably committed to issue an ALTA extended coverage owner's policy of title insurance ("***Title Policy***"), dated the day and time of the Closing, with liability in an amount equal to the Purchase Price, showing title to the Land vested in Buyer.

(iii)   All representations and warranties of Seller expressly set forth in this Agreement are true and correct as of the Closing Date; and

(iv)   Seller shall have delivered to or for the benefit of Buyer all of Seller's Deliverables (as defined at Section 6 below), and otherwise timely performed all of the obligations required by the terms of this Agreement to be performed by Seller.

(b)   <u>Conditions to Seller's Obligations.</u> Seller's obligation to consummate the transaction contemplated by this Agreement is subject to the satisfaction of the following conditions for Seller's benefit (or Seller's waiver thereof, it being agreed that Seller may waive any or all of such conditions) on or prior to the dates designated below for the satisfaction of such conditions.

(i)   The Bankruptcy Court shall have entered the Approval Order which shall not be subject to any stay.

(ii)   No action, suit or other proceeding shall be pending before any court, tribunal or governmental authority restraining or prohibiting the consummation of the transaction contemplated by this Agreement, or seeking to obtain substantial damages in respect thereof;

(iii)   All representations and warranties of Buyer expressly set forth in this Agreement are true and correct as of the Closing Date; and

(iv)   Buyer shall have performed all of the obligations required by the terms of this Agreement.

**6.**   **Deposits by Seller.**  At or prior to the Closing, Seller shall deposit or cause to be deposited with Escrow Holder the following documents and instruments ("*Seller's Deliverables*"), each of which shall have been duly executed and, where applicable, acknowledged and/or sworn on behalf of Seller and shall be dated as of the Closing Date:

(a)   the Grant Deed in the form of **Exhibit B** attached hereto;

(b)   the Seller Certificate in the form of **Exhibit C** attached hereto;

(c)   an Assignment and Assumption of Leases (the "*Assignment of Leases*") in the form of **Exhibit F** attached hereto;

6

(d)     a Bill of Sale and Assignment Agreement (the "***Bill of Sale***") in the form of **Exhibit E** attached hereto pursuant to which Seller transfers and assigns to Buyer all right, title and interest of Seller in and to all tangible and intangible Personal Property associated with the Property free and clear of liens and encumbrances; and

(e)     any other documents reasonably required by the Title Company.

7.     **Deposits by Buyer.**     At or prior to the Closing, (a) Buyer shall deposit or cause to be deposited with Escrow Holder the amounts as set forth in Section 2(a) and 2(b) above, (b) Buyer shall execute and deliver for the benefit of Seller the Buyer's Certificate, the form of which is attached hereto as **Exhibit D**, (c) Buyer shall deposit or cause to be deposited with Escrow Holder a duly executed Assignment of Leases in the form of **Exhibit F** attached hereto, and (d) Buyer shall deposit or cause to be deposited with Escrow Holder a duly executed Bill of Sale in the form of **Exhibit E** attached hereto.

8.     **Taxes; Costs and Expenses.**     The cost of the Title Policy and all documentary transfer taxes and recording fees payable in connection with the recordation of the Grant Deed, and all taxes, fees, charges, costs and liabilities due in connection with the sale of the Property (other than income taxes due by Seller in connection with said sale) shall be the obligation of and promptly paid by Seller.  The escrow fee of Escrow Holder shall be shared equally by Seller and Buyer.  Buyer and Seller shall pay, respectively, the Escrow Holder's reasonable and customary charges to buyers and sellers for document drafting and miscellaneous charges, which charges have been approved in advance in writing by each of Buyer and Seller prior to the Closing.

9.     **Allocation; Fair Consideration**.  If requested by Buyer, within thirty (30) days following the Closing Date, Seller shall allocate the Purchase Price among the Land and Improvements, and provide Buyer with a copy of such allocation (the "***Purchase Price Allocation***").  Seller and Buyer shall be bound by such allocation for all purposes, shall prepare and file (or cause to be prepared and filed) all tax returns in a manner consistent with such allocations, including the United States Internal Revenue Service (the "***IRS***") Form 8594, and shall not take any position inconsistent with such allocations in any tax return, proceeding before any governmental authority or otherwise.  The parties acknowledge and agree that the Purchase Price represents fair consideration and reasonable equivalent value for the sale and transfer of the Property, and the transactions, covenants, and agreements set forth in this Agreement, which consideration was agreed upon as the result of arm's-length good-faith negotiations among the parties and their respective representatives.

7

10. **Prorations.**  Real property taxes and assessments, utilities, and the like, shall be prorated as of Closing Date.  Within a reasonable time not to exceed thirty (30) days from the Closing Date, Buyer shall pay to Seller in immediately available funds the balance of the amounts owing with respect to such prorations.

11. **Disbursements and Other Actions by Escrow Holder.**  Upon the Closing, Escrow Holder shall promptly undertake all of the following in the manner indicated:

   (a)   Recording.   Cause the Grant Deed and any other documents which the parties hereto may mutually direct, to be recorded in the Official Records, in the order directed by such parties.

   (b)   Closing Statement.  Escrow Holder shall generate and circulate to each of Buyer and Seller a written closing statement ("*Closing Statement*"), listing, among other things, the flow of funds, and require that each of the Buyer and Seller execute and deliver said Closing Statement as a condition of Closing.

   (c)   Funds.  Pursuant to the Closing Statement, disburse to Seller (or such other parties as Seller may direct Escrow Holder) all funds deposited by Buyer with Escrow Holder towards payment of the Purchase Price.

   (c)   Title Policy.   Direct the Title Company to issue the Title Policy to Buyer.

12. **Seller Representations and Warranties.**   In consideration of Buyer entering into this Agreement and as an inducement to Buyer to purchase the Property from Seller subject to the terms and conditions hereof, Seller hereby makes the following representations and warranties to Buyer as of the Effective Date of this Agreement:

   (a)   Subject to the Approval Order, Seller (i) has the power and authority to enter into this Agreement and to consummate the transactions contemplated herein, (ii) this Agreement and all instruments, documents and agreements to be executed by Seller in connection therewith are or when delivered will be duly authorized, executed and delivered by Seller and will be valid, binding and enforceable obligations of Seller, and (iii) to Seller's knowledge, no other action by Seller is requisite to the valid and binding execution, delivery and performance by Seller of its obligations under this Agreement, except as expressly set forth in this Agreement and/or the Approval Order, and

   (b)   Subject to the Approval Order, and to Seller's knowledge, there is no pending or threatened  litigation,  proceedings,  or  special  assessments,  investigations,  or

8

condemnation or eminent domain proceedings excepting the Case pending in the Bankruptcy Court, affecting Seller or the Property, which would materially and adversely affect Buyer's ownership of the Property.

As used herein, the phrase or term: *"**To Seller's knowledge**"* means the actual (and not constructive or imputed) knowledge, without independent investigation or inquiry, of John J. Menchaca, solely in his capacity as chapter 7 trustee.

13.  **Buyer's Representations and Warranties.**   In consideration of Seller entering into this Agreement and as an inducement to Seller to consummate the transactions contemplated herein, Buyer hereby makes the following representations and warranties to Seller as of the Effective Date of this Agreement:

(a)    This Agreement and such other Transaction Documents have been duly and validly executed and delivered on behalf of Buyer and constitute the valid and legally binding obligations of Buyer and are enforceable, subject to the Approval Order and general equity principles, in accordance with their respective terms.

(b)    Neither the execution and delivery of this Agreement or such Transaction Documents, nor the consummation of the transactions hereby or thereby contemplated, will constitute a violation or breach of any provision of any contract or other instrument to which Buyer is a party or by which any of the assets of such Buyer may be affected or secured, or any order, writ, injunction, decree, statute, rule, or regulation to which Buyer is subject, or will result in the creation of any lien, charge, or encumbrance on any of the assets of Seller or Buyer (other than a lien arising from and after the Closing recorded against the Property).

(c)    The execution and delivery by Buyer of this Agreement and the other Transaction Documents, and the consummation of the transactions contemplated hereby and thereby in accordance with the Approval Order, will not, to such Buyer's knowledge, require the consent, approval or action of, or any filing with or notice to, any Person or any public, governmental, judicial, or regulatory authority, other than the Bankruptcy Court.

(d)    Buyer expressly acknowledges and agrees that Buyer has the necessary liquid funds to make the payment identified in Section 2(a), and that it anticipates that it will have the funds necessary to make the payment identified in Section 2(b).

9

(e)     There are no actions, suits, claims, investigations, hearings, or proceedings of any type pending (or, to the knowledge of Buyer, threatened), at law or in equity, that might affect Buyer's ability to close the transaction contemplated hereby.

(f)     **IT IS UNDERSTOOD AND AGREED THAT SELLER IS NOT MAKING AND HAS NOT AT ANY TIME MADE ANY WARRANTIES OR REPRESENTATIONS OF ANY KIND WITH RESPECT TO THE PROPERTY AND/OR THE CONDITIONS OF TITLE. BUYER ACKNOWLEDGES AND AGREES THAT, UPON THE CLOSING, SELLER SHALL SELL AND CONVEY TO BUYER, AND BUYER SHALL ACCEPT, THE PROPERTY SUBJECT TO THE CONDITIONS OF TITLE, "AS IS, WHERE IS, WITH ALL FAULTS." FURTHER, BUYER HAS NOT RELIED AND WILL NOT RELY ON, AND SELLER IS NOT LIABLE FOR OR BOUND BY, ANY EXPRESS OR IMPLIED WARRANTIES, GUARANTEES, STATEMENTS, REPRESENTATIONS OR INFORMATION PERTAINING TO THE PROPERTY, OR RELATING THERETO, MADE OR FURNISHED BY SELLER OR HIS REPRESENTATIVES, TO WHOMEVER MADE OR GIVEN, DIRECTLY OR INDIRECTLY, ORALLY OR IN WRITING, EXCEPT AS EXPRESSLY STATED HEREIN. BUYER ALSO ACKNOWLEDGES THAT THE PURCHASE PRICE REFLECTS AND TAKES INTO ACCOUNT THAT THE PROPERTY IS BEING TRANSFERRED HEREUNDER SUBJECT TO THE CONDITIONS OF TITLE ON AN "AS IS, WHERE IS, WITH ALL FAULTS BASIS."**

(g)     **BUYER ACKNOWLEDGES TO SELLER THAT PRIOR TO THE EFFECTIVE DATE BUYER HAD THE OPPORTUNITY TO CONDUCT, AND WILL HAVE FIFTEEN (15) BUSINESS DAYS AFTER THE EFFECTIVE DATE THE OPPORTUNITY TO CONDUCT, SUCH INSPECTIONS, DUE DILIGENCE, AND INVESTIGATIONS OF THE PROPERTY AND/OR CONDITIONS OF TITLE AS BUYER DEEMS NECESSARY OR DESIRABLE TO SATISFY ITSELF AS TO THE PROPERTY AND ITS ACQUISITION THEREOF AND THE OBLIGATIONS IN CONNECTION THEREWITH (THE "*INITIAL REVIEW PERIOD*"), IN BUYER'S SOLE AND ABSOLUTE DISCRETION. BUYER FURTHER WARRANTS AND REPRESENTS TO SELLER THAT BUYER WILL RELY SOLELY ON ITS OWN REVIEW AND OTHER INSPECTIONS AND INVESTIGATIONS IN THIS TRANSACTION AND NOT UPON THE INFORMATION PROVIDED BY OR ON BEHALF OF SELLER, OR ITS REPRESENTATIVES OR ANY OTHER PERSON WITH**

10

**RESPECT THERETO. BUYER HEREBY ASSUMES THE RISK THAT ADVERSE MATTERS INCLUDING, BUT NOT LIMITED TO, LATENT OR PATENT DEFECTS, ADVERSE PHYSICAL OR OTHER ADVERSE MATTERS, MAY NOT HAVE BEEN REVEALED BY BUYER'S REVIEW AND INSPECTIONS AND INVESTIGATIONS.   BUYER EXPRESSLY ACKNOWLEDGES THAT IF IT FAILS TO TERMINATE THE AGREEMENT PRIOR TO THE EXPIRATION OF THE INITIAL REVIEW PERIOD, THE DEPOSIT BECOMES NONREFUNDABLE.**

15.    **Brokers.**    Each party warrants and represents to the other that neither Seller nor Buyer have hired or employed any broker, finder or other intermediary entitled to a commission, finder's fee or other compensation based upon the transaction contemplated hereby.

16.    **Termination.**

(a)    This Agreement may be terminated at any time prior to or on the Closing Date as follows:

(1)    By mutual written consent of the parties;

(2)    Automatically and without any action by either Buyer or Seller, if the Bankruptcy Court does not enter the Approval Order.

(3)    By Buyer if Seller breaches, in any material respect, its representations or warranties or fails to perform in any material respect its covenants or agreements set forth in this Agreement or in the other Transaction Documents, subject to prior written notice and a fifteen (15) calendar day cure period, if and only if such breach is subject to cure (provided, however, that Buyer is not otherwise in default under this Agreement and/or the other Transaction Documents);

(4)    By Seller if Buyer does not tender the Deposit in accordance with this Agreement;

(5)    By Seller if the Closing does not occur by the Closing Date, or such other date agreed to in writing by Seller;

(6)    By Buyer or Seller if the Approval Order is subject to a stay that is not lifted within fifteen (15) calendar days from the date the Bankruptcy Court enters its Approval Order;

11

      (7)    By Seller if Buyer breaches, in any material respect, its representations or warranties or fails to perform in any material respect its covenants or agreements set forth in this Agreement; and

      (8)    By Buyer if any the conditions to Closing set forth in Section 5(a) above, have not been satisfied or waived by Buyer as of the Closing Date.

(b)    Buyer shall notify Seller of any unacceptable title exceptions, or other impediments to the transaction contemplated by this Agreement, prior to the expiration of the Initial Review Period.  Buyer shall have the absolute right to terminate the Agreement at any time within or prior to the expiration of the Initial Review Period if, in its sole discretion, the results of its due diligence review are not satisfactory. Upon such termination, the Deposit and any interest accrued thereon shall be immediately refundable to Buyer.

(c)    Upon termination of this Agreement as set forth in Section 16(a) and (b) above, Escrow Holder shall promptly distribute the Deposit as expressly provided in Section 16(d) below, and except as otherwise expressly provided for in this Agreement, Seller and Buyer shall retain any and all of their rights and remedies against each other.

(d)    With respect to the Deposit:

      (1)    Except as otherwise provided in Section 16(d)(2) below, the Deposit is nonrefundable and shall be applied against the Purchase Price at Closing. Upon the termination of this Agreement pursuant to Section 16(a)(5) or (7), Escrow Holder shall promptly distribute the Deposit to Seller.

      (2)    In the event that this Agreement is terminated pursuant to Sections 16(a)(1), 16(a)(2), 16(a)(3), 16(a)(6), 16(a)(8), or 16(b) above, Escrow Holder shall promptly refund the Deposit to Buyer, without the need for further instruction or executed documents of any party; provided, however, in the event this Agreement has been terminated in accordance with Section 16(a)(3), then upon receipt of demand by Buyer for a return of the Deposit, Escrow Holder may request written confirmation from Seller that it authorizes such disbursement.  Seller shall respond to such request within five (5) Business Days of receipt either authorizing disbursement to Buyer or setting forth the reasons the Deposit should not be returned to Buyer. Seller's failure to respond within such time period shall be deemed Seller's affirmative acquiescence to the Deposit being returned to Buyer.  The parties acknowledge and agree that should any dispute arise over the

12

disbursement of the Deposit, the Bankruptcy Court shall retain jurisdiction over such matter.

(3)    Upon distribution or refund of the Deposit and all other funds received and/or held by Escrow Holder in the Escrow, Escrow Holder shall close the Escrow.  The parties acknowledge and agree that the Bankruptcy Court shall retain jurisdiction over such matters.

17.    **Notices.**    All notices or other communications required or permitted hereunder shall be in writing, and shall be personally delivered or delivered by facsimile or email (with a copy sent via pre-paid, first class, certified or registered air mail (or the functional equivalent in any country), return receipt requested, to the intended recipient thereof at its email, and/or facsimile number set out below) or by overnight courier such as FedEx, Express Mail, etc., for the next Business Day delivery, and shall be deemed received upon the earlier of (i) if personally delivered or sent via facsimile or email, the Business Day of delivery to the address of the person to receive such notice, or (ii) if delivered by overnight courier, the next Business Day.

> If to Seller:            John J. Menchaca, Trustee
>                          835 Wilshire Boulevard, Suite 300
>                          Los Angeles, California 90017
>
> With a copy to:          Steven F. Werth
>                          **Sulmeyer**Kupetz, A Professional Corporation
>                          333 South Hope Street, 35th Floor
>                          Los Angeles, California 90071-1406
>                          swerth@sulmeyerlaw.com
>
> If to Buyer:             James Quan and Zhong Qiu Li
>                          P.O. Box 1624
>                          Rosemead, CA 91770
>
> If to Escrow Holder:     Antonia Delgado
>                          A&A Escrow Services, Inc.
>                          415 N. Crescent Drive, Suite 320
>                          Beverly Hills, California 90210

Notice of change of address shall be given by written notice in the manner detailed in this Section 17.  Rejection or other refusal to accept or the inability to deliver because of

13

changed address of which no notice was given shall be deemed to constitute receipt of the notice, demand, request or communication sent.

18.    **Assignment.**    This Agreement may not be assigned, nor may the obligations be delegated by, the parties hereto without the prior written consent of the other party or parties hereto.

19.    **Miscellaneous.**

(a)    <u>Survival of Covenants</u>.  The covenants, representations and warranties of Seller and Buyer set forth in this Agreement shall survive the recordation of the Grant Deed and the Close of Escrow, and shall be deemed merged into the Grant Deed upon its recordation.

(b)    <u>Time of Essence</u>.  Time is of the essence of each and every term, condition, obligation and provision hereof.

(c)    <u>Captions</u>.  Any captions or headings of the sections, subsections, paragraphs or subparagraphs of this Agreement are solely for the convenience of the parties hereto, are not a part of this Agreement, and shall not be used for the interpretation or determination of the validity of this Agreement or any provision hereof.

(d)    <u>No Obligation to Third Parties</u>.  Except as otherwise expressly provided herein, the execution and delivery of this Agreement shall not be deemed to confer any rights upon nor obligate either of Buyer or Seller to, any person or entity other than the parties hereto.

(e)    <u>Exhibits</u>.  The Exhibits attached hereto are hereby incorporated herein by this reference for all purposes.

(f)    <u>Amendment to this Agreement</u>.  The terms of this Agreement may not be modified or amended except by an instrument in writing executed by each of the parties hereto.

(g)    <u>Waiver</u>.  Any term or condition of this Agreement may be waived at any time by the party that is entitled to the benefit thereof, but only if such waiver is evidenced by a writing signed by such party.

(h)    <u>Governing Law</u>.  This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of California without regards to the rules of such state relating to the conflict of laws. Subject to Section 20(i) below, the

14

parties hereto hereby submit to personal jurisdiction in the State of California, County of Los Angeles.

(i)    <u>Bankruptcy Court Jurisdiction</u>.  The parties hereto agree that the Bankruptcy Court shall have exclusive jurisdiction over all disputes and other matters relating to the interpretation and enforcement of this Agreement and the other Transaction Documents (and/or any ancillary document executed pursuant hereto) and/or the Property.

(j)    <u>Fees and Other Expenses</u>.  In the event of the bringing of any action or suit by a party hereto against another party hereunder by reason of any breach of any of the covenants or agreements or any material inaccuracies in any of the representations and warranties on the part of the other party arising out of this Agreement, then in that event, the prevailing party in such action or dispute, whether by final judgment, or out of court settlement shall be entitled to have and recover of and from the other party all costs and expenses of suit, including reasonable attorneys' fees.  Any judgment or order entered in any final judgment shall contain a specific provision providing for the recovery of all costs and expenses of suit, including reasonable attorneys' fees incurred in enforcing, perfecting and executing such judgment.  Except as otherwise provided in this Section 20(j) or Section 8 above, each of the parties shall pay its own fees and expenses in connection with the negotiation and preparation of this Agreement.

(k)    <u>Entire Agreement</u>.  This Agreement supersedes any prior agreements, negotiations and communications, oral or written, and contains the entire agreement between Buyer and Seller as to the subject matter hereof; provided, however, that this Agreement and the other Transaction Documents remains subject to the Approval Order.

(l)    <u>Successors and Assigns</u>.  This Agreement shall be binding upon and shall inure to the benefit of the successors and permitted assigns of the parties hereto.

(m)    <u>Business Days</u>.  As used in this Agreement, the term "***Business Day***" or "***Business Days***" shall be defined as any day on which national banking institutions in Los Angeles County, California, are open for the transaction of banking business (excepting any Saturday or Sunday).

(n)    <u>Signatures by Email</u>.  With the exception of the Grant Deed, any and all documents to be executed by any party hereto (including this Agreement) may when executed be transmitted to the other party and to Escrow Holder (as applicable) by email and

15

such email transmission shall constitute delivery of such document, provided, however, that the original of such document bearing the original signature(s) is sent on the date of the email transmission to the recipient via overnight courier for the next Business Day delivery.

(o)     <u>Counterparts</u>.  This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which, together, shall constitute one and the same instrument.

(p)     <u>Partial Invalidity</u>.  All rights and restrictions contained herein may be exercised and shall be applicable and binding only to the extent that they do not violate any applicable laws, and are intended to be limited to the extent necessary to render this Agreement legal, valid and enforceable.   If any term of this Agreement, or part thereof, not essential to the commercial purpose of this Agreement shall be held to be illegal, invalid or unenforceable by a court of competent jurisdiction, it is the intention of the parties that the remaining terms hereof, or part thereof shall constitute their agreement with respect to the subject matter hereof and all such remaining terms, or parts thereof, shall remain in full force and effect.   To the extent legally permissible, any illegal, invalid or unenforceable provision of this Agreement shall be replaced by a valid provision that will implement the commercial purpose of the illegal, invalid or unenforceable provision.

//

//

//

//

//

//

//

//

16

(q)    <u>No Construction Against Preparer</u>.  No provision of this Agreement or the other Transaction Documents shall be construed against or interpreted to the disadvantage of any party by any court or other governmental or judicial authority by reason of such party's having or being deemed to have prepared or imposed such provision.

**IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement of Purchase and Sale and Joint Escrow Instructions effective as of the Effective Date.

Buyer:

_____

James Quan

_____

Zhong Qiu Li

Seller:

_____

JOHN J. MENCHACA, in his sole and
limited capacity as Chapter 7 Trustee
for Shorb DCE, LLC

17

# JOINDER

Reference is made to that certain "Agreement of Purchase and Sale and Joint Escrow Instructions" dated for reference September 21, 2017 (the "***Effective Date***"), made by and among John J. Menchaca, in his sole and limited capacity as chapter 7 trustee  (herein "***Trustee***" or "***Seller***") for the estate of the debtor Shorb DCE, LLC ("***Debtor***"), and James Quan and Zhong Qiu Li, husband and wife (collectively, "***Buyer***"), as such may be amended from time to time (the "***Purchase Agreement***").  Unless otherwise provided herein, all capitalized terms shall have the meanings as set forth in the Purchase Agreement.

1.     The undersigned has read and understands the terms and conditions of the Purchase Agreement and other Transaction Documents, has been advised to consult with, and has had the opportunity to consult with, independent legal counsel, concerning the Purchase Agreement and other Transaction Documents and this Joinder, and the terms and conditions thereof and hereof, and is entering into this Joinder knowingly and voluntarily.

2.     The undersigned hereby enters into this Joinder for the purpose of agreeing to act as Escrow Holder as contemplated in the Purchase Agreement as if an original party thereto.  In connection therewith, the undersigned expressly agrees to perform and discharge completely, and be bound by, all obligations of Escrow Holder under the Purchase Agreement and other Transaction Documents in accordance with their respective terms and conditions, subject to the Approval Order or other order of the Bankruptcy Court.  Without limiting the generality of the foregoing, Escrow Holder shall (a) form and maintain the Escrow, (b) confirm receipt of the Deposit, (c) prepare the Closing Statement pursuant to the terms of the Purchase Agreement, (d) issue the Title Policy, (e) refund or distribute the Deposit and other funds as expressly provided in the Purchase Agreement and other Transaction Documents, and (f) take such other actions, and execute and deliver such other documents, certificates, instruments and agreements as reasonable and appropriate to consummate the transactions contemplated in the Purchase Agreement and other Transaction Documents.

3.     The undersigned will provide Seller and its authorized agents and representatives with all notices, documentation, evidences of funding and other materials concerning the formation of the Escrow, the compliance by the undersigned and Buyer with the terms and conditions of the Purchase Agreement and the other Transaction Documents, communications with Buyer and all activity concerning the Escrow, and provide Seller and its authorized agents and representatives with reasonable access during regular business hours to review, inspect and copy all such documentation and materials.

4.     The undersigned has all requisite consent and authority to enter into this Joinder, and perform its obligations in connection herewith, and that, upon the execution and delivery of this

Joinder by the undersigned, this Joinder shall be a valid and binding obligation of the undersigned in accordance with its terms and conditions.

5.      The undersigned will not enter into any agreement, contract or arrangement which modifies or amends, whether in whole or in part, any term of the Purchase Agreement or other Transaction Documents.  In addition, the undersigned agrees that any dispute or issue with respect to this Joinder and the undersigned's obligations hereunder shall be governed exclusively by the terms and conditions of the Purchase Agreement as if the undersigned was an original party thereto.

6.      The undersigned acknowledges and agrees that this Joinder shall inure to the benefit of Buyer and Seller and, for purposes hereof, both Buyer and Seller and their respective permitted successors and assigns shall be deemed third party beneficiaries of this Joinder.

**IN WITNESS WHEREOF,** the undersigned has caused this Joinder to be duly executed as of the Effective Date.

ESCROW HOLDER

By: _____
Title: _____

## Exhibit A

## LEGAL DESCRIPTION OF LAND

All that certain real property situated in the County of Los Angeles, State of California, described as follows:

PARCEL 1:

THAT PORTION OF LOT 1 IN BLOCK 18 OF RAMONA, IN THE CITY OF ALHAMBRA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 12 PAGES 53 ET SEQ. OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, LYING NORTHERLY OF THE WESTERLY PROLONGATION OF THE NORTHERLY LINE OF LOT 11 OF TRACT NO. 9849, IN THE CITY OF ALHAMBRA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 138 PAGES 55 AND 56 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT FROM THE ABOVE DESCRIBED PROPERTY THE WESTERLY 150.00 FEET THEREOF.

PARCEL 2:

THAT PORTION OF LOT 1 IN BLOCK 18 OF RAMONA, IN THE CITY OF ALHAMBRA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 12 PAGE 53 ET SEQ., OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, INCLUDED WITHIN THE FOLLOWING DESCRIBED BOUNDARIES:

BEGINNING AT THE NORTHWESTERLY CORNER OF LOT 11 OF TRACT NO. 9849, IN THE CITY OF ALHAMBRA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 138 PAGES 55 AND 56 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY; THENCE WESTERLY ALONG THE PROLONGATION OF THE NORTHERLY LINE OF SAID LOT 11, A DISTANCE OF 28.56 FEET; THENCE SOUTHERLY PARALLEL WITH THE WESTERLY LINE OF SAID LOT 1, A DISTANCE OF 35 FEET, ALONG A LINE WHICH PRODUCED SOUTHERLY WOULD INTERSECT THE NORTHEAST CORNER OF A ONE STORY BRICK BUILDING, AS IT EXISTED IN 1949; THENCE EASTERLY, PARALLEL WITH THE PROLONGATION OF THE NORTHERLY LINE OF SAID LOT 11, TO THE WESTERLY LINE OF SAID LOT 11; THENCE NORTHERLY, ALONG WESTERLY LINE, 35 FEET TO THE POINT OF BEGINNING.

PARCEL 3:

THAT PORTION OF LOT 1 IN BLOCK 18 OF RAMONA, IN THE CITY OF ALHAMBRA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 12 PAGE 53 ET SEQ., OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

COMMENCING AT THE NORTHWESTERLY CORNER OF SAID LOT 11 OF TRACT NO. 9849, IN THE CITY OF ALHAMBRA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 138 PAGES 55 AND 56 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY; THENCE WESTERLY ALONG THE WESTERLY PROLONGATION OF THE NORTHERLY LINE OF SAID LOT 1, A DISTANCE OF 28.56 FEET TO THE TRUE POINT OF BEGINNING; THENCE SOUTHERLY PARALLEL WITH THE WESTERLY LINE OF SAID LOT 1, A DISTANCE OF 35 FEET TO A POINT ALONG A LINE WHICH PRODUCED SOUTHERLY WOULD INTERSECT THE NORTHEAST CORNER OF A ONE STORY BRICK BUILDING, AS IT EXISTED IN 1949, SAID LAST MENTIONED POINT BEING THE NORTHERLY LINE OF THE LAND DESCRIBED IN THE DEED TO THE CITY OF ALHAMBRA, RECORDED ON JANUARY 22, 1954, AS INSTRUMENT NO. 1929, IN BOOK 43655 PAGE 32, OFFICIAL RECORDS; THENCE WESTERLY ALONG SAID LAST MENTIONED NORTHERLY LINE 21.44 FEET, MORE OR LESS, TO THE EAST LINE OF THE WESTERLY 150.00 FEET OF SAID LOT 1; THENCE NORTHERLY ALONG SAID EAST LINE, 35 FEET, MORE OR LESS, WESTERLY PROLONGATION; THENCE EASTERLY ALONG SAID PROLONGATION 21.44 FEET, MORE OR LESS, TO THE TRUE POINT OF BEGINNING.

PARCEL 4:

THAT PORTION OF LOT 11 OF TRACT NO. 9849, IN THE CITY OF ALHAMBRA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 138 PAGES 55 AND 56 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, LYING NORTHERLY OF THE NORTHERLY LINE OF THE LAND DESCRIBED IN DEED TO THE IN THE CITY OF ALHAMBRA, RECORDED ON JANUARY 22, 1954 AS INSTRUMENT NO. 1929, IN BOOK 43655 PAGE 32 OF OFFICIAL RECORDS, IN THE SAID OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THAT PORTION OF SAID LAND, LYING EASTERLY OF THE WESTERLY LINE OF THE LAND DESCRIBED IN THE DEED TO NATHAN F. GOLDBERG, ET AL., RECORDED ON FEBRUARY 10, 1959 AS INSTRUMENT NO. 1351, IN BOOK D-7 PAGE 842, OFFICIAL RECORDS.

APN: 5350-016-033

**EXHIBIT B**

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:
MAIL TAX STATEMENTS TO:

_____

APN: _____       SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

The Documentary Transfer Tax is not for public record.

## GRANT DEED

For valuable consideration, receipt of which is hereby acknowledged, John J. Menchaca, in his sole and limited capacity as chapter 7 trustee (herein "***Trustee***" or "***Seller***") for the estate of the debtor Shorb DCE, LLC (the "***Grantor***") hereby grants to James Quan and Zhong Qiu Li, husband and wife (collectively, "***Grantee***") all of Grantor's right, title and interest in and to the real property located in the State of California, County of Los Angeles, City of Alhambra, described in <u>Exhibit A</u> attached hereto (the "***Property***"), together with all Grantor's right, title and interest, of, in and to all structures and improvements now located on the Property, pursuant to the terms and conditions of that certain "Agreement of Purchase and Sale and Joint Escrow Instructions" dated as of September 21, 2017, between Grantor and Grantee.

In witness whereof, Grantor has caused this Grant Deed to be executed as of the date below.

Dated: October ____, 2017

_____
JOHN J. MENCHACA, in his sole and limited capacity as Chapter 7 Trustee for the estate of the debtor Shorb DCE, LLC

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                              )
County of Los Angeles                    )


On _____, before me, _____, a Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.



Signature       _____

## EXHIBIT C

## SELLER'S CERTIFICATE

Pursuant to Section 6(b) of that certain "Agreement of Purchase and Sale and Joint Escrow Instructions" (the "*Agreement*"), by and between John J. Menchaca, in his sole and limited capacity as chapter 7 trustee (herein "*Trustee*" or "*Seller*") for the estate of the debtor Shorb DCE, LLC ("*Debtor*"), and James Quan and Zhong Qiu Li, husband and wife (collectively, "*Buyer*"), Seller hereby certifies to Buyer that all of Seller's representations and warranties set forth in Section 12 of the Agreement are true, correct, and complete in all material respects as of the Closing Date (as defined in the Agreement) as if then made, subject to the following:

Dated: September 22, 2017

Seller: _____

JOHN J. MENCHACA, in his sole and
limited capacity as Chapter 7 Trustee for the estate
of the debtor Shorb DCE, LLC

SFW\ 2605053.5 9/20/2017 (5:47 PM)

## EXHIBIT D

## BUYER'S CERTIFICATE

Pursuant to Section 7(b) of that certain "Agreement of Purchase and Sale and Joint Escrow Instructions" (the "*Agreement*"), by and between John J. Menchaca, in his sole and limited capacity as chapter 7 trustee ("*Seller*") for the estate of the debtor Shorb DCE, LLC, and James Quan and Zhong Qiu Li, husband and wife (collectively, "*Buyer*"), Buyer hereby certifies to Seller that all of Buyer's representations and warranties set forth in Section 13 of the Agreement are true, correct, and complete in all material respects as of the Closing Date (as defined in the Agreement) as if then made.


Dated: September _____ , 2017



Buyer:

_____

By:  James Quan

_____

By:  Zhong Qiu Li

# EXHIBIT E

## BILL OF SALE

For good and valuable consideration, the receipt of which is hereby acknowledged, John J. Menchaca, in his sole and limited capacity as chapter 7 trustee (herein "**Trustee**" or "**Seller**") for the estate of the debtor Shorb DCE, LLC ("**Debtor**"), and James Quan and Zhong Qiu Li, husband and wife (collectively, "**Buyer**"), do hereby, as of this __ day of September____, 2017, agree as follows:

Buyer and Seller have entered into that certain "Agreement of Purchase and Sale and Joint Escrow Instructions" (the "**Agreement**"), whereby Seller shall sell and convey to Buyer that certain real property located at 910-912 W. Shorb Street, Alhambra, California 91803 (the "**Property**"). Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Agreement.

In connection with the Agreement, Seller hereby absolutely and unconditionally sells, transfers, conveys and delivers to Buyer, without recourse or warranty any and all of Seller's right, title and interest in the furniture, fixtures, appliances, equipment, machinery, furnishings, supplies and any and all other personal property (the "**Personal Property**") in which Seller has an interest and is used exclusively in connection with the operation of the Property.

Buyer acknowledges that the sale of the Personal Property is specifically made "as-is" and "where-is," without any representations or warranties express or implied, including, without limitation, implied warranties of fitness for any particular purpose or merchantability or any other warranties whatsoever.  Buyer has not relied and will not rely on, and Seller is not liable for or bound by, any express or implied warranties, guaranties, statements, representations or information pertaining to the personal property or relating thereto made or furnished by Seller, or any agent or real estate broker representing or purporting to represent Seller, to whomever made or given, directly or indirectly, orally or in writing.  Seller specifically disclaims and makes no representation or warranty whatsoever as to any right or claim that may be asserted by any tenant or third party pertaining to any of the Personal Property and/or Intangible Rights.

This Bill of Sale may be executed in any number of counterparts, each of which shall be deemed an original and all of which, when taken together, shall constitute one and the same instrument.

### [SIGNATURES ON FOLLOWING PAGE]

**IN WITNESS WHEREOF**, Buyer and Seller have executed this Bill of Sale the day and year first written above.

Buyer:

By:  James Quan

By:  Zhong Qiu Li

Seller:

JOHN J. MENCHACA, in his sole and limited capacity as Chapter 7 Trustee for Shorb DCE, LLC

## EXHIBIT G

## ASSIGNMENT OF LEASES

This "Assignment of Leases (the "***Assignment***") is made and entered into as of this __ day of September, 2017, by and between John J. Menchaca, in his sole and limited capacity as chapter 7 trustee  (herein "***Seller***" or "***Assignor***") for the estate of the debtor Shorb DCE, LLC ("***Debtor***"), and James Quan and Zhong Qiu Li, husband and wife ("***Buyer***" or "***Assignee***").

**A.**     Assignor and Assignee have entered into that certain "Agreement of Purchase and Sale and Joint Escrow Instructions" ("***Agreement***"), whereby Seller shall sell and convey to Buyer that certain real property located at 910-912 W. Shorb Street, Alhambra, CA 91803 (the "***Property***"). Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Agreement.

**B.**     In his capacity as trustee, Assignor is the lessor under certain leases executed with respect to the residential occupancy of tenants at the Property (the "***Leases***").

**C.**     Assignor desires to assign its interest, if any, as lessor in all of the Leases to Assignee without representation or warranty whatsoever, except as otherwise expressly set forth in the Agreement, and Assignee desires to accept the assignment thereof and to assume Assignor's obligations thereunder.

**NOW THEREFORE**, in consideration of the promises and conditions contained herein, the parties hereby agree as follows:

### Terms

1.     Effective as of the date of recordation of the Grant Deed transferring the Property from Assignor to Assignee (the "***Recording Date***"), Assignor hereby assigns and delegates to Assignee, without any representation or warranty whatsoever, except as otherwise set forth in the Agreement, all of its right, title and interest in and to the Leases, if any, and all of its duties and obligations of performance under the Leases.

2.     Effective as of the Recording Date, Assignee hereby assumes and agrees to perform all of Assignor's obligations under the Leases.

3.     If either party hereto fails to perform any of its obligations under this Assignment or if a dispute arises between the parties hereto concerning the meaning or interpretation of any provision of this Assignment, and an action is filed, the prevailing party in any such action shall be entitled to recover from the other party, in addition to any other relief that may be granted, its court costs and reasonable attorneys' fees and disbursements, including such fees incurred in connection with any appeal.  Any such attorneys' fees and other expenses incurred by either party in enforcing a judgment in its favor under this Assignment shall be recoverable separately from and in addition to any other amount included in such judgment, and such attorneys' fees obligation

is intended to be severable from the other provisions of this Assignment and to survive and not be merged into any such judgment.

      4.     This Assignment may be signed in counterparts and all counterparts so executed shall constitute one contract, binding on all parties, hereto, even though all parties are not signatory to the same counterpart.

      5.     This Assignment shall be binding on and inure to the benefit of the parties hereto, their heirs, executors, administrators, successors-in-interest and assigns.

      6.     This Assignment shall be governed by and construed in accordance with the laws of the state of California.

**IN WITNESS WHEREOF**, Assignor and Assignee have executed this Assignment the day and year first written above.

Assignee:

By: James Quan

By: Zhong Qiu Li

Assignor:

JOHN J. MENCHACA, in his sole and
limited capacity as Chapter 7 Trustee
for Shorb DCE, LLC

EXHIBIT 2



Lawyers Title Company
7530 N. Glenoaks Blvd.
Burbank, CA 91504
Phone: (818) 767-2000
Fax: (818) 504-4937

A & A ESCROW SERVICES                    Title Officer: Ralph J. Mason, Jr.--So
415 N. CRESCENT DRIVE, SUITE # 320       email: tu08@ltic.com
BEVERLY HILLS, CA 90210                  Phone No.: (818) 252-6040
                                         Fax No.: (818) 252-3732
Attn: ANTONIA DELGADO                    File No.:  117082431

Your Reference No: 910 W SHORB ST

Property Address:    910 West Shorb Street, Alhambra, California

# PRELIMINARY REPORT

Dated as of September 6, 2017 at 7:30 a.m.

In response to the application for a policy of title insurance referenced herein, Lawyers Title Company hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a policy or policies of title insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an exception herein or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations or Conditions of said policy forms.

The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Attachment One.  The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. Limitation on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Attachment One.  Copies of the policy forms should be read.  They are available from the office which issued this report.

The policy(s) of title insurance to be issued hereunder will be policy(s) of **Commonwealth Land Title Insurance Company.**

***Please read the exceptions shown or referred to below and the exceptions and exclusions set forth in Attachment One of this report carefully.  The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.  It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects, and encumbrances affecting title to the land.***

This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby.  If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.

File No:  117082431

# SCHEDULE A

The form of policy of title insurance contemplated by this report is:

CLTA Standard Owners

The estate or interest in the land hereinafter described or referred to covered by this report is:

**A FEE**

Title to said estate or interest at the date hereof is vested in:

Shorb DCE LLC, a California limited liability company

Subject to proceedings pending in the bankruptcy court where a petition for relief was filed.

| | |
|---|---|
| Name of Debtor: | Shorb DCE, LLC |
| Date of Filing: | April 6, 2017 |
| U.S. District Court: | Central |
| Case No: | 17-14240-BR |

The land referred to herein is situated in the County of Los Angeles, State of California, and is described as follows:

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF**

File No:  117082431

# EXHIBIT "A"

All that certain real property situated in the County of Los Angeles, State of California, described as follows:

Parcel 1:

That portion of Lot 1 in Block 18 of Ramona, in the City of Alhambra, County of Los Angeles, State of California, as per map recorded in Book 12, Pages 53 through 56, of Miscellaneous Records, in the Office of the County Recorder of said County, lying Northerly of the Westerly prolongation of the Northerly line of Lot 11 of Tract No. 9849, in the City of Alhambra, County of Los Angeles, State of California, as per map recorded in Book 138, Pages 55 and 56 of Maps, in the office of the County Recorder of said County.

EXCEPT from the above described property, the Westerly 150.00 feet thereof.

Parcel 2:

That portion of Lot 1 in Block 18 of Ramona, in the City of Alhambra, County of Los Angeles, State of California, as per map recorded in Book 12, Pages 53 through 56, of Miscellaneous Records, in the Office of the County Recorder of said County, included within the following described boundaries:

Beginning at the Northwesterly corner of Lot 11 of Tract No. 9849, in the City of Alhambra, County of Los Angeles, State of California, as per map recorded in Book 138, Pages 55 and 56 of Maps, in the office of the County Recorder of said County; thence Westerly along the prolongation of the Northerly line of said Lot 11, a distance of 28.56 feet; thence Southerly parallel with the Westerly line of said Lot 1, a distance of 35 feet, along a line which produced Southerly would intersection the Northeast corner of a one story brick building, as it existed in 1949; thence Easterly, parallel with the prolongation of the Northerly line of said lot 11, to the Westerly line of said Lot 11; thence Northerly, along the Westerly line, 35 feet to the point of beginning.

Parcel 3:

That portion of Lot 1 in Block 18 of Ramona, in the City of Alhambra, County of Los Angeles, State of California, as per map recorded in Book 12, Pages 53 through 56, of Miscellaneous Records, in the Office of the County Recorder of said County, described as follows:

Beginning at the Northwesterly corner of Lot 11 of Tract No. 9849, in the City of Alhambra, County of Los Angeles, State of California, as per map recorded in Book 138, Pages 55 and 56 of Maps, in the office of the County Recorder of said County; thence Westerly along the Westerly prolongation of the Northerly line of said Lot 11, a distance of 28.56 feet to the true point of beginning; thence Southerly parallel with the Westerly line of said Lot 1, a distance of 35 feet to a point along a line which produced Southerly would intersection the Northeast corner of a one story brick building, as it existed in 1949, said last mentioned point being the Northerly line of the land described in the Deed to the City of Alhambra, recorded on January 22, 1954 as Instrument No. 1929, in Book 43655, Page 32, of Official Records; thence Westerly along said last mentioned Northerly line 21.44 feet, more or less, to the East line of the Westerly 150.00 feet of said Lot 1; thence Northerly along said East line, 35 feet, more or less, to said Westerly prolongation; thence Easterly along said prolongation 21.44 feet, more or less, to the true point of beginning.

Parcel 4:

File No: 117082431

That portion of Lot 11 of Tract No. 9849, in the City of Alhambra, County of Los Angeles, State of California, as per map recorded in Book 138, Pages 55 and 56 of Maps, in the office of the County Recorder of said County, lying Northerly of the Northerly line of the land described in Deed to the City of Alhambra, recorded on January 22, 1954 as Instrument No. 1929, in Book 43655, Page 32, of Official Records, in the Office of the County Recorder of said County.

EXCEPT that portion of said land lying Easterly of the Westerly line of the land described in the Deed to Nathan F. Goldberg, et al., recorded on February 10, 1959 as Instrument No. 1351, in Book D-7, Page 842, of Official Records.

Assessor's Parcel Number:    5350-016-033

# SCHEDULE B

At the date hereof Exceptions to coverage in addition to the printed exceptions and exclusions in said policy form would be as follows:

A.  Property taxes, which are a lien not yet due and payable, including any assessments collected with taxes to be levied for the fiscal year 2017-2018.

B.  Property taxes, including any personal property taxes and any assessments collected with taxes, are as follows:

Tax Identification No.:          5350-016-033
Fiscal Year:                     2016 - 2017
1st Installment:                 $5,933.76, paid.
2nd Installment:                 $5,917.41, Not paid-Delinquent (Delinquent after April 10)
Penalty and Cost:                $601.74
Homeowners Exemption:            $0
Code Area:                       01797

C.  Said property has been declared tax defaulted for non-payment of delinquent taxes for the fiscal year 2015 - 2016.

APN No:                      5350-016-033

Amounts to redeem for the above-stated fiscal year (and subsequent years if any) are:

Amount:      $22,374.80, by September 30, 2017
Amount:      $22,639.77, by October 31, 2017

Said amount to pay includes delinquent tax amounts as shown above.

D.  The lien of supplemental or escaped assessments of property taxes, if any, made pursuant to the provisions of Chapter 3.5 (commencing with Section 75) or Part 2, Chapter 3, Articles 3 and 4, respectively, of the Revenue and Taxation Code of the State of California as a result of the transfer of title to the vestee named in Schedule A; or as a result of changes in ownership or new construction occurring prior to date of policy.

1.  Water rights, claims or title to water, whether or not disclosed by the public records.

2.  Covenants, conditions and restrictions but omitting any covenants or restrictions, if any, including but not limited to those based upon race, color, religion, sex, sexual orientation, familial status, marital status, disability, handicap, national origin, citizenship, immigration status, primary language, ancestry, source of income, gender, gender identity, gender expression, medical condition or genetic information, as set forth in applicable state or federal laws, except to the extent that said covenant or restriction is permitted by applicable law, as set forth in the document

Recording No:                in Book 3663, Page 73, of Deeds

Said covenants, conditions and restrictions provide that a violation thereof shall not defeat the lien of any mortgage or deed of trust made in good faith and for value.

3.  A deed of trust to secure an indebtedness in the amount shown below,

Amount:                     $850,000.00
Dated:                      March 5, 2007
Trustor/Grantor             Shorb DCE LLC, a California limited liability company
Trustee:                    Financial Title Company
Beneficiary:                Metro United Bank
Loan No.:                   0370219886
Recording Date:             March 16, 2007
Recording No:               20070589536, of Official Records

An agreement to modify the terms and provisions of said deed of trust as therein provided with an
additional advance to be secured by said deed of trust, as disclosed by an instrument:

Recording Date:             June 5, 2014
Recording No:               20140582036, of Official Records

Loan balance increased to $1,090,000.00.

A substitution of trustee under said deed of trust which names, as the substituted trustee, the
following

Trustee:                    East West Investment Inc.
Recording Date:             June 3, 2016
Recording No:               20160636267, of Official Records

A notice of default under the terms of said trust deed

Executed by:                T.D. Service Company
Recording Date:             December 12, 2016
Recording No:               20161571985, of Official Records

A notice of trustee's sale under said deed of trust

Executed by:                T.D. Service Company
Time and Place of Sale:     April 12, 2017 at 10:00 A.M. Behind the fountain located in Civic
                            Center Plaza, 400 Civic Center Plaza, Pomona, California 91766
Recording Date:             March 15, 2017
Recording No:               20170296731, of Official Records

4.   An assignment of all the moneys due, or to become due as rental, as additional security for the
     obligations secured by deed of trust shown

     Recording Date:        March 16, 2007
     Recording No:          20070589537, of Official Records
     Assigned to:           Metro United Bank

5.   The matters contained in a document entitled **"Hazardous Substances Certificate and Indemnity
     Agreement"** recorded March 16, 2007 as Instrument No. 20070589538, of Official Records.

     Reference is made to said document for full particulars.

6.   A financing statement as follows:

     Debtor:                Shorb DCE LLC, a California limited liability company
     Secured Party:         Metro United Bank
     Recording Date:        March 16, 2007
     Recording No:          20070589539, of Official Records

7.   A deed of trust to secure an indebtedness in the amount shown below,

CLTA Preliminary Report Form – Modified (11-17-06)

| | |
|---|---|
| Amount: | $39,000.00 |
| Dated: | November 18, 2014 |
| Trustor/Grantor | Shorb DCE LLC.  David C. Kwok/Elke L. Coffey as members |
| Trustee: | Old Republic Title Company, a California Corporation |
| Beneficiary: | William B. Wright |
| Loan No.: | None shown |
| Recording Date: | December 10, 2014 |
| Recording No: | 20141339689, of Official Records |

This Company will require that the original note, the original deed of trust and a properly executed request for full reconveyance together with appropriate documentation (i.e., copy of trust, partnership agreement or corporate resolution) be in this office prior to the close of this transaction if the above-mentioned item is to be paid through this transaction or deleted from a policy of title insurance.

Any demands submitted to us for payoff must be signed by all beneficiaries as shown on said deed of trust, and/or any assignments thereto. In the event said demand is submitted by an agent of the beneficiary(s), we will require the written approval of the demand by the beneficiary(s). Servicing agreements do not constitute approval for the purposes of this requirement.

If no amounts remain due under the obligation a zero balance demand will be required along with the reconveyance documents.

In addition, we require the written approval of said demand by the trustor(s) on said deed of trust or the current owners if applicable.

8.    A deed of trust to secure an indebtedness in the amount shown below,

| | |
|---|---|
| Amount: | $60,000.00 |
| Dated: | September 19, 2015 |
| Trustor/Grantor | Shorb DCE LLC |
| Trustee: | Chicago Title Company, a California Corporation |
| Beneficiary: | James Wang |
| Loan No.: | None shown |
| Recording Date: | September 29, 2015 |
| Recording No: | 20151205624, of Official Records |

This Company will require that the original note, the original deed of trust and a properly executed request for full reconveyance together with appropriate documentation (i.e., copy of trust, partnership agreement or corporate resolution) be in this office prior to the close of this transaction if the above-mentioned item is to be paid through this transaction or deleted from a policy of title insurance.

Any demands submitted to us for payoff must be signed by all beneficiaries as shown on said deed of trust, and/or any assignments thereto. In the event said demand is submitted by an agent of the beneficiary(s), we will require the written approval of the demand by the beneficiary(s). Servicing agreements do not constitute approval for the purposes of this requirement.

If no amounts remain due under the obligation a zero balance demand will be required along with the reconveyance documents.

In addition, we require the written approval of said demand by the trustor(s) on said deed of trust or the current owners if applicable.

9.    A deed of trust to secure an indebtedness in the amount shown below,

| | |
|---|---|
| Amount: | $10,800.00 |
| Dated: | March 6, 2015 |
| Trustor/Grantor | Shorb DCE LLC., Elke L. Coffey and David C. Kwok as members |
| Trustee: | First American Title Insurance Company |
| Beneficiary: | The Wright Trust dated 11-19-1984 |
| Loan No.: | None shown |
| Recording Date: | June 3, 2016 |
| Recording No: | 20160641824, of Official Records |

This Company will require that the original note, the original deed of trust and a properly executed request for full reconveyance together with appropriate documentation (i.e., copy of trust, partnership agreement or corporate resolution) be in this office prior to the close of this transaction if the above-mentioned item is to be paid through this transaction or deleted from a policy of title insurance.

Any demands submitted to us for payoff must be signed by all beneficiaries as shown on said deed of trust, and/or any assignments thereto. In the event said demand is submitted by an agent of the beneficiary(s), we will require the written approval of the demand by the beneficiary(s). Servicing agreements do not constitute approval for the purposes of this requirement.

If no amounts remain due under the obligation a zero balance demand will be required along with the reconveyance documents.

In addition, we require the written approval of said demand by the trustor(s) on said deed of trust or the current owners if applicable.

10. A tax lien for the amount shown and any other amounts due, in favor of the United States of America, assessed by the District Director of Internal Revenue.

| | |
|---|---|
| Federal Serial No.: | 455159808 |
| Taxpayer: | David Kwok |
| Amount: | $9,815.09 |
| Recording Date: | July 14, 2008 |
| Recording No: | 20081246443, of Official Records |

11. Matters which may be disclosed by an inspection and/or by a correct ALTA/ACSM Land Title Survey of said Land that is satisfactory to the Company, and/or by inquiry of the parties in possession thereof.

12. Any rights of the parties in possession of a portion of, or all of, said Land, which rights are not disclosed by the public records.

The Company will require, for review, a full and complete copy of any unrecorded agreement, contract, license and/or lease, together with all supplements, assignments and amendments thereto, before issuing any policy of title insurance without excepting this item from coverage.

The Company reserves the right to except additional items and/or make additional requirements after reviewing said documents.

13. Any easements not disclosed by the public records as to matters affecting title to real property, whether or not said easements are visible and apparent.

14. Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other matters which a correct survey would disclose and which are not shown by the public records.

File No: 117082431

**END OF SCHEDULE B EXCEPTIONS**

**PLEASE REFER TO THE "NOTES AND REQUIREMENTS SECTION" WHICH FOLLOWS FOR
INFORMATION NECESSARY TO COMPLETE THIS TRANSACTION**

CLTA Preliminary Report Form – Modified (11-17-06)

# REQUIREMENTS SECTION:

Req. No. 1:   In order to complete this report, the Company requires a Statement of Information to be completed by the following party(s),

Party(s):  All parties

The Company reserves the right to add additional items or make further requirements after review of the requested Statement of Information.

NOTE:   The Statement of Information is necessary to complete the search and examination of title under this order. Any title search includes matters that are indexed by name only, and having a completed Statement of Information assists the Company in the elimination of certain matters which appear to involve the parties but in fact affect another party with the same or similar name. Be assured that the Statement of Information is essential and will be kept strictly confidential to this file.

Req. No. 2:   The Company will require the following documents for review prior to the issuance of any title insurance predicated upon a conveyance or encumbrance from the entity named below:

Limited Liability Company:      Shorb DCE LLC

a)      A copy of its operating agreement, if any, and any and all amendments, supplements and/or modifications thereto, certified by the appropriate manager or member

b)      If a domestic Limited Liability Company, a copy of its Articles of Organization and all amendments thereto with the appropriate filing stamps

c)      If the Limited Liability Company is member-managed, a full and complete current list of members certified by the appropriate manager or member

d)      A current dated certificate of good standing from the proper governmental authority of the state in which the entity was created

e)      If less than all members, or managers, as appropriate, will be executing the closing documents, furnish evidence of the authority of those signing.

The Company reserves the right to add additional items or make further requirements after review of the requested documentation.

Req. No. 3:   Furnish for review a full and complete copy of any unrecorded agreement, contract, license and/or lease together with all supplements, assignments and amendments thereto, prior to the close of this transaction.

The Company reserves the right to add additional items or make further requirements after review of the requested documentation.

Req. No. 4:   The Company will require that the attached "Owner's Information Statement" be completed by the owner of the estate described or referred to in Schedule A immediately prior to the close of this transaction and be returned to us.

File No:  117082431

The purposes of the Owner's Information Statement is to provide the Company with certain information that cannot necessarily be ascertained by making a physical inspection of the land.

File No: 117082431

# INFORMATIONAL NOTES SECTION

Note No. 1:   The information on the attached plat is provided for your convenience as a guide to the general location of the subject property.  The accuracy of this plat is not guaranteed, nor is it a part of any policy, report or guarantee to which it may be attached.

Note No. 2:   California insurance code section 12413.1 regulates the disbursement of escrow and sub-escrow funds by title companies. The law requires that funds be deposited in the title company escrow account and available for withdrawal prior to disbursement. Funds deposited with the company by wire transfer may be disbursed upon receipt. Funds deposited with the company via cashier's check or teller's check drawn on a California based bank may be disbursed on the next business day after the day of deposit. If funds are deposited with the company by other methods, recording and/or disbursement may be delayed.  All escrow and sub-escrow funds received by the company will be deposited with other escrow funds in one or more non-interest bearing escrow accounts of the company in a financial institution selected by the company. The company may receive certain direct or indirect benefits from the financial institution by reason of the deposit of such funds or the maintenance of such accounts with such financial institution, and the company shall have no obligation to account to the depositing party in any manner for the value of, or to pay to such party, any benefit received by the company. Those benefits may include, without limitation, credits allowed by such financial institution on loans to the company or its parent company and earnings on investments made with the proceeds of such loans, accounting, reporting and other services and products of such financial institution. Such benefits shall be deemed additional compensation of the company for its services in connection with the escrow or sub-escrow.

**For wiring Instructions please contact your Title Officer or Title Company Escrow officer.**

Note No. 3:   Lawyers Title is a division of Commonwealth Land Title Insurance Company.  The insurer in policies of title insurance, when issued in this transaction, will be Commonwealth Land Title Insurance Company.

Note No. 4:   Notice: Please be aware that due to the conflict between federal and state laws concerning the cultivation distribution, manufacture or sale of marijuana, the Company is not able to close or insure any transaction involving Land that is associated with these activities.

Note No. 5:   None of the items shown in this report will cause the Company to decline to attach CLTA Endorsement Form 100 to an ALTA Loan Policy, when issued.

Note No. 6:   The following information will be included in the CLTA Form 116 or ALTA Form 22-06 Endorsement to be issued pursuant to this order:

There is located on said Land:   a Multiple family residence
Known as:        910 West Shorb Street, Alhambra, California

Note No. 7:   There are no conveyances affecting said Land recorded within 24 months of the date of this report.

Note No. 8:   The Company requires current beneficiary demands prior to closing. If the demand is expired and a current demand cannot be obtained, our requirements will be as follows:

a)   If the Company accepts a verbal update on the demand, we may hold an amount equal to one monthly mortgage payment. This hold will be in addition to the verbal hold the lender may have stipulated.

b)   If the Company cannot obtain a verbal update on the demand, we will either pay off the expired demand or wait for the amended demand, at our discretion.

c)   All payoff figures are verified at closing. If the customer's last payment was made within 15 days of closing, our Payoff Department may hold one month's payment to insure the check has cleared the bank (unless a copy of the cancelled check is provided, in which case there will be no hold).

Processor:  sm
Date Typed: September 22, 2017
CLTA Preliminary Report Form – Modified (11-17-06)

File No: 117082431

**Attachment One (Revised 06-05-14)**

**CALIFORNIA LAND TITLE ASSOCIATION
STANDARD COVERAGE POLICY – 1990**

**EXCLUSIONS FROM COVERAGE**

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a)  Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

   (b)  Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3. Defects, liens, encumbrances, adverse claims or other matters:

   (a)  whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;

   (b)  not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;

   (c)  resulting in no loss or damage to the insured claimant;

   (d)  attaching or created subsequent to Date of Policy; or

   (e)  resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.

4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.

5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6. Any claim, which arises out of the transaction vesting in the insured the estate of interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

File No:  117082431

## EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1.  Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.

    Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.

2.  Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.

3.  Easements, liens or encumbrances, or claims thereof, not shown by the public records.

4.  Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.

5.  (a)  Unpatented mining claims;  (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof;  (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.

6.  Any lien or right to a lien for services, labor or material not shown by the public records.

## CLTA HOMEOWNER'S POLICY OF TITLE INSURANCE (12-02-13)
## ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE

### EXCLUSIONS

 In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1.  Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:

    a.  building;
    b.  zoning;
    c.  land use;
    d.  improvements on the Land;
    e.  land division; and
    f.  environmental protection.

This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.

2.  The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not limit the coverage described in Covered Risk 14 or 15.

3.  The right to take the Land by condemning it.  This Exclusion does not limit the coverage described in Covered Risk 17.

4.  Risks:

    a.  that are created, allowed, or agreed to by You, whether or not they are recorded in the Public Records;
    b.  that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date;
    c.  that result in no loss to You; or
    d.  that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e., 25, 26, 27 or 28.

5.  Failure to pay value for Your Title.

CLTA Preliminary Report Form – Modified (11-17-06)

6.  Lack of a right:

    a.  to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
    b.  in streets, alleys, or waterways that touch the Land.

    This Exclusion does not limit the coverage described in Covered Risk 11 or 21.

7.  The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws.

8.  Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.

9.  Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

### LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:

- For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

|  | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | **$ 10,000.00** |
| Covered Risk 18: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | **$ 25,000.00** |
| Covered Risk 19: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | **$ 25,000.00** |
| Covered Risk 21: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | **$ 5,000.00** |

### 2006 ALTA LOAN POLICY (06-17-06)
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.    (a)  Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

        (i)  the occupancy, use, or enjoyment of the Land;
        (ii)  the character, dimensions, or location of any improvement erected on the Land;
        (iii)  the subdivision of land; or
        (iv)  environmental protection;

      or the effect of any violation of these laws, ordinances, or governmental regulations.  This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

    (b)  Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk  6.

2.  Rights of eminent domain.  This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3.  Defects, liens, encumbrances, adverse claims, or other matters

(a)  created, suffered, assumed, or agreed to by the Insured Claimant;

(b)  not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

(c)  resulting in no loss or damage to the Insured Claimant;

(d)  attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13 or 14); or

(e)  resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

4.  Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.

5.  Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.

6.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is

(a)  a fraudulent conveyance or fraudulent transfer, or

(b)  a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.

7.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records.  This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

The above policy form may be issued to afford either Standard Coverage or Extended Coverage.  In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

## EXCEPTIONS FROM COVERAGE

[Except as provided in Schedule B - Part II,[ t[or T]his policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:

## [PART I

[The above policy form may be issued to afford either Standard Coverage or Extended Coverage.  In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

1.   (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency  that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2.  Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by  persons in possession of the Land.

3.  Easements, liens or encumbrances, or claims thereof, not shown  by the Public Records.

4.  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.

5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

CLTA Preliminary Report Form – Modified (11-17-06)

File No:  117082431

6.    Any lien or right to a lien for services, labor or material not shown by the Public Records.

## PART II

In addition to the matters set forth in Part I of this Schedule, the Title is subject to the following matters, and the Company insures against loss or damage sustained in the event that they are not subordinate to the lien of the Insured Mortgage:]

### 2006 ALTA OWNER'S POLICY (06-17-06)

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.    (a)    Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

(i)    the occupancy, use, or enjoyment of the Land;

(ii)    the character, dimensions, or location of any improvement erected on the Land;

(iii)    the subdivision of land; or

(iv)    environmental protection;

or the effect of any violation of these laws, ordinances, or governmental regulations.  This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

(b)    Any governmental police power.  This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2.    Rights of eminent domain.  This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3.    Defects, liens, encumbrances, adverse claims, or other matters

(a)    created, suffered, assumed, or agreed to by the Insured Claimant;

(b)    not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

(c)    resulting in no loss or damage to the Insured Claimant;

(d)    attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or

(e)    resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.

4.    Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is

(a)    a fraudulent conveyance or fraudulent transfer; or

(b)    a preferential transfer for any reason not stated in Covered Risk 9 of this policy.

5.    Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The above policy form may be issued to afford either Standard Coverage or Extended Coverage.  In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

### EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses,  that arise by reason of:

CLTA Preliminary Report Form – Modified (11-17-06)

File No:  117082431

[The above policy form may be issued to afford either Standard Coverage or Extended Coverage.  In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

1.   (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency  that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2.   Any facts, rights, interests, or claims that are not shown in the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.

3.   Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.

4.   Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and that are not shown by the Public Records.

5.   (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

6.   Any lien or right to a lien for services, labor or material not shown by the Public Records.

7.   [Variable exceptions such as taxes, easements, CC&R's, etc. shown here.]

## ALTA EXPANDED COVERAGE RESIDENTIAL LOAN POLICY (12-02-13)

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.   (a)   Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

(i)   the occupancy, use, or enjoyment of the Land;

(ii)   the character, dimensions, or location of any improvement erected on the Land;

(iii)   the subdivision of land; or

(iv)   environmental protection;

or the effect of any violation of these laws, ordinances, or governmental regulations.  This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk  5, 6, 13(c), 13(d), 14 or 16.

(b)   Any governmental police power.  This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.

2.   Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3.   Defects, liens, encumbrances, adverse claims, or other matters

(a)   created, suffered, assumed, or agreed to by the Insured Claimant;

(b)   not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

(c)   resulting in no loss or damage to the Insured Claimant;

(d)   attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 16, 17, 18, 19, 20, 21, 22, 23, 24, 27 or 28); or

(e)   resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

CLTA Preliminary Report Form – Modified (11-17-06)

File No:  117082431

4.   Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.

5.   Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury, or any consumer credit protection or truth-in-lending law.  This Exclusion does not modify or limit the coverage provided in Covered Risk 26.

6.   Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to Advances or modifications made after the Insured has Knowledge that the vestee shown in Schedule A is no longer the owner of the estate or interest covered by this policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11.

7.   Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching subsequent to Date of Policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11(b) or 25.

8.   The failure of the residential structure, or any portion of it, to have been constructed before, on or after Date of Policy in accordance with applicable building codes.  This Exclusion does not modify or limit the coverage provided in Covered Risk 5 or 6.

9.   Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is

   (a)   a fraudulent conveyance or fraudulent transfer, or

   (b)   a preferential transfer for any reason not stated in Covered Risk 27(b) of this policy.

10.   Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.

11.   Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any  other substances.

File No:  117082431



Lawyers Title Company
7530 N. Glenoaks Blvd.
Burbank, CA 91504
Phone: (818) 767-2000
Fax: (818) 504-4937

Order No. 117082431

# Notice of Available Discounts

Pursuant to Section 2355.3 in Title 10 of the California Code of Regulations Fidelity National Financial, Inc. and its subsidiaries ("FNF") must deliver a notice of each discount available under our current rate filing along with the delivery of escrow instructions, a preliminary report or commitment. Please be aware that the provision of this notice does not constitute a waiver of the consumer's right to be charged the filed rate. As such, your transaction may not qualify for the below discounts.

You are encouraged to discuss the applicability of one or more of the below discounts with a Company representative. These discounts are generally described below; consult the rate manual for a full description of the terms, conditions and requirements for such discount. These discounts only apply to transactions involving services rendered by the FNF Family of Companies. This notice only applies to transactions involving property improved with a one-to-four family residential dwelling.

**FNF Underwritten Title Company**      **FNF Underwriter**
LTC – Lawyers Title Company            CLTIC – Commonwealth Land Title Insurance Co.

**Available Discounts**

**DISASTER LOANS (CLTIC)**
The charge for a Lender's Policy (Standard or Extended coverage) covering the financing or refinancing by an owner of record, within 24 months of the date of a declaration of a disaster area by the government of the United States or the State of California on any land located in said area, which was partially or totally destroyed in the disaster, will be 50% of the appropriate title insurance rate.

**EMPLOYEE RATE (LTC and CLTIC)**
No charge shall be made to employees (including employees on approved retirement) of the Company or its underwritten, subsidiary or affiliated title companies for policies or escrow services in connection with financing, refinancing, sale or purchase of the employees' bona fide home property. Waiver of such charges is authorized only in connection with those costs which the employee would be obligated to pay, by established custom, as a party to the transaction.

Notice of Available Discount                                    Mod. 10/21/2011

# FIDELITY NATIONAL FINANCIAL
# PRIVACY NOTICE

At Fidelity National Financial, Inc., we respect and believe it is important to protect the privacy of consumers and our customers. This Privacy Notice explains how we collect, use, and protect any information that we collect from you, when and to whom we disclose such information, and the choices you have about the use of that information. A summary of the Privacy Notice is below, and we encourage you to review the entirety of the Privacy Notice following this summary. You can opt-out of certain disclosures by following our opt-out procedure set forth at the end of this Privacy Notice.

| | |
|---|---|
| **Types of Information Collected.** You may provide us with certain personal information about you, like your contact information, addressdemographic information, social security number (SSN), driver's license, passport, other government ID numbers and/or financial information. We may also receive browsing information from your Internet browser, computer and/or mobile device if you visit or use our websites or applications. | **How Information is Collected.** We may collect personal information from you via applications, forms, and correspondence we receive from you and others related to our transactions with you. When you visit our websites from your computer or mobile device, we automatically collect and store certain information available to us through your Internet browser or computer equipment to optimize your website experience. |
| **Use of Collected Information.** We request and use your personal information to provide products and services to you, to improve our products and services, and to communicate with you about these products and services. We may also share your contact information with our affiliates for marketing purposes. | **When Information Is Disclosed.** We may disclose your information to our affiliates and/or nonaffiliated parties providing services for you or us, to law enforcement agencies or governmental authorities, as required by law, and to parties whose interest in title must be determined. |
| **Choices With Your Information.** Your decision to submit information to us is entirely up to you. You can opt-out of certain disclosure or use of your information or choose to not provide any personal information to us. | **Information From Children.** We do not knowingly collect information from children who are under the age of 13, and our website is not intended to attract children. |
| **Privacy Outside the Website.** We are not responsible for the privacy practices of third parties, even if our website links to those parties' websites. | **International Users.** By providing us with you information, you consent to its transfer, processing and storage outside of your country of residence, as well as the fact that we will handle such information consistent with this Privacy Notice. |
| **The California Online Privacy Protection Act.** Some FNF companies provide services to mortgage loan servicers and, in some cases, their websites collect information on behalf of mortgage loan servicers. The mortgage loan servicer is responsible for taking action or making changes to any consumer information submitted through those websites. | |
| **Your Consent To This Privacy Notice.** By submitting information to us or by using our website, you are accepting and agreeing to the terms of this Privacy Notice. | **Access and Correction; Contact Us.** If you desire to contact us regarding this notice or your information, please contact us at privacy@fnf.com or as directed at the end of this Privacy Notice. |

Effective May 1, 2015; Last updated March 1, 2017      Copyright © 2017. Fidelity National Financial, Inc. All Rights Reserved.

# FIDELITY NATIONAL FINANCIAL
## PRIVACY NOTICE

Fidelity National Financial, Inc. and its majority-owned subsidiary companies providing title insurance, real estate- and loan-related services (collectively, "FNF", "our" or "we") respect and are committed to protecting your privacy. We will take reasonable steps to ensure that your Personal Information and Browsing Information will only be used in compliance with this Privacy Notice and applicable laws. This Privacy Notice is only in effect for Personal Information and Browsing Information collected and/or owned by or on behalf of FNF, including Personal Information and Browsing Information collected through any FNF website, online service or application (collectively, the "Website").

## Types of Information Collected

We may collect two types of information from you: Personal Information and Browsing Information.

Personal Information. FNF may collect the following categories of Personal Information:
• contact information (*e.g.*, name, address, phone number, email address);
• demographic information (*e.g.*, date of birth, gender, marital status);
• social security number (SSN), driver's license, passport, and other government ID numbers;
• financial account information; and
• other personal information needed from you to provide title insurance, real estate- and loan-related services to you.

Browsing Information. FNF may collect the following categories of Browsing Information:
• Internet Protocol (or IP) address or device ID/UDID, protocol and sequence information;
• browser language and type;
• domain name system requests;
• browsing history, such as time spent at a domain, time and date of your visit and number of clicks;
• http headers, application client and server banners; and
• operating system and fingerprinting data.

## How Information is Collected

In the course of our business, we may collect *Personal Information* about you from the following sources:
• applications or other forms we receive from you or your authorized representative;
• the correspondence you and others send to us;
• information we receive through the Website;
• information about your transactions with, or services performed by, us, our affiliates or nonaffiliated third parties; and
• information from consumer or other reporting agencies and public records maintained by governmental entities that we obtain directly from those entities, our affiliates or others.

If you visit or use our Website, we may collect *Browsing Information* from you as follows:
• Browser Log Files. Our servers automatically log each visitor to the Website and collect and record certain browsing information about each visitor. The Browsing Information includes generic information and reveals nothing personal about the user.
• Cookies. When you visit our Website, a "cookie" may be sent to your computer. A cookie is a small piece of data that is sent to your Internet browser from a web server and stored on your computer's hard drive. When you visit a website again, the cookie allows the website to recognize your computer. Cookies may store user preferences and other information. You can choose whether or not to accept cookies by changing your Internet browser settings, which may impair or limit some functionality of the Website.

## Use of Collected Information

Information collected by FNF is used for three main purposes:
• To provide products and services to you or any affiliate or third party who is obtaining services on your behalf or in connection with a transaction involving you.
• To improve our products and services.
• To communicate with you and to inform you about our, our affiliates' and third parties' products and services, jointly or independently.

Effective May 1, 2015; Last updated March 1, 2017      Copyright © 2017. Fidelity National Financial, Inc. All Rights Reserved.

## When Information Is Disclosed

We may provide your Personal Information (excluding information we receive from consumer or other credit reporting agencies) and Browsing Information to various individuals and companies, as permitted by law, without obtaining your prior authorization. Such laws do not allow consumers to restrict these disclosures. Please see the section "Choices With Your Personal Information" to learn how to limit the discretionary disclosure of your Personal Information and Browsing Information.

Disclosures of your Personal Information may be made to the following categories of affiliates and nonaffiliated third parties:

- to third parties to provide you with services you have requested, and to enable us to detect or prevent criminal activity, fraud, material misrepresentation, or nondisclosure;
- to our affiliate financial service providers for their use to market their products or services to you;
- to nonaffiliated third party service providers who provide or perform services on our behalf and use the disclosed information only in connection with such services;
- to nonaffiliated third party service providers with whom we perform joint marketing, pursuant to an agreement with them to market financial products or services to you;
- to law enforcement or other governmental authority in connection with an investigation, or civil or criminal subpoena or court order;
- to lenders, lien holders, judgment creditors, or other parties claiming an interest in title whose claim or interest must be determined, settled, paid, or released prior to closing; and
- other third parties for whom you have given us written authorization to disclose your Personal Information.

We may disclose Personal Information and/or Browsing Information when required by law or in the good-faith belief that such disclosure is necessary to:

- comply with a legal process or applicable laws;
- enforce this Privacy Notice;
- investigate or respond to claims that any material, document, image, graphic, logo, design, audio, video or any other information provided by you violates the rights of a third party; or
- protect the rights, property or personal safety of FNF, its users or the public.

We maintain reasonable safeguards to keep your Personal Information secure. When we provide Personal Information to our affiliates or third party service providers as discussed in this Privacy Notice, we expect that these parties process such information in compliance with our Privacy Notice or in a manner that is in compliance with applicable privacy laws. The use of your information by a business partner may be subject to that party's own Privacy Notice. Unless permitted by law, we do not disclose information we collect from consumer or credit reporting agencies with our affiliates or others without your consent.

We reserve the right to transfer your Personal Information, Browsing Information, and any other information, in connection with the sale or other disposition of all or part of the FNF business and/or assets, or in the event of our bankruptcy, reorganization, insolvency, receivership or an assignment for the benefit of creditors. You expressly agree and consent to the use and/or transfer of the foregoing information in connection with any of the above described proceedings. We cannot and will not be responsible for any breach of security by a third party or for any actions of any third party that receives any of the information that is disclosed to us.

## Choices With Your Information

Whether you submit Personal Information or Browsing Information to FNF is entirely up to you. If you decide not to submit Personal Information or Browsing Information, FNF may not be able to provide certain services or products to you. The uses of your Personal Information and/or Browsing Information that, by law, you cannot limit, include:

- for our everyday business purposes – to process your transactions, maintain your account(s), to respond to law enforcement or other governmental authority in connection with an investigation, or civil or criminal subpoenas or court orders, or report to credit bureaus;
- for our own marketing purposes;
- for joint marketing with financial companies; and
- for our affiliates' everyday business purposes – information about your transactions and experiences.

Effective May 1, 2015; Last updated March 1, 2017      Copyright © 2017. Fidelity National Financial, Inc. All Rights Reserved.

You may choose to prevent FNF from disclosing or using your Personal Information and/or Browsing Information under the following circumstances ("opt-out"):

- for our affiliates' everyday business purposes – information about your creditworthiness; and
- for our affiliates to market to you.

To the extent permitted above, you may opt-out of disclosure or use of your Personal Information and Browsing Information by notifying us by one of the methods at the end of this Privacy Notice. We do not share your personal information with non-affiliates for their direct marketing purposes.

For California Residents: We will not share your Personal Information and Browsing Information with nonaffiliated third parties, except as permitted by California law. Currently, our policy is that we do not recognize "do not track" requests from Internet browsers and similar devices.

For Nevada Residents: You may be placed on our internal Do Not Call List by calling (888) 934-3354 or by contacting us via the information set forth at the end of this Privacy Notice. Nevada law requires that we also provide you with the following contact information: Bureau of Consumer Protection, Office of the Nevada Attorney General, 555 E. Washington St., Suite 3900, Las Vegas, NV 89101; Phone number: (702) 486-3132; email: BCPINFO@ag.state.nv.us.

For Oregon Residents:  We will not share your Personal Information and Browsing Information with nonaffiliated third parties for marketing purposes, except after you have been informed by us of such sharing and had an opportunity to indicate that you do not want a disclosure made for marketing purposes.

For Vermont Residents: We will not share your Personal Information and Browsing Information with nonaffiliated third parties, except as permitted by Vermont law, such as to process your transactions or to maintain your account. In addition, we will not share information about your creditworthiness with our affiliates except with your authorization.  For joint marketing in Vermont, we will only disclose your name, contact information and information about your transactions.

## Information From Children

The Website is meant for adults and is not intended or designed to attract children under the age of thirteen (13).We do not collect Personal Information from any person that we know to be under the age of thirteen (13) without permission from a parent or guardian. By using the Website, you affirm that you are over the age of 13 and will abide by the terms of this Privacy Notice.

## Privacy Outside the Website

The Website may contain links to other websites. FNF is not and cannot be responsible for the privacy practices or the content of any of those other websites.

## International Users

FNF's headquarters is located within the United States. If you reside outside the United States or are a citizen of the European Union, please note that we may transfer your Personal Information and/or Browsing Information outside of your country of residence or the European Union for any of the purposes described in this Privacy Notice. By providing FNF with your Personal Information and/or Browsing Information, you consent to our collection and transfer of such information in accordance with this Privacy Notice.

Effective May 1, 2015; Last updated March 1, 2017      Copyright © 2017. Fidelity National Financial, Inc. All Rights Reserved.

**The California Online Privacy Protection Act**
For some FNF websites, such as the Customer CareNet ("CCN"), FNF is acting as a third party service provider to a mortgage loan servicer. In those instances, we may collect certain information on behalf of that mortgage loan servicer via the website. The information which we may collect on behalf of the mortgage loan servicer is as follows:
- first and last name;
- property address;
- user name and password;
- loan number;
- social security number - masked upon entry;
- email address;
- three security questions and answers; and
- IP address.

The information you submit through the website is then transferred to your mortgage loan servicer by way of CCN. **The mortgage loan servicer is responsible for taking action or making changes to any consumer information submitted through this website. For example, if you believe that your payment or user information is incorrect, you must contact your mortgage loan servicer.**

CCN does not share consumer information with third parties, other than (1) those with which the mortgage loan servicer has contracted to interface with the CCN application, or (2) law enforcement or other governmental authority in connection with an investigation, or civil or criminal subpoenas or court orders. All sections of this Privacy Notice apply to your interaction with CCN, except for the sections titled "Choices with Your Information" and "Access and Correction." If you have questions regarding the choices you have with regard to your personal information or how to access or correct your personal information, you should contact your mortgage loan servicer.

## Your Consent To This Privacy Notice
By submitting Personal Information and/or Browsing Information to FNF, you consent to the collection and use of the information by us in compliance with this Privacy Notice. Amendments to the Privacy Notice will be posted on the Website. Each time you provide information to us, or we receive information about you, following any amendment of this Privacy Notice will signify your assent to and acceptance of its revised terms for all previously collected information and information collected from you in the future. We may use comments, information or feedback that you submit to us in any manner that we may choose without notice or compensation to you.

## Accessing and Correcting Information; Contact Us
If you have questions, would like to access or correct your Personal Information, or want to opt-out of information sharing with our affiliates for their marketing purposes, please send your requests to privacy@fnf.com or by mail or phone to:

Fidelity National Financial, Inc.
601 Riverside Avenue
Jacksonville, Florida 32204
Attn: Chief Privacy Officer
(888) 934-3354

Effective May 1, 2015; Last updated March 1, 2017     Copyright © 2017. Fidelity National Financial, Inc. All Rights Reserved.





This map/plat is being furnished as an aid in locating the herein described Land in relation to adjoining streets, natural boundaries and other land, and is not a survey of the land depicted. Except to the extent a policy of title insurance is expressly modified by endorsement, if any, the Company does not insure dimensions, distances, location of easements, acreage or other matters shown thereon.

# OWNER'S INFORMATION STATEMENT

STATE OF CALIFORNIA

COUNTY OF _____   } ss

To:   Commonwealth Land Title Insurance Company
Re:   Title Order 117082431 - LTLA - Ralph J. Mason, Jr.--So

The undersigned, first being duly sworn, deposes and says:

1). That I/we are the owner(s) of that certain real property located in the County of Los Angeles described in the report referenced above:

That the land is improved by a:
☐ Single Family residence:      ☐ one to four family residence
☐ Apartment building
☐ Office building
☐ Commercial building
☐ Combination office and commercial building
☐ Industrial building
☐ _____

2). That there have been no repairs, work of improvement or materials furnished to the premises within the last 12 months, except

_____

That the work of improvement or repairs, if any:
☐ Started on _____
☐ Was completed on _____
☐ Will be completed on _____

3). There are no unpaid bills for labor of material because of any improvements or repairs made to the above premises; except

_____

4). That there is no one in possession of or has access to the premises other than:
☐ the undersigned
☐ tenants based only on month-to-month rental agreements
☐ lessees based upon existing leases, copies of which are attached hereto*
☐ _____

5). That no person(s) other those mentioned above have any rights, easements, licenses, or agreements allowing them to use, encroach on, or travel over said real property except
_____(enter "none" if such is true)

6). That the undersigned has not received any supplemental tax bill which is unpaid.

7). That this declaration is given for the purpose of inducing the Company and Commonwealth Land Title Insurance Company to issue its policy(ies) of title insurance under the above referenced title order which may provide coverage as to the items mentioned above and that the statements made herein are true and correct of my/our knowledge.

*Declarant(s), please remember to attach copies.

Executed under penalty of perjury on the _____ day of _____, 2_____.

_____          _____
Signature                                Signature

Owner's Information Statement
(11/02)

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

333 South Hope Street, Thirty-Fifth Floor, Los Angeles, California 90071-1406

A true and correct copy of the foregoing document entitled (*specify*):  **CHAPTER 7 TRUSTEE'S MOTION FOR ORDER (1) AUTHORIZING SALE OF 910-912 WEST SHORB STREET, ALHAMBRA, CALIFORNIA, FREE AND CLEAR OF LIENS, CLAIMS, AND INTERESTS; (2) APPROVING PURCHASE AND SALE AGREEMENT; (3) ASSUMING AND ASSIGNING EXECUTORY CONTRACTS AND LEASES RELATING TO THE PROPERTY; (4) DETERMINING THAT BUYERS ARE GOOD FAITH PURCHASERS; AND (5) WAIVING THE FOURTEEN (14) DAY STAY PRESCRIBED BY RULE 6004(h) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE;  MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF JOHN J. MENCHACA, STEVEN F. WERTH, AND JAMES QUAN IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On September 28, 2017, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Ron Maroko**    ron.maroko@usdoj.gov
- **Elmer D Martin**    elmermartin@gmail.com
- **John J Menchaca (TR)**    jmenchaca@menchacacpa.com, ca87@ecfcbis.com;igaeta@menchacacpa.com
- **Kevin Tang**    tangkevin911@gmail.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Carol G Unruh**    cgunruh@sbcglobal.net
- **Steven Werth**    swerth@sulmeyerlaw.com,
  asokolowski@sulmeyerlaw.com;kmccamey@sulmeyerlaw.com;asokolowski@ecf.inforuptcy.com;swerth@ecf.inforuptcy.com

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On September 28, 2017, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Barry Russell
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1660 / Courtroom 1668
Los Angeles, CA 90012

☒ Service information continued on attached page

SFW\ 2605022.1 9/28/2017 (9:48 AM) This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                          **F 9013-3.1.PROOF.SERVICE**

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on September 28, 2017, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Leslie Cohen, Esq.  -  leslie@lesliecohenlaw.com
J'aime Williams, Esq.  -  jaime@lesliecohenlaw.com

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| September 28, 2017 | Kelli Mccamey | /s/ Kelli Mccamey |
|---|---|---|
| Date | Printed Name | Signature |

**2.  SERVED BY UNITED STATES MAIL**:

Shorb DCE, LLC
910 Shorb St Unit F
Alhambra, CA  91803-2448

Kevin Tang, Esq.
601 S Figueroa St Ste 4050
Los Angeles, CA  90017-5879

United States Trustee
915 Wilshire Blvd Ste 1850
Los Angeles, CA  90017-3560

Curt Wang
802 E Mission Rd
San Gabriel, CA  91776-2716

East West Bank
1001 Fair Oaks Ave
South Pasadena, CA  91030-3309

East West Bank
135 N Los Robles
Pasadena, CA  91101-1758

Elke Coffey
912 Shorb St Unit A
Alhambra, CA  91803-2445

Franchise Tax Board
Bankruptcy Section MS A340
PO Box 2952
Sacramento, CA  95812-2952

Internal Revenue Service
Centralized Insolvency Operations
PO Box 7346
Philadelphia, PA  19101-7346

James Wang
802 E Mission Rd
San Gabriel, CA  91776-2716

Los Angeles County Treasurer and
Tax Collector
PO Box 54110
Los Angeles, CA  90054-0110

Los Angeles County Tax Collector
225 N Hill St
Los Angeles, CA  90012-3253

Law Offices of Tom C Tsay Inc
208 E Valley Blvd Ste C
San Gabriel, CA  91776-6514

William Wright
404 North Del Mar Ave
San Gabriel , CA  91775-2926

SFW\ 2605022.1 9/28/2017 (9:48 AM) This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**