Howard M. Ehrenberg (CA State Bar No. 125527)
*hehrenberg@sulmeyerlaw.com*
Steven F. Werth (CA State Bar No. 205434)
*swerth@sulmeyerlaw.com*
**Sulmeyer**Kupetz
A Professional Corporation
333 South Hope Street, Thirty-Fifth Floor
Los Angeles, California 90071-1406
Telephone: 213.626.2311
Facsimile: 213.629.4520

Attorneys for John J. Menchaca
Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

In re

SHORB DCE, LLC,

Debtor.

Case No. 2:17-bk-14240-BR

Chapter 7

**MOTION OF CHAPTER 7 TRUSTEE TO DISALLOW PORTION OF CLAIM NO. 5 OF CURT WANG; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF STEVEN F. WERTH IN SUPPORT THEREOF**

Date: [To Be Set]
Time:
Place: Courtroom 1668
Roybal Federal Building
255 East Temple Street
Los Angeles, California 90012

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

**TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, CLAIMANT CURT WANG AND HIS COUNSEL, IF ANY, AND PARTIES ENTITLED TO NOTICE:**

John J. Menchaca, ("Trustee") the duly-appointed and acting Chapter 7 trustee of the bankruptcy estate ("Estate") of Shorb DCE, LLC ("Debtor"), respectfully moves this Court for an order **disallowing all but $8,978.87** of the claim of Mr. Curt Wang ("Claimant"), Claim No. 5 in the claims register in this case ("Claim").

A true and correct copy of the Claim is attached hereto as **Exhibit 1**. In the Claim, Claimant asserts a claim in the amount of $181,086,70 and that the basis of the claim is "Guarantor to the loan". A true and correct copy of a "Commercial Guaranty" which Claimant produced to Trustee on February 22, 2018, which Trustee believes to be related to the Claim, is attached hereto as **Exhibit 2** (the "Guaranty"). A true and correct copy of a "Business Loan Agreement" which Claimant produced to Trustee on that same date, which Trustee believes to be related to the Claim, is attached hereto as **Exhibit 3** (the "Loan Agreement").

The Trustee understands from communications with Claimant and his investigation of relevant documents that the Claim arises from the following facts: (1) the Debtor and Metro United Bank ("Lender") entered into the Loan Agreement, (2) Claimant signed the Guaranty in favor of Lender, in which Claimant agreed to guaranty the Debtor's payment obligations pursuant to a certain promissory note ("Note") which appears to have been executed contemporaneously with the Guaranty and the Loan Agreement (the Trustee does not possess a copy of the Note), and (3) Claimant made certain payments to Lender, relating to the Note and Guaranty.

The Claim attaches a chart ("Chart") purporting to identify payments made by Claimant on behalf of the Debtor, identifying 16 payments made largely in 2007, 2008, and 2009. All but two of these payments were made in 2009 or earlier. Even assuming that all payments identified in the Chart were made on the date stated therein, and that the Debtor was liable to reimburse Claimant for those payments, then Claimant's right to reimbursement from the Debtor arose as of the date these payments were made, that is, in 2007, 2008, and 2009. More than four years passed before the commencement of this bankruptcy case, and as such, the Claim is unenforceable due to

California's four-year statute of limitations, except as to two payments made in 2015, and interest thereon, in the total amount of $8,978.87.

**WHEREFORE**, the Trustee respectfully requests that the Court enter an Order:

1. Granting this Motion;
2. Allowing the Claim in the reduced amount of $8,978.87; and
3. Granting further relief as the Court deems proper.

DATED: April 5, 2018

**Sulmeyer**Kupetz
A Professional Corporation

By: [signature]
Steven F. Werth
Attorneys for John J. Menchaca
Chapter 7 Trustee

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to 11 U.S.C. §502, Rule 3007 of the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rule 3007-1, the Trustee hereby objects to a portion of the Claim.

## I.

## STATEMENT OF FACTS

On April 4, 2017 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code. On June 6, 2017, creditor William B. Wright filed his "Motion Of Secured Creditor William B. Wright To Convert Case To Chapter 7 Pursuant To 11 U.S.C. §1112(b)(1)" [Docket No. 34], which this Court granted on August 30, 2017 [Docket No. 85]. On August 30, 2017, John J. Menchaca was appointed as interim Chapter 7 Trustee of the Debtor's bankruptcy estate (see Docket No. 86), in which capacity he continues to act.

On October 27, 2017, Claimant filed the Claim. Other than the Chart, the Claim includes no information providing a basis for the Claim. On February 22, 2018, in response to the Trustee's request to provide documents in support of the Claim, Claimant emailed Trustee's counsel the Guaranty and the Loan Agreement. On February 26, 2018, Trustee's counsel Steven F. Werth sent an email (the "Email") to Claimant requesting additional information relating to the Claim. A true and correct copy of the Email is attached hereto as **Exhibit 4**. As of the date of this Motion, Claimant has not responded to the Email.

## II.

## ARGUMENT

### A. The Claim Is Barred In Part By The Statute Of Limitations

Section 502(b)(1) of the Bankruptcy Code provides that claims shall be allowed except to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1). The Claim is barred, except as to $8,978.87, due to California's four-year statute of limitations.

Section 337 of California Code of Civil Procedure provides that an "action upon a contract, obligation or liability founded upon a writing" must be brought within four years. Although the

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

Trustee has requested all written agreements between the Claimant and Debtor regarding Debtor's obligation to repay Claimant for Claimant's payments made to Lender, the Trustee has not received that information. Nor does the Trustee possess a copy of the Note. Thus, it remains unclear whether Claimant could assert an action against the Debtor upon a written contract, at all.

Regardless of whether, the Chart indicates that all payments made by Claimant to Lender occurred in 2007, 2008, and 2009, except for two payments totaling (principal and interest) $8,978.87. Even assuming that Claimant possessed a cause of action against the Debtor to recover the 2007, 2008, and 2009 payments, the statute of limitations on such a claim passed in 2013—long before the Petition Date.

As such, those portions of the Claim relating to payments made in 2007, 2008, and 2009 are barred by California's four year statute of limitations, and the Claim should be allowed only in the amount of $8,978.87.

**B. Burden Of Proof**

All allegations set forth in a properly filed proof of claim are taken as true and, if the allegations set forth all facts necessary to establish a claim and are not self-contradictory, the proof of claim constitutes *prima facie* – that is, "on its face", or "accepted as correct until proven otherwise"-- evidence of the validity and amount of the claim. 11 U.S.C. § 502(a); Fed. R. of Bankr. P. 3001(f).

Once the objector raises "facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves," Wright v. Holm (In re Holm), 931 F.2d 620, 623 (9th Cir. 1991), then "the burden reverts to the claimants to prove the validity of the claim by a preponderance of the evidence." Ashford v. Consolidated Pioneer Mortgage (In re Consolidated Pioneer Mortgage), 178 B.R. 222, 226 (B.A.P. 9th Cir. 1995), aff'd, 91 F.3d 151 (9th Cir. 1996). "[T]he ultimate burden of persuasion is always on the claimant." Holm, 931 F.2d at 623.

In this case, the Claim is "self-contradictory" in that (1) the Chart indicates that the payments forming the basis of the Claim were made significantly prior to four years before the Petition Date, and thus are barred by California's four year statute of limitations (assuming that the four-year statute of limitations applies as opposed to California's two-year statute of limitations for

enforcement of oral contracts), and (2) the Guaranty and the Loan Agreement do not support the Claim.

Additionally, the Trustee submits that the Claim should not be given "on its face" validity for the further reason that on February 26, 2018, Trustee's counsel requested further information in support of the Claim but did not receive a response from Claimant, and thus there is no actual evidence, beyond the Chart, that: (1) Claimant actually made the payments identified in the Chart, (2) the Debtor agreed to reimburse Claimant for such payments, or (3) that Claimant is entitled to interest in any amount. Per In re Heath, 331 B.R. 424 (B.A.P. 9th Cir. 2005), creditors have an obligation to respond to formal or informal requests for information. Id. at 436. If the creditor does not provide information or is unable to support its claim, then that in itself may raise an evidentiary basis to object to the unsupported aspects of the claim, thereby coming within Section 502(b)'s grounds to disallow the claim as lacking "on its face" validity. Id. at 437.

As such, the Trustee submits that the Claim should not be given "on its face" validity requiring the Trustee to submit evidence of its invalidity—except as to $8,978.87. Even if the Court disagrees, the Trustee submits that he has raised "facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves" and thus the Claim should be allowed at the reduced amount of $8,978.87 for that additional reason.

## III.

## CONCLUSION

The Trustee respectfully requests that this Court allow the Claim in the reduced amount of $8,978.87.

DATED: April 5, 2018

**Sulmeyer**Kupetz
A Professional Corporation

By: ______________________
Steven F. Werth
Attorneys for John J. Menchaca
Chapter 7 Trustee

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

**DECLARATION OF STEVEN F. WERTH**

I, Steven F. Werth, declare as follows:

1. I am an attorney duly admitted to practice before this Court. I am an attorney with **Sulmeyer**Kupetz, A Professional Corporation, attorneys of record for John J. Menchaca, Chapter 7 Trustee. If called as a witness, I could and would competently testify to all facts within my personal knowledge except where stated upon information and belief.

2. I make this declaration in support of the "Motion Of Chapter 7 Trustee To Disallow Portion Of Claim No. 5 Of Curt Wang" (the "Motion"). Capitalized terms in this declaration have the meaning given them in the Motion.

3. A true and correct copy of the Claim is attached hereto as **Exhibit 1**.

4. A true and correct copy of the Guaranty is attached hereto as **Exhibit 2**. This is the document I received from Claimant in an email dated February 22, 2018.

5. A true and correct copy of the Loan Agreement is attached hereto as **Exhibit 3**. This is the document I received from Claimant in an email dated February 22, 2018.

6. A true and correct copy of the Email is attached hereto as **Exhibit 4**.

7. As of the date of this declaration, I have not received any response from Claimant to the Email.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 5th day of April, 2018, at Los Angeles, California.

[signature]

Steven F. Werth

# EXHIBIT 1



**Fill in this information to identify the case:**

Debtor 1 Shorb DCE LLC

Debtor 2 (Spouse, if filing) ____

United States Bankruptcy Court for the: Central District of CA.

Case number 2:17-bK-14240-BR

FILED
OCT 27 2017
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: Deputy Clerk

Official Form 410

# Proof of Claim

04/16

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents**; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

## Part 1: *Identify the Claim*

**1. Who is the current creditor?**

Curt Wang
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor ____

**2. Has this claim been acquired from someone else?**

☒ No
☐ Yes. From whom? ____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Name: Curt Wang
Number Street: 808 E. Mission Rd.
City State ZIP Code: San Gabriel CA. 91776
Contact phone: 626-643-8181
Contact email: wangcurt@Yahoo

**Where should payments to the creditor be sent? (if different)**

Name ____
Number Street ____
City State ZIP Code ____
Contact phone ____
Contact email ____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**4. Does this claim amend one already filed?**

☒ No
☐ Yes. Claim number on court claims registry (if known) ____ Filed on ____ MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☒ No
☐ Yes. Who made the earlier filing? ____

**Part 2: Give Information About the Claim as of the Date the Case Was Filed**

6. Do you have any number you use to identify the debtor?
   - ☐ No
   - ☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: 1 5 0 2

   Checking Acc.

7. How much is the claim? $ 181,086.70. Does this amount include interest or other charges?
   - ☐ No
   - ☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. What is the basis of the claim?

   Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

   Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

   Limit disclosing information that is entitled to privacy, such as health care information.

   Guarantor to the loan

9. Is all or part of the claim secured?
   - ☑ No
   - ☐ Yes. The claim is secured by a lien on property.

   Nature of property:
   - ☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.
   - ☐ Motor vehicle
   - ☐ Other. Describe: ______________________

   **Basis for perfection:** ______________________

   Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

   Value of property: $__________

   Amount of the claim that is secured: $__________

   Amount of the claim that is unsecured: $__________ (The sum of the secured and unsecured amounts should match the amount in line 7.)

   Amount necessary to cure any default as of the date of the petition: $__________

   Annual Interest Rate (when case was filed)_______%
   - ☐ Fixed
   - ☐ Variable

10. Is this claim based on a lease?
    - ☑ No
    - ☐ Yes. Amount necessary to cure any default as of the date of the petition. $__________

11. Is this claim subject to a right of setoff?
    - ☐ No
    - ☐ Yes. Identify the property: ______________________

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $______ |
| ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $______ |
| ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $______ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $______ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $______ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $______ |

* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☒ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date 9-21-2017 (MM / DD / YYYY)

Signature [signature]

**Print the name of the person who is completing and signing this claim:**

Name: CURT (First name) ____ (Middle name) WANG (Last name)

Title: Guarantor, Partner

Company: ______
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address: 808 E. Mission Rd. (Number Street)
San Gabriel, (City) CA, (State) 91776 (ZIP Code)

Contact phone: 626-643-8181 Email: wangcurt(at)yahoo

**Shorb LLC Loan Balance**

*As of 09/21/2017*

| Date | # of Months | Amount | Int Rate | Interest | Interest Total |
|---|---|---|---|---|---|
| 11/9/2007 | 118 | 6,000.00 | 0.90% | 54.00 | 6,372.00 |
| 12/5/2007 | 117 | 6,000.00 | 0.90% | 54.00 | 6,318.00 |
| 1/3/2008 | 116 | 6,000.00 | 0.90% | 54.00 | 6,264.00 |
| 2/1/2008 | 115 | 6,000.00 | 0.90% | 54.00 | 6,210.00 |
| 3/7/2008 | 114 | 6,000.00 | 0.90% | 54.00 | 6,156.00 |
| 4/4/2008 | 113 | 6,000.00 | 0.90% | 54.00 | 6,102.00 |
| 5/6/2008 | 112 | 6,000.00 | 0.90% | 54.00 | 6,048.00 |
| 6/1/2008 | 111 | 6,000.00 | 0.90% | 54.00 | 5,994.00 |
| 7/1/2008 | 110 | 6,000.00 | 0.90% | 54.00 | 5,940.00 |
| 8/11/2008 | 109 | 6,000.00 | 0.90% | 54.00 | 5,886.00 |
| 10/24/2008 | 106 | 8,000.00 | 0.90% | 72.00 | 7,632.00 |
| 12/16/2008 | 105 | 1,000.00 | 0.90% | 9.00 | 945.00 |
| 3/20/2009 | 102 | 11,500.00 | 0.90% | 103.50 | 10,557.00 |
| 9/15/2009 | 96 | 6,000.00 | 0.90% | 54.00 | 5,184.00 |
| 5/27/2015 | 27 | 5,565.69 | 0.90% | 50.09 | 1,352.46 |
| 5/27/2015 | 27 | 1,657.72 | 0.90% | 14.92 | 402.83 |
| | | **$ 93,723.41** | | | **$ 87,363.29** |

# EXHIBIT 2

# COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| | | | | 16 / 144 | 0370219800 | JK | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** SHORB DCE LLC, A CALIFORNIA LIMITED LIABILITY COMPANY
802 E. MISSION DR
SAN GABRIEL, CA 91776

**Lender:** METRO UNITED BANK
CITY OF INDUSTRY
17870 CASTLETON ST. STE 100
CITY OF INDUSTRY, CA 91748
(626) 435-1800

**Guarantor:** CURT WANG
6939 N.VISTA ST
SAN GABRIEL, CA 91776

---

**GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, attorneys' fees, arising from any and all debts, liabilities and obligations that Borrower individually or collectively or interchangeably with others, owes or will owe Lender under the Note and Related Documents and any renewals, extensions, modifications, refinancings, consolidations and substitutions of the Note and Related Documents.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty.

**OBLIGATIONS OF MARRIED PERSONS.** Any married person who signs this Guaranty hereby expressly agrees that recourse under this Guaranty may be had against both his or her separate property and community property.

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, **without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time:** (A) to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S FINANCIAL STATEMENTS.** Guarantor agrees to furnish Lender with the following:

**Annual Statements.** As soon as available, but in no event later than one-hundred-twenty (120) days after the end of each fiscal year, Guarantor's balance sheet and income statement for the year ended, prepared by Guarantor.

**Tax Returns.** As soon as available, but in no event later than thirty (30) days after the applicable filing date for the tax reporting period ended, Federal and other governmental tax returns, prepared by a certified public accountant satisfactory to Lender.

All financial reports required to be provided under this Guaranty shall be prepared in accordance with GAAP, applied on a consistent basis, and certified by Guarantor as being true and correct.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender to (A) make any presentment, protest, demand, or notice of any kind, including notice of change of any terms of repayment of the Indebtedness, default by Borrower or any other guarantor or surety, any action or nonaction taken by Borrower, Lender, or any other guarantor or surety of Borrower, or the creation of new or additional Indebtedness; (B) proceed against any person, including Borrower, before proceeding against Guarantor; (C) proceed against any collateral for the Indebtedness, including Borrower's collateral, before proceeding against Guarantor; (D) apply any payments or proceeds received against the Indebtedness in any order; (E) give notice of the terms, time, and place of any sale of the collateral pursuant to the Uniform Commercial Code or any other law governing such sale; (F) disclose any information about the Indebtedness, the Borrower, the collateral, or any other guarantor or surety, or about any action or nonaction of Lender; or (G) pursue any remedy or course of action in Lender's power whatsoever.

Guarantor also waives any and all rights or defenses arising by reason of (H) any disability or other defense of Borrower, any other guarantor or surety or any other person; (I) the cessation from any cause whatsoever, other than payment in full, of the Indebtedness; (J) the application of proceeds of the Indebtedness by Borrower for purposes other than the purposes understood and intended by Guarantor and Lender; (K) any act of omission or commission by Lender which directly or indirectly results in or contributes to the discharge of Borrower or any other guarantor or surety, or the Indebtedness, or the loss or release of any collateral by operation of law or otherwise; (L) any statute of limitations in any action under this Guaranty or on the Indebtedness; or (M) any modification or change in terms of the Indebtedness, whatsoever, including without limitation, the renewal, extension, acceleration, or other change in the time payment of the Indebtedness is due and any change in the interest rate.

Guarantor waives all rights of subrogation, reimbursement, indemnification, and contribution and any other rights and defenses that are or may become available to Guarantor by reason of California Civil Code Sections 2787 to 2855, inclusive.

Guarantor waives all rights and any defenses arising out of an election of remedies by Lender even though that the election of remedies, such as a non-judicial foreclosure with respect to security for a guaranteed obligation, has destroyed Guarantor's rights of subrogation and reimbursement against Borrower by operation of Section 580d of the California Code of Civil Procedure or otherwise.

consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**Definitions.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**BORROWER.** The word "Borrower" means SHORB DCE LLC, A CALIFORNIA LIMITED LIABILITY COMPANY and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**GUARANTOR.** The word "Guarantor" means everyone signing this Guaranty, including without limitation CURT WANG, and in each case, any signer's successors and assigns.

**GUARANTY.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**INDEBTEDNESS.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**LENDER.** The word "Lender" means METRO UNITED BANK, its successors and assigns.

**NOTE.** The word "Note" means PROMISSORY NOTE DATED MARCH 5, 2007 IN THE AMOUNT OF $850,000.00 FROM SHORB DCE LLC, A CALIFORNIA LIMITED LIABILITY COMPANY TO METRO UNITED BANK, TOGETHER WITH ALL RENEWALS OF, EXTENSIONS OF, MODIFICATIONS OF, REFINANCINGS OF, CONSOLIDATIONS OF AND SUBSTITUTIONS FOR THE PROMISSORY NOTE.

**RELATED DOCUMENTS.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED MARCH 5, 2007.**

GUARANTOR:

X
CURT WANG

LASER PRO Lending, Ver. 5.36.00.004 Copr. Harland Financial Solutions, Inc. 1997, 2007. All Rights Reserved. - CA L:\CFI\LPL\E20.FC TR-687 PR-18

# EXHIBIT 3

# BUSINESS LOAN AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $850,000.00 | 03-05-2007 | 03-01-2014 | 0370219886 | 16 / 144 | 037021900 | JK | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** SHORB DCE LLC, A CALIFORNIA LIMITED LIABILITY COMPANY
802 E. MISSION DR
SAN GABRIEL, CA 91776

**Lender:** METRO UNITED BANK
CITY OF INDUSTRY
17870 CASTLETON ST. STE 100
CITY OF INDUSTRY, CA 91748
(626) 435-1800

THIS BUSINESS LOAN AGREEMENT dated March 5, 2007, is made and executed between SHORB DCE LLC, A CALIFORNIA LIMITED LIABILITY COMPANY ("Borrower") and METRO UNITED BANK ("Lender") on the following terms and conditions. Borrower has received prior commercial loans from Lender or has applied to Lender for a commercial loan or loans or other financial accommodations, including those which may be described on any exhibit or schedule attached to this Agreement ("Loan"). Borrower understands and agrees that: (A) in granting, renewing, or extending any Loan, Lender is relying upon Borrower's representations, warranties, and agreements as set forth in this Agreement; (B) the granting, renewing, or extending of any Loan by Lender at all times shall be subject to Lender's sole judgment and discretion; and (C) all such Loans shall be and remain subject to the terms and conditions of this Agreement.

**TERM.** This Agreement shall be effective as of March 5, 2007, and shall continue in full force and effect until such time as all of Borrower's Loans in favor of Lender have been paid in full, including principal, interest, costs, expenses, attorneys' fees, and other fees and charges, or until March 1, 2014.

**CONDITIONS PRECEDENT TO EACH ADVANCE.** Lender's obligation to make the initial Advance and each subsequent Advance under this Agreement shall be subject to the fulfillment to Lender's satisfaction of all of the conditions set forth in this Agreement and in the Related Documents.

**Loan Documents.** Borrower shall provide to Lender the following documents for the Loan: (1) the Note; (2) Security Agreements granting to Lender security interests in the Collateral; (3) financing statements and all other documents perfecting Lender's Security Interests; (4) evidence of insurance as required below; (5) guaranties; (6) together with all such Related Documents as Lender may require for the Loan; all in form and substance satisfactory to Lender and Lender's counsel.

**Borrower's Authorization.** Borrower shall have provided in form and substance satisfactory to Lender properly certified resolutions, duly authorizing the execution and delivery of this Agreement, the Note and the Related Documents. In addition, Borrower shall have provided such other resolutions, authorizations, documents and instruments as Lender or its counsel, may require.

**Payment of Fees and Expenses.** Borrower shall have paid to Lender all fees, charges, and other expenses which are then due and payable as specified in this Agreement or any Related Document.

**Representations and Warranties.** The representations and warranties set forth in this Agreement, in the Related Documents, and in any document or certificate delivered to Lender under this Agreement are true and correct.

**No Event of Default.** There shall not exist at the time of any Advance a condition which would constitute an Event of Default under this Agreement or under any Related Document.

**REPRESENTATIONS AND WARRANTIES.** Borrower represents and warrants to Lender, as of the date of this Agreement, as of the date of each disbursement of loan proceeds, as of the date of any renewal, extension or modification of any Loan, and at all times any Indebtedness exists:

**Organization.** Borrower is a limited liability company which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of California. Borrower is duly authorized to transact business in all other states in which Borrower is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which Borrower is doing business. Specifically, Borrower is, and at all times shall be, duly qualified as a foreign limited liability company in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. Borrower has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. Borrower maintains an office at 802 E. MISSION DR, SAN GABRIEL, CA 91776. Unless Borrower has designated otherwise in writing, the principal office is the office at which Borrower keeps its books and records including its records concerning the Collateral. Borrower will notify Lender prior to any change in the location of Borrower's state of organization or any change in Borrower's name. Borrower shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to Borrower and Borrower's business activities.

**Assumed Business Names.** Borrower has filed or recorded all documents or filings required by law relating to all assumed business names used by Borrower. Excluding the name of Borrower, the following is a complete list of all assumed business names under which Borrower does business: **None.**

**Authorization.** Borrower's execution, delivery, and performance of this Agreement and all the Related Documents have been duly authorized by all necessary action by Borrower and do not conflict with, result in a violation of, or constitute a default under (1) any provision of (a) Borrower's articles of organization or membership agreements, or (b) any agreement or other instrument binding upon Borrower or (2) any law, governmental regulation, court decree, or order applicable to Borrower or to Borrower's properties.

**Financial Information.** Each of Borrower's financial statements supplied to Lender truly and completely disclosed Borrower's financial condition as of the date of the statement, and there has been no material adverse change in Borrower's financial condition subsequent to the date of the most recent financial statement supplied to Lender. Borrower has no material contingent obligations except as disclosed in such financial statements.

**Legal Effect.** This Agreement constitutes, and any instrument or agreement Borrower is required to give under this Agreement when delivered will constitute legal, valid, and binding obligations of Borrower enforceable against Borrower in accordance with their respective terms.

**Properties.** Except as contemplated by this Agreement or as previously disclosed in Borrower's financial statements or in writing to Lender and as accepted by Lender, and except for property tax liens for taxes not presently due and payable, Borrower owns and has good title to all of Borrower's properties free and clear of all Security Interests, and has not executed any security documents or financing statements relating to such properties. All of Borrower's properties are titled in Borrower's legal name, and Borrower has not used or filed a financing statement under any other name for at least the last five (5) years.

**Hazardous Substances.** Except as disclosed to and acknowledged by Lender in writing, Borrower represents and warrants that: (1) During the period of Borrower's ownership of the Collateral, there has been no use, generation, manufacture, storage, treatment, disposal, release

Borrower, upon request of Lender, shall notify such party to permit Lender free access to such records at all reasonable times and to provide Lender with copies of any records it may request, all at Borrower's expense.

**Environmental Compliance and Reports.** Borrower shall comply in all respects with any and all Environmental Laws; not cause or permit to exist, as a result of an intentional or unintentional action or omission on Borrower's part or on the part of any third party, on property owned and/or occupied by Borrower, any environmental activity where damage may result to the environment, unless such environmental activity is pursuant to and in compliance with the conditions of a permit issued by the appropriate federal, state or local governmental authorities; shall furnish to Lender promptly and in any event within thirty (30) days after receipt thereof a copy of any notice, summons, lien, citation, directive, letter or other communication from any governmental agency or instrumentality concerning any intentional or unintentional action or omission on Borrower's part in connection with any environmental activity whether or not there is damage to the environment and/or other natural resources.

**Additional Assurances.** Make, execute and deliver to Lender such promissory notes, mortgages, deeds of trust, security agreements, assignments, financing statements, instruments, documents and other agreements as Lender or its attorneys may reasonably request to evidence and secure the Loans and to perfect all Security Interests.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Borrower fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Borrower's failure to discharge or pay when due any amounts Borrower is required to discharge or pay under this Agreement or any Related Documents, Lender on Borrower's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on any Collateral and paying all costs for insuring, maintaining and preserving any Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Borrower. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity.

**NEGATIVE COVENANTS.** Borrower covenants and agrees with Lender that while this Agreement is in effect, Borrower shall not, without the prior written consent of Lender:

**Indebtedness and Liens.** (1) Except for trade debt incurred in the normal course of business and indebtedness to Lender contemplated by this Agreement, create, incur or assume indebtedness for borrowed money, including capital leases, (2) sell, transfer, mortgage, assign, pledge, lease, grant a security interest in, or encumber any of Borrower's assets (except as allowed as Permitted Liens), or (3) sell with recourse any of Borrower's accounts, except to Lender.

**Continuity of Operations.** (1) Engage in any business activities substantially different than those in which Borrower is presently engaged, (2) cease operations, liquidate, merge, transfer, acquire or consolidate with any other entity, change its name, dissolve or transfer or sell Collateral out of the ordinary course of business, or (3) make any distribution with respect to any capital account, whether by reduction of capital or otherwise.

**Loans, Acquisitions and Guaranties.** (1) Loan, invest in or advance money or assets to any other person, enterprise or entity, (2) purchase, create or acquire any interest in any other enterprise or entity, or (3) incur any obligation as surety or guarantor other than in the ordinary course of business.

**Agreements.** Borrower will not enter into any agreement containing any provisions which would be violated or breached by the performance of Borrower's obligations under this Agreement or in connection herewith.

**CESSATION OF ADVANCES.** If Lender has made any commitment to make any Loan to Borrower, whether under this Agreement or under any other agreement, Lender shall have no obligation to make Loan Advances or to disburse Loan proceeds if: (A) Borrower or any Guarantor is in default under the terms of this Agreement or any of the Related Documents or any other agreement that Borrower or any Guarantor has with Lender; (B) Borrower or any Guarantor dies, becomes incompetent or becomes insolvent, files a petition in bankruptcy or similar proceedings, or is adjudged a bankrupt; (C) there occurs a material adverse change in Borrower's financial condition, in the financial condition of any Guarantor, or in the value of any Collateral securing any Loan; or (D) any Guarantor seeks, claims or otherwise attempts to limit, modify or revoke such Guarantor's guaranty of the Loan or any other loan with Lender.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Loan.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with any Loan.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or any Grantor's property or Borrower's or any Grantor's ability to repay the Loans or perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate

from time to time, together with all exhibits and schedules attached to this Business Loan Agreement from time to time.

**Borrower.** The word "Borrower" means SHORB DCE LLC, A CALIFORNIA LIMITED LIABILITY COMPANY and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all property and assets granted as collateral security for a Loan, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, collateral mortgage, deed of trust, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien, charge, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Grantor.** The word "Grantor" means each and all of the persons or entities granting a Security Interest in any Collateral for the Loan, including without limitation all Borrowers granting such a Security Interest.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Loan.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means PROMISSORY NOTE DATED MARCH 5, 2007 IN THE AMOUNT OF $850,000.00 FROM SHORB DCE LLC, A CALIFORNIA LIMITED LIABILITY COMPANY TO METRO UNITED BANK.

**Lender.** The word "Lender" means METRO UNITED BANK, its successors and assigns.

**Loan.** The word "Loan" means any and all loans and financial accommodations from Lender to Borrower whether now or hereafter existing, and however evidenced, including without limitation those loans and financial accommodations described herein or described on any exhibit or schedule attached to this Agreement from time to time.

**Note.** The word "Note" means PROMISSORY NOTE DATED MARCH 5, 2007 IN THE AMOUNT OF $850,000.00 FROM SHORB DCE LLC, A CALIFORNIA LIMITED LIABILITY COMPANY TO METRO UNITED BANK, TOGETHER WITH ALL RENEWALS OF, EXTENSIONS OF, MODIFICATIONS OF, REFINANCINGS OF, CONSOLIDATIONS OF AND SUBSTITUTIONS FOR THE PROMISSORY NOTE.

**Permitted Liens.** The words "Permitted Liens" mean (1) liens and security interests securing Indebtedness owed by Borrower to Lender; (2) liens for taxes, assessments, or similar charges either not yet due or being contested in good faith; (3) liens of materialmen, mechanics, warehousemen, or carriers, or other like liens arising in the ordinary course of business and securing obligations which are not yet delinquent; (4) purchase money liens or purchase money security interests upon or in any property acquired or held by Borrower in the ordinary course of business to secure indebtedness outstanding on the date of this Agreement or permitted to be incurred under the paragraph of this Agreement titled "Indebtedness and Liens"; (5) liens and security interests which, as of the date of this Agreement, have been disclosed to and approved by the Lender in writing; and (6) those liens and security interests which in the aggregate constitute an immaterial and insignificant monetary amount with respect to the net value of Borrower's assets.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan.

**Security Agreement.** The words "Security Agreement" mean and include without limitation any agreements, promises, covenants, arrangements, understandings or other agreements, whether created by law, contract, or otherwise, evidencing, governing, representing, or creating a Security Interest.

**Security Interest.** The words "Security Interest" mean, without limitation, any and all types of collateral security, present and future, whether in the form of a lien, charge, encumbrance, mortgage, deed of trust, security deed, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever whether created by law, contract, or otherwise.

BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS BUSINESS LOAN AGREEMENT AND BORROWER AGREES TO ITS TERMS. THIS BUSINESS LOAN AGREEMENT IS DATED MARCH 5, 2007.

BORROWER:

SHORB DCE LLC, A CALIFORNIA LIMITED LIABILITY COMPANY

By: ______________________
CURT WANG, Managing Member

LENDER:

# EXHIBIT 4

**Werth, Steven F.**

---

**From:** Werth, Steven F.
**Sent:** Monday, February 26, 2018 10:23 AM
**To:** 'Curt Wang'
**Subject:** RE: In re Shorb DCE, LLC

Curt, I have reviewed these documents, thanks. Could you please send me documents which show the following:

(1) That you made the payments totaling $93,723.41 which you identify in the proof of claim
(2) That show an agreement between you and Shorb DCE, LLC that if you pay any amount under the Guaranty, Shorb DCE, LLC is obligated to reimburse you for that payment.
(3) That show that you are entitle to interest on any payments you made.

It appears from reviewing your claim that almost all of these payments were made in 2009 and before. That is a long time ago, and any claim arising from those payments would appear to be barred by California's four-year statute of limitations. If you have any documents or information indicating that these claims are not barred by the statute of limitations, please send it to me.

Additionally, Elke Coffey has informed me that you received some payment in 2015 in the amount of $23,710.00, arising from a loan made by your brother to Shorb.

Please give me a call at your convenience and let's discuss. Thanks.

Steve

Steven F. Werth
**Sulmeyer**Kupetz
A Professional Corporation
333 South Hope Street, Thirty-Fifth Floor, Los Angeles, CA 90071
Voice: 213.617.5210 Fax: 213.629.4520

E-Mail: swerth@sulmeyerlaw.com
URL: www.sulmeyerlaw.com

*******************************************************************
This e-mail message is for the sole use of the intended recipient(s) and may contain confidential or legally privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail, delete this message from your computer and destroy all copies of the original message.
*******************************************************************

**From:** Curt Wang [mailto:wangcurt@yahoo.com]
**Sent:** Thursday, February 22, 2018 3:20 PM
**To:** Werth, Steven F. <swerth@sulmeyerlaw.com>
**Subject:** Re: In re Shorb DCE, LLC

Here is the papers that you requested.Call me if you have any questions.

Best Regards,

**Curt Wang**

**Broker Owner | Ko Tai Realty INC**
**802 E. Mission Rd | San Gabriel | CA 91776**
**Phone: 626-237-2178 | Fax: 626-287-0914**
**Cell: 626-643-8181 | BRE# 00619215**
**Email: wangcurt@yahoo.com**

On Friday, February 16, 2018, 11:09:44 AM PST, Werth, Steven F. <swerth@sulmeyerlaw.com> wrote:

Mr. Wang, I hope you are well. Please see attached letter regarding your claim in the Shorb DCE bankruptcy case. Please give me a call at your convenience.

Steven F. Werth
**Sulmeyer**Kupetz
A Professional Corporation
333 South Hope Street, Thirty-Fifth Floor, Los Angeles, CA 90071
Voice: 213.617.5210 Fax: 213.629.4520

E-Mail: swerth@sulmeyerlaw.com
URL: https://protect-us.mimecast.com/s/EJ-fCpYR9yCx0XXiDMwSj?domain=sulmeyerlaw.com

******************************************************************

This e-mail message is for the sole use of the intended recipient(s) and may contain confidential or legally privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail, delete this message from your computer and destroy all copies of the original message.

******************************************************************

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 333 South Hope Street, Thirty-Fifth Floor, Los Angeles, CA 90071-1406.

A true and correct copy of the foregoing document entitled (*specify*): **MOTION OF CHAPTER 7 TRUSTEE OBJECTING TO PORTION OF CLAIM NO. 5 OF CURT WANG; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF STEPHEN F. WERTH IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On April 5, 2018, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Leslie A Cohen leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com, allie@lesliecohenlaw.com
- Ron Maroko ron.maroko@usdoj.gov
- Elmer D Martin elmermartin@gmail.com
- John J Menchaca (TR) jmenchaca@menchacacpa.com, ca87@ecfcbis.com, igaeta@menchacacpa.com
- United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov
- Carol G Unruh cgunruh@sbcglobal.net
- Steven Werth swerth@sulmeyerlaw.com, asokolowski@sulmeyerlaw.com, kmccamey@sulmeyerlaw.com, asokolowski@ecf.inforuptcy.co, swerth@ecf.inforuptcy.com

**2. SERVED BY UNITED STATES MAIL**:
On April 5, 2018, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Barry Russell
United States Bankruptcy Court
Central District of California
Roybal Federal Building and Courthouse
255 E. Temple Street, Ste 1660 / Crtrm 1668
Los Angeles, CA 90012

Claimant (Claim No. 5):
Curt Wang
808 E. Mission Rd.
San Gabriel, CA 91776

Curt Wang
Ko Tai Realty Inc.
802 E. Mission Rd.
San Gabriel, CA 91776

Stephen Forde
1613 Chelsea Road
San Marino, CA 91108

Kevin Tang
601 S Figueroa St Ste 4050
Los Angeles, CA 90017

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) April 5, 2018, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Claimant (Claim No. 5) – Curt Wang - *wangcurt@yahoo.com*

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 5, 2018 | Kelli Mccamey | */s/ Kelli Mccamey* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |