Ure Law Firm
800 West 6th Street, Suite 940
Los Angeles, California 90017
TEL.: (213) 202-6070
FAX.: (213) 202-6075
Thomas B. Ure (CA State Bar No. 170492)
email:  tom@urelawfirm.com

(SPACE BELOW FOR FILING STAMP ONLY)

Attorney for:___Curt Wang____

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

| | |
|---|---|
| IN RE:<br><br>SHORB DCE, LLC,<br><br>       Debtor-in-Possession.<br><br><br>_____ | **Case No. 2:17-bk-14240-BR**<br><br>**CHAPTER 7**<br><br>**EXHIBITS A AND B TO INTERESTED PARTY CURT WANG'S MOTION FOR RELIEF FROM JUDGMENT GRANTING DEBTOR'S EMERGENCY MOTION FOR ORDER AUTHORIZING DISBURSEMENT OF SURPLUS FUNDS, PURSUANT TO FRCP 60(b) AND FRBP 9024**<br><br>HEARING:<br>DATE:     August 1, 2018<br>TIME:     2:00 p.m.<br>PLACE:    Courtroom 1668, 16th Floor<br>           255 E. Temple Street<br>           Los Angeles, CA 90012 |

**TO:    THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE; AND ALL OTHER INTERESTED PARTIES:**

Party in interest Curt Wang hereby submits the attached Exhibits A and B to the pending Motion for Relief from Judgment Granting Debtor's Emergency Motion for Order Authorizing Disbursement of Surplus Funds, Pursuant to FRCP 60(b) and FRB 9024 which were inadvertently omitted from the filed motion.

///

1

2  Dated:  July 24, 2018

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

By:   /s/ Thomas B. Ure
      Thomas B. Ure
      Attorney for Creditor/Party in Interest
      Curt Wang

# EXHIBIT A

**Secretary of State**
**Statement of Information**
(Limited Liability Company)

**LLC-12**

133    A-S

17-332534

**FILED**
Secretary of State
State of California

**APR 17 2017**

27/20/PC/CC
This Space For Office Use Only

IMPORTANT — Read instructions before completing this form.

Filing Fee – $20.00

Copy Fees – First page $1.00; each attachment page $0.50;
Certification Fee - $5.00 plus copy fees

| 1. Limited Liability Company Name (Enter the exact name of the LLC. If you registered in California using an alternate name, see instructions.) |
|---|
| SHORB DCE, LLC |

| 2. 12-Digit Secretary of State File Number | 3. State, Foreign Country or Place of Organization (only if formed outside of California) |
|---|---|
| 200701110001 | CALIFORNIA |

**4. Business Addresses**

| a. Street Address of Principal Office - Do not list a P.O. Box | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 910 W SHORB ST UNT F | ALHAMBRA | CA | 91803 |

| b. Mailing Address of LLC, if different than Item 4a | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| | | | |

| c. Street Address of California Office, if Item 4a is not in California - Do not list a P.O. Box | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| | | | |

**5. Manager(s) or Member(s)**

If no managers have been appointed or elected, provide the name and address of each member. At least one name and address must be listed. If the manager/member is an individual, complete Items 5a and 5c (leave Item 5b blank). If the manager/member is an entity, complete Items 5b and 5c (leave Item 5a blank). Note: The LLC cannot serve as its own manager or member. If the LLC has additional managers/members, enter the name(s) and addresses on Form LLC-12A (see instructions).

| a. First Name, if an Individual - Do not complete Item 5b | Middle Name | Last Name | Suffix |
|---|---|---|---|
| DAVID | C | KWOK | |

| b. Entity Name - Do not complete Item 5a |
|---|
| |

| c. Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 910 W SHORB ST UNT F | ALHAMBRA | CA | 91803 |

**6. Service of Process** (Must provide either Individual OR Corporation.)

INDIVIDUAL – Complete Items 6a and 6b only. Must include agent's full name and California street address.

| a. California Agent's First Name (if agent is not a corporation) | Middle Name | Last Name | Suffix |
|---|---|---|---|
| DAVID | C | KWOK | |

| b. Street Address (if agent is not a corporation) - Do not enter a P.O. Box | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 910 W SHORB ST UNT F | ALHAMBRA | CA | 91803 |

CORPORATION – Complete Item 6c only. Only include the name of the registered agent Corporation.

| c. California Registered Corporate Agent's Name (if agent is a corporation) – Do not complete Item 6a or 6b |
|---|
| |

**7. Type of Business**

| a. Describe the type of business or services of the Limited Liability Company |
|---|
| INVESTMENT IN REAL ESTATE |

**8. Chief Executive Officer, if elected or appointed**

| a. First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |

| b. Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| | | | |

**9. The information contained herein, including any attachments, is true and correct.**

| 04/12/2017 | DAVID KWOK | MANAGER | |
|---|---|---|---|
| Date | Type or Print Name of Person Completing the Form | Title | Signature |

Return Address (Optional) (For communication from the Secretary of State related to this document, or if purchasing a copy of the filed document enter the name of a person or company and the mailing address. This information will become public when filed. SEE INSTRUCTIONS BEFORE COMPLETING.)

Name:　　　⌐ RAYMOND CHAO　　　　　　　　　　　　　　⌐

Company:　　RAYMOND CHAO ACCOUNTANCY CORP

Address:　　1641 W MAIN ST STE 222

City/State/Zip:　⌊ ALHAMBRA, CA 91801　　　　　　　　　⌋

LLC-12 (REV 01/2017)

1/2
1

2017 California Secretary of State
www.sos.ca.gov/business/be

17-332534



**Attachment to Statement of Information**
(Limited Liability Company)

**LLC-12A Attachment**

**A. Limited Liability Company Name**

SHORB DCE, LLC

This Space For Office Use Only

| B.  12-Digit Secretary of State File Number | C.  State or Place of Organization (only if formed outside of California) |
|---|---|
| 200701110001 | CALIFORNIA |

**D. List of Additional Manager(s) or Member(s) -** If the manager/member is an individual, enter the individual's name and address.  If the manager/member is an entity, enter the entity's name and address.  Note:  The LLC cannot serve as its own manager or member.

| | First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|---|
| 2a. First Name – Do not complete Item 2b | CURT | | WANG | |
| 2b. Entity Name – Do not complete Item 2a | | | | |
| 2c. Address | 802 E MISSION RD | City (no abbreviations) SAN GABRIEL | State CA | Zip Code 91776 |
| 3a. First Name – Do not complete Item 3b | | | | |
| 3b. Entity Name – Do not complete Item 3a | | | | |
| 3c. Address | | City (no abbreviations) | State | Zip Code |
| 4a. First Name – Do not complete Item 4b | | | | |
| 4b. Entity Name – Do not complete Item 4a | | | | |
| 4c. Address | | City (no abbreviations) | State | Zip Code |
| 5a. First Name – Do not complete Item 5b | | | | |
| 5b. Entity Name – Do not complete Item 5a | | | | |
| 5c. Address | | City (no abbreviations) | State | Zip Code |
| 6a. First Name – Do not complete Item 6b | | | | |
| 6b. Entity Name – Do not complete Item 6a | | | | |
| 6c. Address | | City (no abbreviations) | State | Zip Code |
| 7a. First Name – Do not complete Item 7b | | | | |
| 7b. Entity Name – Do not complete Item 7a | | | | |
| 7c. Address | | City (no abbreviations) | State | Zip Code |
| 8a. First Name – Do not complete Item 8b | | | | |
| 8b. Entity Name – Do not complete Item 8a | | | | |
| 8c. Address | | City (no abbreviations) | State | Zip Code |

LLC-12A - Attachment (EST 07/2016)

2/2

2016 California Secretary of State
www.sos.ca.gov/business/be

File **200701110001**



## State of California
### Secretary of State

**LIMITED LIABILITY COMPANY
ARTICLES OF ORGANIZATION**

**A $70.00 filing fee must accompany this form.**

**IMPORTANT – Read instructions before completing this form.**

**FILED**
In the office of the Secretary of State
of the State of California

**JAN 0 9 2007**

This Space For Filing Use Only

---

**ENTITY NAME** (End the name with the words "Limited Liability Company," "Ltd. Liability Co.," or the abbreviations "LLC" or "L.L.C.")

1. NAME OF LIMITED LIABILITY COMPANY

SHORB DCE, LLC

**PURPOSE** (The following statement is required by statute and may not be altered.)

2. THE PURPOSE OF THE LIMITED LIABILITY COMPANY IS TO ENGAGE IN ANY LAWFUL ACT OR ACTIVITY FOR WHICH A LIMITED LIABILITY COMPANY MAY BE ORGANIZED UNDER THE BEVERLY-KILLEA LIMITED LIABILITY COMPANY ACT.

**INITIAL AGENT FOR SERVICE OF PROCESS** (If the agent is an individual, the agent must reside in California and both Items 3 and 4 must be completed. If the agent is a corporation, the agent must have on file with the California Secretary of State a certificate pursuant to Corporations Code section 1505 and Item 3 must be completed (leave Item 4 blank)

3. NAME OF INITIAL AGENT FOR SERVICE OF PROCESS

DAVID KWOK

| 4. IF AN INDIVIDUAL, ADDRESS OF INITIAL AGENT FOR SERVICE OF PROCESS IN CALIFORNIA | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 802 E MISSION DR., | SAN GABRIEL | CA | 91776 |

**MANAGEMENT** (Check only one)

5. THE LIMITED LIABILITY COMPANY WILL BE MANAGED BY:

- [✔] ONE MANAGER
- [ ] MORE THAN ONE MANAGER
- [ ] ALL LIMITED LIABILITY COMPANY MEMBER(S)

**ADDITIONAL INFORMATION**

6. ADDITIONAL INFORMATION SET FORTH ON THE ATTACHED PAGES, IF ANY, IS INCORPORATED HEREIN BY THIS REFERENCE AND MADE A PART OF THIS CERTIFICATE.

**EXECUTION**

7. I DECLARE I AM THE PERSON WHO EXECUTED THIS INSTRUMENT, WHICH EXECUTION IS MY ACT AND DEED.

SIGNATURE OF ORGANIZER        DATE 1/5/07

DAVID KWOK

TYPE OR PRINT NAME OF ORGANIZER

**RETURN TO** (Enter the name and the address of the person or firm to whom a copy of the filed document should be returned.)

| 8. NAME | YANG & CO., CPA A PC |
|---|---|
| FIRM | 113 W LAS TUNAS DR. #201 |
| ADDRESS | SAN GABRIEL, CA 91776 |
| CITY/STATE/ZIP | |

LLC-1 (REV 03/2005)                    APPROVED BY SECRETARY OF STATE

# EXHIBIT B

# OPERATING AGREEMENT
## FOR
### SHORB DCE, LLC

## Recital

This Operating Agreement is entered into effective __1/18/07__ ,
among the persons who are signatories to this Agreement and shall govern the relationship among
the persons as Members of Company and between Company and the persons as Members,
pursuant to the Act and the Articles, as either may be amended from time to time. In consideration
of their mutual promises, covenants, and agreements, the parties as signatories to this Agreement do
hereby promise, covenant, and agree as follows:

## ARTICLE I
## Introductory Matters

1.1      FORMATION, REQUIRED NUMBER OF MEMBERS, TERMS AND
PURPOSES

Pursuant to the Act, __DAVID KWOK__ and
_____ , acknowledge and confirm they are the initial Members of
the limited liability company organized under the laws of the State of California known as
__SHORB DCE, LLC__ , whose Articles were filed, effective __JAN 09, 2007__ .
A copy of the Articles is attached. Company shall at all times have at least two members [or one
member]. Unless sooner terminated, Company shall have the term provided in the Articles.
*Act. 17050(b).*

The general purposes for the organization of Company shall be those set forth in its
Articles. Company may, as provided in its Articles and the Agreement, exercise all of the powers
described in Title 2.5 of Corporations Code of the State of California also known as the Beverly-
Killea Limited Liability Company Act, as the Act may be amended from time to time.

1.2      REGULATION OF INTERNAL AFFAIRS BY OPERATING AGREEMENT

Consistent with the Articles and the Act, the internal affairs of Company and the conduct of its business shall be governed and regulated by the Agreement as it shall be amended by Members from time to time. The term of the Agreement shall begin on the date the Articles are filed and accepted by the Secretary of State and shall be co-terminus with the period of duration of Company provided in the Articles unless Company is earlier terminated upon its voluntary or involuntary dissolution in accordance with the Agreement.
*Act § 17001(ab).*

1.3     LAWS GOVERNING OPERATING AGREEMENT

The Agreement is subject to, and governed by, the mandatory provisions of the Act and the Articles filed with the Secretary of State, as both may be amended from time to time. In the event of a direct conflict between the provisions of the Agreement and the mandatory provisions of the Act or the provisions of the Articles, such provisions of the Act or the Articles, as the case may be, will be controlling.

1.4     USE OF FULL LEGAL NAME OF COMPANY REQUIRED

All business of Company shall be conducted under the name SHORB DCE, LLC                               , until such time as Members shall designate otherwise and file amendments to the Articles in accordance with the Articles and the Act. The phrase "LLC" shall always appear as part of the name of Company on all correspondence, stationery, checks, invoices and any and all documents and papers executed by Company and as otherwise required by the Act.

1.5     LIMITATION OF AUTHORITY OF A MEMBER

No Member that is not a Manager, shall have any authority to act for, or to undertake or assume, any obligation, debt, duty or responsibility on behalf of the Company. Authority to act for the Company shall be vested in the Manager as provided in Article III.

1.6     LIMITATION ON POWER TO CONTRACT DEBTS

Except as otherwise provided in the Agreement including Subparagraph 3.4.B, no debt shall be contracted or liability incurred by or on behalf of Company, except by one (1) or more of its Managers if management of Company has been vested by the Members in a Manager or Managers and is within the scope of the powers described in Paragraph 3.4 or, if management of Company is retained by Members, then by any Member as provided in the Articles.

1.7     TITLE TO ALL PROPERTIES IN NAME OF COMPANY

Real and personal property owned or purchased by Company shall be held and

2

owned, and conveyance made, in the name of Company. Instruments and documents providing for the acquisition, mortgage or disposition of property of Company shall be valid and binding upon Company, except as otherwise limited in the Agreement including Subparagraph 3.4.B., if executed by A) one (1) or more Managers of Company having a Manager or Managers or B) one (1) or more Members of Company if management has been retained in the Members of Company.

1.8    REQUIRED MAINTENANCE OF REGISTERED OFFICE AND AGENT IN CALIFORNIA

Company shall have an agent for service of process in California who may be either a natural person or a corporation meeting the qualifications of Corporations Code Section 17061. Every agent for service of process must have a street address for the receipt of service of process. The street address of the agent for receipt of service of process is the registered office of the limited liability company in California. Within 30 days after changing the location of his office from one address to another in California, an agent for service of process must file a certificate with the Secretary of State setting forth the names of the limited liability companies represented by him, the address at which he, she, or it has maintained the office for each of the limited liability companies, and the new address to which the office is transferred.

1.9    REQUIRED MAINTENANCE OF RECORDS IN CALIFORNIA OFFICE

Company shall continuously maintain an office in the State of California which may but need not be a place of its business in this state or its registered office, at which it shall keep:

a.    A current list of the full name and last known business address of each Member and of each holder of an Economic Interest in alphabetical order together with the Capital Contribution and Percentage Share in net profits and net losses;

b.    If the Articles provide Company is to be managed by one or more managers and not by all of its members, a current list of the full name and business or residence address of each Manager;

c.    A copy of the filed Articles and all amendments thereto, together with any powers of attorney pursuant to which the Articles or any amendments thereto were executed;

d.    Copies of Company's federal, state and local income tax returns or information returns and reports, if any, for the six (6) most recent taxable years;

3

e.   A copy of the Agreement and any amendments thereto, together with any powers of attorney pursuant to which any written operating agreement or amendments were executed; and

f.   Copies of financial statements of Company for the six (6) most recent taxable years; and

*Act § 17057, 17058.*

The above described records are subject to inspection and copying at the reasonable request, and at the expense, of any member during ordinary business hours.

1.10    PLACES OF BUSINESS OUTSIDE STATE OF CALIFORNIA

Members may identify other places of business of Company outside the State of California, appoint agents for service of process and make filings as may be required or desirable under the laws of such other places.

1.11    OTHER FORMATION MATTERS

A.   Adoption of Company Seal

Members shall adopt a company seal circular in form containing the words SHORB DCE, LLC                                       , together with the date of organization of Company. The Members may also adopt a seal circular in form containing the words SHORB DCE, LLC                         , and such other information as shall be appropriate.

B.   Maintenance of Company Record Book

Members shall authorize the maintenance of a Company Record Book to include the Articles, the Agreement and any amendments thereto and the minutes of meetings (or consents in lieu of meetings) of Members and Managers and other important documents of Company.

C.   Establishment of Bank Accounts

Members shall authorize the establishment of one or more depository accounts for the funds of Company and designate persons authorized to draw against such accounts on behalf of Company (more specifically described elsewhere in the Agreement).

4

D.    Reimbursement of Expenses of Organization

Members may authorize Company to pay the expenses of organization and reimburse any person advancing funds for this purpose.

E.    Certificate of Manager of Limited Liability Company

Members may authorize the preparation of a certificate of Manager of Limited Liability Company setting forth the full legal name of Company, date of organization, the laws of organization, term of existence, good standing status as of the date of the certificate, name of manager, general description of authority of manager, taxpayer identification number with attachment of Article III as it may have been amended to date of this Agreement setting forth the management and control of the operations of Company.

1.12    DEFINITION OF TERMS

The terms used in the Agreement with their initial letters capitalized, shall, unless the context otherwise requires, have the meanings specified in this Paragraph 1.12 or, if not defined in this Paragraph 1.12, elsewhere in the Agreement. Any term not defined below or in this agreement shall be defined as provided in the Act or Regulations Sections 1.704-1(b), -2, -3 and -4, as appropriate to the context thereof. When used in the Agreement subject to the foregoing, the following terms shall have the meanings set forth below:

A.    "Act" shall mean the Beverly-Killea Limited Liability Act as amended from time to time.
*Act § 17000.*

B.    "Affiliate" shall mean any individual, partnership, corporation, trust, or other entity or association, directly or indirectly, through one or more intermediaries, controlling, controlled by, or under common control with the Member. The term "control," as used in the immediately preceding sentence, means, with respect to a corporation, the right to exercise, directly or indirectly, more than 50 percent of the voting rights attributable to the controlled corporation, and, with respect to any individual, partnership, trust, other entity or association, the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of the controlled entity.

C.    "Agreement" shall mean this Operating Agreement between all Members of Company regulating the affairs of Company and the conduct of its business, as originally executed and as amended or restated from time to time, and shall refer to the Agreement as a whole, unless the context otherwise requires.
*Act § 17001(a)(b).*

5

D.    "Articles" shall mean the Articles of Organization for Company originally filed with the Secretary of State of California, including all amendments thereto or restatements thereof and shall mean the Articles as a whole unless the context otherwise requires. *Act § 170001(b).*

E.    "Bankruptcy" shall mean, *(i)* the entry of a decree or order for relief by a court of competent jurisdiction in any involuntary case brought against a person under any bankruptcy, insolvency or other similar law (collectively, "Debtor Relief Laws") generally affecting the rights of creditors and relief of debtors now or hereafter in effect; *(ii)* the appointment of a receiver, liquidator, assignee, custodian, trustee, sequestrator or other similar agent under applicable Debtor Relief Laws for a person or for any substantial part of his, her, or its assets or property; *(iii)* the ordering of the winding up or liquidation of a person's affairs; *(iv)* the filing of a petition in any such involuntary bankruptcy case, which petition remains not dismissed for a period of 180 days or which is not dismissed or suspended pursuant to Section 305 of the Federal Bankruptcy Code (or any corresponding provision of any future United States bankruptcy law); *(v)* the commencement of a voluntary case under any applicable Debtor Relief Law now or hereafter in effect; *(vi)* the consent to the entry of an order for relief in an involuntary case under any such law or to the appointment of or the taking of possession by a receiver, liquidator, assignee, trustee, custodian, sequestrator or other similar agent under any applicable Debtor Relief Laws for a person or for any substantial part of his, her, or its assets or property; or *(vii)* the making by a person of any general assignment for the benefit of his, her or its creditors.

F.    "Capital Account" shall mean the amount of the capital interest of a Member determined in accordance with Article IV of the Agreement. *Act § 17001(d).*

G.    "Capital Contribution" shall mean the value of any money, property (including promissory notes or other binding obligation to contribute money or property), obligation to render services to Company as capital in that Member's capacity as a Member, as shown in Exhibit A, as the same may be amended from time to time. *Act § 17001(d).*

H.    "Code" shall mean the Internal Revenue Code of 1986, as amended. All references herein to sections of the Code shall include any corresponding provision or provisions of succeeding law.

I.    "Company" shall mean    SHORB DCE                     , LLC.

J.    "Distribution" shall mean a transfer of money or property by Company to its Members without consideration. *Act § 17001(f).*

6

K    "Disassociation Event" shall mean, with respect to any Member, the death, retirement, withdrawal, resignation, expulsion, bankruptcy or dissolution of the Member or occurrence of any other event which terminates his continued membership in the Company.

L.    "Economic Interest" shall mean the right to share in the Net Profits, Net Losses, deductions, credit or similar items and to receive distributions from Company but such term shall include neither voting rights nor information rights except as provided in Act Section 17106.

M.    . "Information Rights" shall mean the right to inspect, copy or obtain information and documents concerning the affairs of Company as provided in Act Section 17106 and in Paragraphs 6.3 and 6.4 of the Agreement.
*Act § 17106.*

N.    "Interest" shall mean singly or collectively as the context indicates any or all of the rights of ownership of a Membership Interest in Company including Economic Interests, Voting Interests and Information Interests.

O.    "Majority-In-Interest" shall mean, unless otherwise defined for a particular purpose herein, more than fifty percent (50%) of the interest of Members in current Net Profits. *Act § 17001(v).*

P.    "Manager" shall mean a person elected by Members of Company to manage Company.
*Act § 17001(w).*

Q.    "Member" shall mean (i) each person (other than any person who has withdrawn, been expelled, died, retired or dissolved) who has been admitted to Company as a Member in accordance with the Articles and the Agreement, and (ii) solely for purposes of determining rights under the Agreement to Net Profits, Net Losses, deductions, credits, similar items and distributions, each holder of Economic Interest.
*Act §17001(x), (x), 17, 303*

R.    "Membership Interest" in Company shall mean the entire ownership interest of a Member in Company at any particular time, including collectively Economic Interests, Voting Interests and Information Interests of such Member as provided in the Agreement and under the Act, together with the obligations of such Member to comply with all terms and provisions of the Agreement. A Membership Interest constitutes personal property. A Member or assignee of any Economic Interest of a Member has no interest in specific property of Company.
*Act § 17001(z).*

S.    "Officer" shall mean any person elected or appointed pursuant to Paragraph 3.10.

7

T.    "Percentage Interest" shall mean, i) for purposes of determining Voting Interests of a member, the percentage of a Member set forth opposite the name of such Member under the column "Member's Percentage Voting Interest" in Exhibit A hereto and, ii) for purposes of allocations of Net Profits and Net Losses to a Member, the percentage of a Member set forth opposite the name of such Member, respectively, in the columns headed "Member's Net Profits Percentage" or "Member's Net Losses Percentage" in Exhibit B hereto as such percentage interests may be applied under Paragraph 5.1 and adjusted from time to time pursuant to the terms of the Agreement.    A Percentage Interest for only the above purposes shall be determined, unless otherwise provided herein, in accordance with the relative proportions of the Capital Accounts of Members, effective as of the first day of the Company's fiscal year but with all distributions under Paragraph 5.2, hereof to be deemed to have occurred on such day immediately prior to determination of Percentage Interest of a Member.

U.    "Person" shall mean individuals, general partnerships, limited partnerships, other limited liability companies, corporations, trusts, estates, real estate investment trusts and any other association.

V.    "Voting Interest" shall mean those rights of a Member described in Article III of the Agreement as they may be limited in the Agreement, the Articles and the Act.

W.    "Regulations" shall mean, unless the context clearly indicates otherwise, the regulations currently in force as final or temporary that have been issued by the U.S. Department of Treasury pursuant to its authority under the Internal Revenue Code of 1986, as amended.

X.    "Return of Capital" shall mean any distribution to a Member to the extent of the positive balance in the Capital Account of the Member immediately before the distribution.  *Act § 17001(aj).*

Y.    "Secretary of State" shall mean the Secretary of State of California or his or her duly appointed delegate unless another state is mentioned in the same context.

Z.    "Registered Office" shall mean the office maintained at the street address of the agent for service of process of the Company in California.

8

## ARTICLE II

**Members, Capital Contributions and Withdrawals,
Membership Interests, Admissions, Certificates and
Limitations on Liabilities and Responsibilities of Members**

2.1    NAMES, ADDRESSES OF INITIAL MEMBERS AND THEIR CAPITAL CONTRIBUTIONS

The initial Members shall be each of the persons executing the Agreement and making the initial Capital Contributions set forth opposite their respective names in Exhibit A. Each such person is admitted as a Member effective as of the beginning of the term of the Agreement. Members, their respective addresses, their respective aggregate Capital Contributions to Company, and their respective Voting Interests and Percentage Interests in Net Profits and Net Losses (Economic Interests) of Company are set forth on <u>Exhibits A and B</u>, as the exhibits may be amended from time to time.

2.2    FORM OF CAPITAL CONTRIBUTIONS

As provided in the Articles, Members shall make the initial Capital Contributions in the form of money, property (including promissory notes) or services rendered or to be rendered or other obligation to contribute money or property or to render services. Members may make any subsequent Capital Contributions in any type of money, property (including promissory notes) and services rendered or to be rendered as may be agreed upon by all of the Members. No Member shall be required to make any Capital Contributions to Company other than the capital contributions set opposite to the name of Member on Exhibit A, as it may be amended from time to time. In order to obtain additional funds or for other business purposes, a Member may contribute additional capital to Company, but only upon the written consent of all other Members. [As a condition to the acceptance of property other than money in Company, the value of the property shall be determined by agreement of the contributing member and Company as evidenced by a signed writing.]
Act §17200(b) and §17201(c).

2.3    ADMISSION OF ADDITIONAL MEMBERS

Members may admit to Company any person as an additional Member who will participate in the profits, losses, available cash flow, and ownership of the assets of Company on such terms as are determined by all Members. Admission of any such additional Member shall require the written consent of the then existing Members holding a Majority-In-Interest, or more. Admission of any additional Member may result in a dilution of the Percentage Interests of the then Members in their Voting Interests and Economic Interests (Net Profits and Net Losses).

9

*Act § 17303(a).*

2.4      LIMITATIONS ON WITHDRAWALS OF CAPITAL CONTRIBUTION

Subject to other provisions of the Agreement and Section 17252 of the Act, a Member may rightfully demand the return of his, her or its Capital Contributions only upon the dissolution of Company, or, unless otherwise permitted in the Articles or the Agreement, upon the approval of Members holding a Majority-In-Interest. No Member shall receive property or any part of his, her or its Capital Contribution until *(i)* all liabilities of Company, except liabilities to Members on account of their Capital Contributions, have been paid or there remains property of Company sufficient to pay them; *(ii)* the consent of Members holding a Majority-In-Interest or more is had, unless the return of the Capital Contributions may be rightfully demanded as provided in the Act; *(iii)* the Articles are canceled or so amended as to allow the withdrawal or reduction. In the absence of a statement in the Articles to the contrary or the consent of Members holding a Majority-In-Interest, or more, a Member, irrespective of the nature of his, her or its contribution, has no right to demand and receive cash in return for his, her or its Capital Contribution until the dissolution of the Company. The withdrawn Member shall have only the rights of a holder of an Economic Interest with respect to the withdrawing Member's interest in the Company to which a holder of an Economic Interest in company is entitled, and then only with respect to distributions, if made pursuant to Paragraphs 5.3 through and including 5.7.

*Act § 17252.*

2.5      PERCENTAGE INTEREST OF MEMBER AND CERTIFICATES

The Membership Interest of Company held by each Member may be divided into a Percentage Interest to represent, respectively, voting power, allocation of Net Profits and allocation of Net Loesses as reflected, respectively, on <u>Exhibit A</u> and <u>Exhibit B</u> as each exhibit may be amended from time to time. The Membership Interest in Company may be represented by a certificate of membership. The exact contents of a certificate of membership may be determined by action of the Members but shall be issued substantially in conformity with the following requirements:

a.      Each certificate of membership shall be consecutively numbered beginning with Number 1, as it is issued, shall be signed by the authorized representatives of Company and shall be impressed with Company seal or a facsimile thereof.

b.      Each certificate of membership shall state the name of Company, the laws of the state under which Company is organized, the name of the person to whom issued, the date of issue of the certificate, and the Percentage Interest represented by the certificate.

     c.     Each certificate shall contain a statement of the designations, preferences, qualifications, limitations, restrictions, and special or relative rights of the Interests represented thereby, set forth in full or summarized on the face or back of the certificates which Company shall issue. Or, in lieu thereof, the certificate may set forth that the Company shall furnish the statement or summary to any holder of the Interests upon request and without charge.

*Act § 17105(a).*

## 2.6    CANCELLATION AND REPLACEMENT OF CERTIFICATES

All certificates of membership surrendered to Company for transfer shall be canceled and no new certificates of membership shall be issued in lieu thereof until the former certificates for a like number of Membership Interests shall have been surrendered and canceled, except as herein provided with respect to lost, stolen, or destroyed certificates. Any Member claiming that his, her or its certificate of membership is lost, stolen, or destroyed may make an affidavit or affirmation of that fact and lodge the same with a Manager of Company, accompanied by a signed application for a new certificate. Thereupon, and upon the giving of a satisfactory bond of indemnity to Company not exceeding an amount double the value of the Membership Interests as represented by such certificate (the necessity for such bond and the amount required to be determined by a Manager of Company), a new certificate may be issued of the same tenor and representing the same Percentage Interests as were represented by the certificate alleged to be lost, stolen, or destroyed.

## 2.7    LIMITATIONS ON LIABILITY OF MEMBERS FOR DEBTS OF COMPANY

Except as provided in California Corporations Code Section 17254 relating to distributions by Company and Section 17101(b) relating to responsibility of Members for certain unsatisfied debts or obligations of Company, no Member shall be liable under a judgment, decree or order of a court, or in any other manner, for a debt, obligation or liability of Company whether that liability or obligation arises in contract or tort. No Member shall be required to loan any funds to Company. No Member shall be required to make any contribution to Company by reason of any negative balance in his, her or its capital account, nor shall any negative balance in a Member's capital account create any liability on the part of the Member to any third party.

*Act § 17101.*

## 2.8    LIABILITY OF MEMBERS TO COMPANY

     A.     Liability of Members to Company

A Member is liable to Company: *(i)* for the difference between his, her or its contribution to capital as actually made and that stated in the Articles, the Agreement, subscription for contribution or other document executed by the Member as having been made by the Member; and *(ii)* for any unpaid contribution to capital which he, she or it agreed in the Articles, the Agreement or other document executed by the Member to make in the future at the time and on the conditions stated in the Articles of Organization, Operating Agreement or other document evidencing such agreement. No Member shall be excused from an obligation to Company to perform any promise to contribute money, property or to perform services because of death, disability, dissolution or any other reason. *Act § 17201.*

B.    Member as Trustee for Company

A Member holds as trustee for Company *(i)* specific property stated in the Articles of Organization, Operating Agreement or other document executed by the Member as contributed by such Member, but which was not contributed or which has been wrongfully or erroneously returned; and *(ii)* money or other property wrongfully paid or conveyed to such Member on account of his, her or its contribution.

C.    Waiver of Liability of Member

The liabilities of a Member as set out in this Paragraph 2.8 can be waived or compromised only by the consent of all Members; but a waiver or compromise shall not affect the right of a creditor of Company who extended credit or whose claim arose after the filing and before a cancellation or amendment of the Articles of Organization, to enforce the liabilities.

D.    Liability of Member Receiving a Return of Capital

When a Member has rightfully received the return in whole or in part of the capital of his, her or its contribution, the Member is nevertheless liable to Company for a period of six (6) years after return of the capital contribution for any sum, not in excess of the return without interest, necessary to discharge its liability to all creditors of Company who extended credit during the period the capital contribution was held by Company or whose claims arose before the return.

E.    No Responsibility for Pre-Formation Commitments

In the event that any Member (or any of such Member's shareholders, or Affiliates) has incurred any indebtedness or obligation prior to the date hereof that related to or otherwise affects Company, neither Company nor any other Member shall have any liability or responsibility for or with respect to such indebtedness or obligation unless such indebtedness or obligation is assumed by Company pursuant to a written instrument signed by all Members. Furthermore, neither Company nor any Member shall be responsible or liable for any indebtedness or

12

obligation that is hereafter incurred by any other Member (or any of such Member's shareholders or Affiliates). In the event that a Member (or any of such Member's shareholders or Affiliates), (collectively, the "liable Member"), whether prior to or after the date hereof, incurs (or has incurred) any debt or obligation that neither Company nor the other Members has any responsibility or liability for, the liable Member shall indemnify and hold harmless Company and the other Members from any liability or obligation they may incur in respect thereof.

2.9        RIGHTS OF JUDGMENT CREDITOR OF MEMBER

On application to a court of competent jurisdiction by a judgment creditor of a Member, the court may charge the Membership Interest with payment of the unsatisfied amount of the judgment with interest. To the extent so charged the judgment creditor has only the rights of an assignee of the Membership Interest. This Paragraph 2.9 does not deprive any Member of the benefit of any exemption from legal process applicable to his interest.

2.10      MEMBER REMUNERATION

No Member is entitled to remuneration for acting on Company business except for reasonable compensation under Act Section 17352(c) for winding up of affairs of Company. *Act §
17004(b).*

2.11      LEGAL REPRESENTATIVE OR SUCCESSOR OF A MEMBER

If a Member who is an individual dies or is adjudged by a court of competent jurisdiction to be incompetent to manage his or her person or property, the executor, administrator, guardian, conservator or other legal representative may exercise all rights of the Member in the purpose of settling his or her estate or administering his or her property.
*Act § 17304.*

13

# ARTICLE III

## Management and Control of Business Including Meetings

3.1      MANAGEMENT OF COMPANY AND ELECTION OF MANAGERS

A.      Management of Company by Managers

As provided in the Articles, all powers of Company shall be exercised by or under the authority of, and the business and affairs of Company shall be managed under the direction of the Managers, unless otherwise provided in the Act, the Articles, or the Agreement. Management of Company shall be vested in one (1) or more Managers who shall be elected solely by the Members as provided below.  A Member, unless also appointed (or hired) as a Manager, officer or other employee, shall not participate in the day to day operations of the business affairs of Company and if so appointed (or hired), shall participate only within the scope of authority of such position as defined in the Agreement or elsewhere.   A Manager need not be a Member, an individual, a resident of the State of California, or a citizen of the United States.
*Act §17150, §17151 and §17157(a).*

B.      Election of Managers by Members

Company shall have one (1) or more Managers.   Each Manager shall be elected at each annual meeting of Members by Members, including Members who are managers and candidates to be managers, holding a Majority-In-Interest.

C.      Term of Managers

A Manager shall serve for a term expiring at the earlier of *(i)* the following annual Members' meeting *(ii)* the date on which a successor is elected and qualifies or *(iii)* the date on which he, she or it resigns or becomes disabled and unable to serve. A Manager whose term has expired continues to serve until a successor is elected and qualifies.  Any Manager may be removed with or without cause by Members holding a Majority-In-Interest at a meeting called expressly for that purpose. Any Manager elected to fill a vacancy shall serve as a Manager until the next annual meeting of the Members and until a successor is elected and qualifies.  Any Manager may resign at any time upon written notice to Company.
*Act § 17152(b).*

3.2      SPECIFIC DUTIES OF MANAGERS

A.      Duty of Manager to Qualify to Do Business in California and Other States

14

If required by law, a Manager shall qualify the Company to do business in California by obtaining a certificate of authority to do so from the Secretary of State of the State of California and other states as required.

B.    Duty of Managers to Determine Time and Place of Annual Meetings of Members

The annual meeting of the Members shall be held each year at such a place as the Managers may determine as provided in Paragraph 3.7.

C.    Duty of Manager to Call Meetings of Members

Upon written request to another Manager by any person entitled to call a meeting of Members, a Manager shall immediately cause notice to be given to the Members entitled to vote that a meeting will be held at a time requested by the person calling the meeting, not less than ten (10) days nor more than sixty (60) days after the receipt of the request. If the notice is not given within twenty (20) days after receipt of the request, the person entitled to call the meeting may give the notice or, upon the application of that person, the superior court of the county in which the principal executive office of the limited liability company is located, or if the principal executive office is not in this state, the county in which the limited liability company's address in this state is located, shall summarily order the giving of the notice, after notice to the limited liability company affording it an opportunity to be heard. The procedure provided in subdivision (c) of Act Section 305 shall apply to the application. The court may issue any order as may be appropriate, including, without limitation, an order designating the time and place of the meeting, the record date for determination of Members entitled to vote, and the form of notice. *Act § 17104(c)(3).*

D.    Duty of Managers to Safekeep Funds of Company

Managers shall have fiduciary responsibility for the safekeeping and use of all funds and assets of Company, whether or not in their immediate possession or control. The funds of Company shall not be commingled with the funds of any other person and the Manager shall not employ, or permit any other person to employ, such funds in any manner except for the benefit of Company. The bank accounts of Company shall be maintained in such banking institutions as are approved by Managers and withdrawals shall be made only in the regular course of Company business and as otherwise authorized in the Agreement on such signature or signatures as Managers may determine.

E.    Duty of Managers to Hire Employee for Record Keeping

Managers shall employ a competent person to be an employee of Company who shall be responsible for: authenticating the records of Company, including keeping correct and

15

complete books of account which show accurately at all times the financial condition of Company, safeguarding all funds, notes, securities, and other valuables which may from time to time come into possession of Company, depositing all funds of Company with such depositories as Managers shall designate. Such employee shall have such other duties as Managers may from time to time prescribe, but under no circumstance shall such employee have any of the rights, powers, responsibilities or duties of a Manager or Member of Company as prescribed herein or by law.

### 3.3    OTHER ACTIVITIES OF MANAGERS PERMITTED

Any person serving as Manager may engage in other business activities not in competition with the specific purposes of the Company as set forth in Paragraph 1.1 and shall be obligated to devote only as much of his time to the business of Company as shall be reasonably required in light of the purposes of Company. A Manager shall perform his duties as a Manager in good faith, in a manner he, she or it reasonably believes to be in the best interests of Company, and with due care. A person who so performs his, her or its duties shall not have any liability by reason of being or having been a Manager of Company. The negligent conduct of a Manager shall not violate his duty of due care, but fraud, deceit, gross negligence, reckless or intentional misconduct, or a knowing violation of law shall violate the duty of due care.

### 3.4    POWERS OF MANAGERS

A.    Powers of Managers

Managers shall have all necessary powers to carry out the purposes, business, and objectives of Company, including, but not limited to, the right to enter into and carry out contracts of all kinds; to employ employees, agents, consultants and advisors on behalf of Company; to lend or borrow money and to issue evidences of indebtedness; to bring and defend actions in law or at equity; to buy, own, manage, sell, lease, mortgage, pledge or otherwise acquire or dispose of Company property. Managers may deal with any related person, firm or corporation on terms and conditions that would be available from an independent responsible third party that is willing to perform. Each Manager shall have the authority to sign agreements and other documents on behalf of Company without joinder of any other Manager provided that if the Manager is appointed as an officer the appointee shall act within the customary scope of the authority of the office, unless the appointee obtains the consent of the other Manager or Managers.

Without limiting the generality of this Subparagraph 3.4.A., each Manager shall have power and authority, to act on behalf of Company and subject to the limitations of the Act and the limitations set forth hereinafter:

16

(a)    To acquire property from any Person as Managers may determine. The fact that a Member is directly or indirectly affiliated or connected with any such Person shall not prohibit a Manager from dealing with that Person or Entity;

(b)    To borrow money for Company from banks, other lending institutions, the Members, or Affiliates of the Members or Manager on such terms as they deem appropriate, and in connection therewith, to hypothecate, encumber and grant security interests in the assets of Company to secure repayment of the borrowed sums. Except as otherwise provided in the Act, no debt shall be contracted or liability incurred by or on behalf of Company, except by the Managers;

(c)    To purchase liability and other insurance to protect the property and business of Company;

(d)    To hold and own any Company real and personal properties in the name of Company;

(e)    To invest any funds of Company temporarily (by way of example but not limitation) in time deposits, short-term governmental obligations, commercial paper or other investments;

(f)    To execute on behalf of Company all instruments and documents, including, without limitation, checks; drafts; notes and other negotiable instruments; mortgages or deeds of trust; security agreements; financing statements; documents providing for the acquisition, mortgage or disposition of property of Company; assignments; bills of sale; leases; partnership agreements; and any other instruments or documents necessary, in the opinion of the Manager, to the business of Company;

(g)    To employ accountants, legal counsel, managing agents or other experts to perform services for Company and to compensate them from Company funds;

(h)    To retain and compensate employees and agents generally, and to define their duties;

(i)    To enter into any and all other agreements on behalf of Company, with any other Person or Entity for any purpose necessary or appropriate to the conduct of the business of Company;

(j)    To pay reimbursement from Company of all expenses of Company reasonably incurred and paid by the Manager on behalf of Company; and

(k)    To do and perform all other acts as may be necessary or appropriate to the conduct of the business of Company;

17

B.    Limitations on Power of Managers

Manager shall not have the authority to cause Company to engage in any transaction requiring a vote of Members without first obtaining the required affirmative vote or written consent. Further, Managers shall not have authority hereunder to cause Company to engage in extraordinary transactions as set forth in this Subparagraph 3.4.B. Certain extraordinary transactions shall require the affirmative vote of the Members in addition to the concurrence of Managers including, but not limited to, the following:

(a)    The sale, exchange or other disposition of all, or substantially all, of Company's assets occurring as part of a single transaction or plan shall require the affirmative vote of Members holding at least _____ percent ( _____ %) of all Voting Interests in Company, but not less than a majority in interest, as required by section 17551 of the Act.

(b)    The merger of Company with any other limited liability company, limited partnership or corporation shall require the affirmative vote of Members holding at least _____ percent ( _____ %) of all Voting Interests in Company.

(c)    The contraction on behalf of Company of any debt or liability of more than $ _____ shall require the affirmative vote of Members holding at least _____ percent ( _____ %) of all Voting Interests in Company.

(d)    The change in the amount or character of Capital Contributions, or change in the character of the business of Company shall require the affirmative vote of Members holding at least _____ percent ( _____%) of all Voting Interests in Company.

C.    Manager as Agent of Company

Every Manager is an agent of Company for the purpose of its business, and for every other Manager, for purposes of the execution in name of Company of any instrument for apparently carrying on in the usual way the business of Company and binds Company, unless such act is in contravention of the Articles or the Agreement or unless the Manager so acting otherwise lacks the authority to act for Company and the person with whom the Manager is dealing has knowledge of the fact that the Manager has no such authority.

D.    Acts of Manager as Conclusive Evidence of Authority ·

Every contract, deed, mortgage, lease and other instrument executed by any Manager shall be conclusive evidence in favor of every person relying thereon or claiming thereunder that at the time of the delivery thereof *(i)* Company was in existence, *(ii)* neither the Agreement nor the Articles had been amended in any manner so as to restrict the delegation of authority among Members or Managers, and *(iii)* the execution and delivery of such instrument was duly authorized by Members and Managers.

18

Any person may always rely on a certificate addressed to him and signed by any Manager hereunder:

(i)    as to who are the Members or Managers hereunder;

(ii)    as to the existence or non-existence of any fact which constitutes a condition precedent to acts by the Members or the Managers or in any other manner germane to the affairs of Company;

(iii)    as to who is authorized to execute and deliver any instrument or document of Company;

(iv)    as to the authenticity of any copy of the Articles, the Agreement, amendments thereto and any other document relating to the conduct of the affairs of Company; or

(v)    as to any act or failure to act by Company or as to any other matter whatsoever involving Company, any Manager or any Member in the capacity as a Member or Manager.

3.5    WARRANTED RELIANCE BY MANAGERS ON OTHERS

In performing their duties, Managers shall be entitled to rely on information, opinions, reports, or statements of the following persons or groups unless they have knowledge concerning the matter in question that would cause such reliance to be unwarranted:

(a)    one or more employees or other agents of Company whom the Managers reasonably believe to be reliable and competent in the matters presented;

(b)    any attorney, public accountant, or other person as to matters which the Managers reasonably believe to be within such person's professional or expert competence; or

(c)    a committee upon which he or she does not serve, duly designated in accordance with a provision of the Articles or the Agreement, as to matters within its designated authority, which committee the Managers reasonably believe to merit competence.

3.6    LIMITATIONS ON LIABILITY OF MANAGERS

19

A Manager shall not be liable to Company or Members for any loss or damage resulting from any mistake of fact or judgment or any act or failure to act unless the mistake, act or failure to act is the result of fraud, bad faith, gross negligence or willful misconduct.  Managers shall not be fiduciaries of Company or Members.

Act §17153, and §17005(d).

## 3.7    ANNUAL MEETING OF MEMBERS

The annual meeting of members shall be held for the purposes of the election (or re-election) of a Manager or Managers and for the transaction or the consideration of any other business that may properly come before the meeting.  The annual meeting of members shall be held at such date, time and place within or without the State of California as Managers may fix from time to time, or if there are two or more Managers and they are unable to agree at such time and place, Members holding more than 50 percent of the Voting Interests shall determine the time and place.

Act §17104 and §17101.

## 3.8    SPECIAL MEETINGS OF MEMBERS

### A.    Power to Call Special Meeting

Special meetings of members for any purpose or purposes of addressing any matters on which Members may vote, unless otherwise proscribed by the Act or by the Articles, may be called by any Manager, or upon written demand of any Member or Members representing more than ten percent (10%) of the Voting Interests on any issue proposed to be considered.

*Act § 17104(b).*

### B.    Date, Time and Place of Special Meeting

Special meetings of Members for any purpose other than the election of Managers may be held at such date, time and place within or without the State of California as shall be stated in the notice of the meeting or in a duly executed and delivered waiver of notice, provided notice of the meeting is given not less than ten (10) days nor more than sixty (60) days before the date of the meeting.

*Act § 17104(c).*

## 3.9    NOTICES, VOTING AND PROCEDURES AT MEETINGS OF MEMBERS

### A.    Required Notification of Meetings of Members

20

Managers shall deliver or mail written notice stating the date, time, and place of any meeting of members and, in the case of a special meeting of members or when otherwise required by law, a description of the purposes for which the meeting is called, to each Member of record entitled to vote at the meeting, at such address as appears in the records of Company, such notice to be mailed at least ten, but not more than sixty, days before the date and time of the meeting. A Member may waive notice of any meeting, before or after the date of the meeting, by delivering a signed waiver to Company for inclusion in the minutes of Company. A Member's attendance at any meeting of members, in person or by proxy *(a)* waives objection to lack of notice or defective notice of the meeting, unless the Member at the beginning of the meeting objects to holding the meeting or transacting business at the meeting, and *(b)* waives objection to consideration of a particular matter at the meeting that is not within the purposes described in the meeting notice, unless the Member objects to considering the matter when it is presented. *Act § 17104(c)(2).*

B.    Record Date for Eligibility of Members to Vote at Meetings of Members

The record date for the purpose of determining the Members entitled to notice of a meeting of members, for demanding a special meeting of members, for voting, or for taking any other action shall be the tenth (10th) day prior to the date of the meeting or other action. *Act § 17104(k).*

C.    Voting by Members at Meetings of Members

A Member may appoint a proxy to vote or otherwise act for the Member pursuant to a written appointment form executed by the Member or the Member's duly authorized attorney-in-fact. An appointment of a proxy is effective when received by the Managers of Company. The general proxy of a fiduciary is given the same effect as the general proxy of any other Member. A proxy appointment is valid for eleven months unless otherwise expressly stated in the appointment form.

D.    Relative Weight of Votes of Members at Meetings of Members

21

At any meeting of members, each Member entitled to vote shall have a number of votes equal to the product of *(i)* his, her or its percentage of Voting Interest as set forth on Exhibit A hereto, as the same may be amended from time to time, times *(ii)* one hundred (100). At any meeting of members, presence of Members entitled to cast at least 51 percent of the total votes of all Members entitled to vote at such meeting constitutes a quorum. Except for matters relating to the continuation of the business of Company upon the occurrence of a condition of dissolution, action on a matter is approved if it receives approval by at least 51 percent of the total number of votes entitled to be cast by all Members in Company entitled to vote at such meeting or such greater number as may be required by law, the Articles or the Agreement for the particular matter under consideration. Upon the occurrence of a Disassociation Event (as defined herein), a Former Member shall not be entitled to any vote in determining whether Company shall purchase the interest of such Former Member as permitted in Paragraph 9.2 hereof. Also, any assignee of a Member's Interest shall not be entitled to vote or participate on any matters at any meeting unless such assignee become a substitute Member as provided in Paragraph 7.2 hereof.

*Act § 17102.*

     E.     Telephonic Participation by Members at Meetings of Members

Any or all Members may participate in any annual or special Members' meeting by, or through the use of, any means of communication by which all Members participating may simultaneously hear each other during the meeting. A Member so participating is deemed to be present in person at the meeting of members.

     F.     Appointment of Chair and Secretary for Meetings of Members

At any annual or special meeting of members the Managers shall appoint a person to preside as chair at the meeting and a person to act as secretary of the meeting. The secretary of the meeting shall prepare minutes of the meeting which shall be placed in the minute books of Company.

     G.     Consent by Members in Lieu of Meetings of Members

Subject to the applicable laws of the State of California, any action required or permitted to be taken at a Members' meeting may be taken without a meeting if the action is taken by all of the Members entitled to vote on the action. The action must be evidenced by one or more written consents describing the action to be taken, signed by all the Members entitled to vote on the action, and delivered to Company for inclusion in the minutes. The record date for determining Members entitled to take action without a meeting is the first date a Member signs the consent to such action.

*Act § 17104(i).*

3.10     OFFICERS OF COMPANY

     A.     Election of Officers at Meetings of Members

22

Members may elect officers at an annual or special meeting of members. The officers of Company, if deemed necessary by the Members, shall be president, vice president, secretary, and treasurer. Only a Manager may be elected president or vice- president. Each officer shall hold office of the term for which he or she is elected until his successor has been elected. Any individual may hold any number of offices. No officer need be a resident of the State of California or citizen of the United States. If a Manager is a corporation, such corporation's officers may serve as officers of Company if elected by the Members. The officers shall exercise such powers and perform such duties as specified in the Agreement and as shall be determined from time to time by the Members. At its first meeting after each annual meeting of Members, the Members by resolution shall choose a president, one or more vice-presidents, a secretary and a treasurer. *Act § 17154(a), (b).*

B.    Term, Removal and Filling of Vacancy of Officers

The then officers of Company shall hold office until their successors are chosen and qualify. Any officer, other than an officer who is also a Manager, elected or appointed by the Members may be removed at any time by the affirmative vote of Members holding a majority of the Voting Interests. An officer who is also a Manager may not be removed as an officer unless and until he, she or it is removed as a Manager or his, her or its term as Manager expires. Any vacancy occurring in any office of Company shall be filled by a resolution of the Members holding a majority of the Voting Interests provided only a person who is a Manager may be elected as president or vice president.

C.    Determination of Salaries of Officers

The salaries of all officers and agents of Company shall be fixed by a resolution of the Members at a meeting of members.

D.    Duties and Powers of President

The president shall be the chief executive officer of Company, shall preside at all meetings of the Members and Managers, shall have general and active management of the business of Company and shall see that all orders and resolutions of the Members and Managers are carried into effect.

The president shall execute bonds, mortgages and other contracts requiring a seal, under the seal of Company, except where required or permitted by law to be otherwise signed and executed, and except where the signing and execution thereof shall be expressly delegated by the Members to some other officer or agent of Company.

E.    Duties and Powers of Vice-President

23

The vice-president, or if there shall be more than one, the vice-presidents in the order determined by a resolution of the Members, shall, in the absence or disability of the president, perform the duties and exercise the powers of the president and shall perform such other duties and have such other powers as the Members by resolution may from time to time prescribe.

F.    Duties and Powers of Secretary

The secretary shall attend all meetings of the Managers and all meetings of the Members, and shall record all the proceedings of the meetings in a book to be kept for that purpose, and shall perform like duties for the standing committees when required.  The secretary shall give, or cause to be given, notice of all meetings of the Members and special meetings of the Members, and shall perform such other duties as may be prescribed by the Managers or president, under whose supervision the secretary shall be.  The secretary shall have custody of the seal and the secretary shall have authority to affix the same to any instrument requiring it, and when so affixed, it may be attested by his, her or its signature. The Managers may give general authority to any other officer to affix the seal of Company and to attest the affixing by his, her or its signature.

G.    Duties and Powers of Treasurer

The treasurer shall have the custody of the funds and securities of Company, and shall keep full and accurate accounts of receipts and disbursements in books belonging to Company, and shall deposit all moneys and other valuable effects in the name and to the credit of Company in such depositories as may be designated by the Members.

The treasurer shall disburse the funds of Company as may be ordered by the Managers, taking proper vouchers for such disbursements, and shall render to the president and the Managers, at their regular meetings, or when Members so require, at a meeting of the members an account of all his, her or its transactions as treasurer and of the financial condition of Company.

If required by a resolution of the Members, the treasurer shall give Company a bond in such sum and with such surety or sureties as shall be satisfactory to the Members for the faithful performance of the duties of his office and for the restoration to Company, in case of his, her or its death, resignation, retirement or removal from office, of all books, papers, vouchers, money and other property of whatever kind in his possession or under his, her or its control, belonging to Company.

24

## ARTICLE IV

### Capital Accounts

4.1        CAPITAL ACCOUNT FOR EACH MEMBER

Manager shall maintain a separate Capital Account as defined in simplified form in Paragraph 4.2 below for each member strictly in accordance with the requirements of Code Section 704(b) and applicable regulations promulgated thereunder. The Members intend that the Capital Accounts of the Members be maintained strictly in accordance with the rules of Regulations Section 1.704-1(b)(2)(iv), as amended from time to time. In this connection, to the extent the results determined under a literal application of this Paragraph 4.1 vary from the results that would be obtainable under the rules described in Regulations Section 1.704-1(b)(2)(iv), the rules set forth in Regulations Section 1.704-1(b)(2)(iv) shall be used and govern the maintenance of capital accounts under the Agreement.

4.2        SIMPLIFIED DESCRIPTION OF CAPITAL ACCOUNT DETERMINATION

Subject to the other paragraphs in this Agreement, "Capital Account" generally means:

The amount of money contributed by the Member to Company,

increased (credited) by:

(i)        The fair market value of property other than money contributed by the Member to Company as determined by the contributing Member and Company, and

(ii)       The Net Profits allocated to the Member, and

(iii)      The amount of any liabilities of Company assumed by Member or which are secured by property distributed to Member by Company, and

decreased (debited) by:

(i)        The amount of money distributed to the Member,

(ii)       The fair market value of property distributed to the Member by Company as determined by recipient Member and Company,

25

  (iii) The Member's share of expenditures of Company described in Code Section 705(a)(2)(B) (including, for this purpose, losses which are nondeductible under Code Section 267(a)(1) or Section 707(b),

  (iv) The Member's share of amounts paid or incurred by Company to organize Company or to promote the sale of (or to sell) an interest in Company (except to the extent properly amortizable for income tax purposes),

  (v) The Net Losses allocated to the Member, and

  (vi) The amount of any liabilities the Member assumed by Company or secured by property contributed by Member of Company.

4.3  CAPITAL ACCOUNT ADJUSTMENTS FOR SPECIAL EVENTS

  A. Succession to Capital Account

    In the event all or a portion of a Membership Interest is transferred in accordance with the terms of the Agreement, the transferee shall succeed to the Capital Account of the transferor to the extent it relates to the transferred interest.

  B. Assumption of Liability

    An assumption of unsecured liability by Company shall be treated as a distribution of money to the Member. An assumption of the unsecured liability of Company by a Member shall be treated as a cash contribution to Company. In determining the amount of any liability for this purpose, there shall be taken into account Code Section 752(c) and any other applicable provisions of the Code and Regulations.

  C. Adjustment for Noncash Distribution

    In the event that assets of Company other than cash are distributed in kind to a Member, Capital Accounts shall be adjusted for the hypothetical "book" gain or loss that would have been realized by Company if the distributed assets had been sold for their fair market values in a cash sale (in order to reflect unrealized gain or loss).

  D. Adjustment to Fair Market Upon Transfer of Interest

    Capital Accounts shall be adjusted to reflect fair market value of all properties in the event of acquisition of Membership Interest by an existing or new Member.

26

E.      Adjustment for Constructive Termination of Company

Capital Accounts also shall be adjusted upon the constructive termination of Company as provided under Code Section 708 in accordance with the method set forth in the immediately preceding paragraph (as required by Regulations Section 1.704-1(b)(2)(iv)(b)).

F.      Adjustment for Recapture of Certain Credits

Capital Accounts shall be adjusted appropriately on account of investment tax credit and investment tax credit recapture in accordance with the principles of Code Section 48(q).

4.4      POWER TO MODIFY CAPITAL ACCOUNTS TO COMPLY WITH TAX REGULATIONS

The foregoing provisions and the other provisions of the Agreement relating to the maintenance of Capital Accounts are intended to comply with Regulations Section 1.704-1(b)(2)(iv), and shall be interpreted and applied in a manner consistent with such Regulations. In the event the Managers determine that it is necessary to modify the manner in which the Capital Accounts are computed in order to comply with such Regulations and to reflect the agreed upon allocation of the distribution of cash, the Managers may make such modification, provided that it is not likely to have a material effect on the amounts distributable to any member upon the dissolution of Company. The Managers also shall make any appropriate modifications in the event unanticipated events occur that might otherwise cause the Agreement not to comply with Regulations Section 1.704-1(b)(2)(iv).

4.5      MAINTENANCE OF INCOME (DRAWING) ACCOUNTS

A separate individual income account shall be maintained for each Member. At the end of each fiscal year, each Member's share of the Net Profits and Net Losses of Company shall be credited or debited to, and his withdrawals during the fiscal year deducted from, his income account. After such amounts have been credited or debited to and deducted from the income account of a Member, any balance or deficit remaining in such account shall be transferred to or charged against the individual capital account of such Member.

4.6      SUCCESSION TO CAPITAL ACCOUNTS BY TRANSFEREE OF INTEREST

In the event any interest in Company is transferred in accordance with the terms of the Agreement, the transferee shall succeed to the Capital Account of the transferor to the extent it relates to the transferred interest.

27

### ARTICLE V
### Allocations of Net Profits and Net Losses and Distributions

5.1        ALLOCATION OF NET PROFITS AND NET LOSSES

The allocations of Net Profits, income, gains, Net Losses, and deductions set forth in the Agreement are intended to comply strictly with Regulations Section 1.704-1(b), Regulations Section 1.704-1T(b)(4)(iv), and Regulations Section 1.704-2, and are intended to have "substantial economic effect" within the meaning of those Regulations.

A.        Allocation of Net Profits

Except as otherwise provided elsewhere under the Agreement and after first giving effect to the special allocations in Subparagraphs 5.1.C. through 5.1.L., Net Profits for any fiscal year shall be allocated to each Member in accordance with his, her or its Percentage Interest in Net Profits as set forth in <u>Exhibit B</u>.  Subject to any limitations described elsewhere in the Agreement including but not limited to Subparagraphs 5.1.M. and 5.1.N., the above allocation of Net Profits may be modified by subsequent agreement to conform to adjustments made to the Percentage Interest in Net Profits because of loans converted to Capital Contributions, any distributions of cash and any liquidating distribution.  If a Member's Percentage Interest in Net Profits is not the same throughout a given fiscal year, the Managers shall determine the allocation of Net Profits by taking into account this varying Percentage Interest during the year but such determination shall be in conformity with the requirements of Code Section 706(d) and the regulations thereunder.
*Act § 17202.*

"Net Profits" refers to all items of income (including all items of gain and including income exempt from tax) as properly determined for "book purposes". Net Profits shall be determined based on the "book value" of the assets of Company as set forth on the books of Company in accordance with the principles of Regulations Section 1.704-1(b) (2) (iv) (g). Otherwise Net Income and loss shall be determined strictly in accordance with Federal income tax principles (including rules governing depreciation and amortization), applied hypothetically based on values of Company assets as set forth on the books of Company.

B.        Allocation of Net Losses

Except as otherwise provided under the Agreement and after giving effect to the special allocations in Subparagraphs 5.1.C. through 5.1.L., Net Losses for any fiscal year shall be allocated to each Member accordance with his, her or its Percentage Interest in Net Losses set forth in <u>Exhibit B</u>. Subject to any limitations described elsewhere in the Agreement including but not limited to Subparagraphs 5.1.M. and 5.1.N., the above allocation of Net Losses may be modified by subsequent agreement to conform to adjustments made to the Percentage Interest in Net Losses because of loans converted to Capital Contributions, any distributions of cash and any

liquidation distributions. If a Member's Percentage Interest in Net Losses is not the same throughout a given fiscal year, the Managers shall determine the allocation of Net Losses to the Member by taking into account his varying Percentage Interest in Net Losses during the year but such determination shall be in conformity with the requirements of Code Section 706(d) and the regulations thereunder.

*Act § 17202.*

"Net Losses" refers to all items of loss (including deductions) as properly determined for "book purposes". Net Losses shall be determined based on the value of the assets of Company as set forth on the books of Company in accordance with the principles of Regulations Section 1.704-1(b)(2)(iv)(g). Otherwise, Net Losses shall be determined strictly in accordance with federal income tax principles (including rules governing depreciation and amortization) applied hypothetically based on values of Company assets as set forth on the books of Company.

C.     Allocation of Company Minimum Gain

Notwithstanding any other provision of the Agreement, if there is a net decrease in Company Minimum Gain for a Company taxable year, then each Member shall be allocated items of income and gain for such year (and, if necessary, for subsequent years) in proportion to, and to the extent of, an amount equal to the greater of *(a)* the portion of such Member's share of the net decrease in Company Minimum Gain during such year that is allocable to the disposition of Company property subject to one nor more Nonrecourse Liabilities of Company and *(b)* the deficit balance in such Member's capital account at the end of such year. Such allocations shall be made before any other allocation of Company items for the year. For the purpose of this Paragraph 5.1, the balance in a Members's capital account at the end of such year shall be determined with the adjustments prescribed by Regulations Section 1.704□1T(b)(4)(iv)(e)(2). Such allocations shall be made in accordance with the provisions of Regulations Section 1.704□1T(b)(4)(iv)(e). Company Minimum Gain shall be defined and determined in accordance with Regulations Section 1.704-2(d).

D.     Allocation of Member's Share of Minimum Gain

Notwithstanding any other provision of the Agreement, if there is a net decrease during a Company taxable year in the Member's Share of Minimum Gain, then any Member with a share of the Minimum Gain at the beginning of such year shall be allocated items of Company income and gain for such year (and, if necessary, subsequent years) in proportion to, and to the extent of, an amount equal to the greater of *(a)* the portion of such Member's share of the net decrease in the Minimum Gain that is allocable to the disposition of Company property subject to such Member's Nonrecourse Debt, and *(b)* the deficit balance in such Member's capital account at the end of such year. The items of Company income and gain allocated by this Paragraph 5.1 shall not include any items of income or gain allocated pursuant to the Paragraph above. The allocations under this Paragraph 5.1 shall be made before any other allocation (except any allocations made pursuant to this Paragraph 5.1 above) of Company items for the year. For the purpose of this Paragraph 5.1, the balance in a Member's capital account at the end of such year shall be

29

determined with the adjustments prescribed by, and the allocations hereunder shall be made in accordance with, the provisions of Regulations Section 1.704-1T(b)(4)(iv)(h)(4). Member's share of Minimum Gain shall be defined and determined in accordance with Regulations Section 1.704-2(d).

E.    Allocation of Net Profits and Gains Under Qualified Income Offset

Items of Net Profits and gain shall be specially allocated to each Member in an amount and manner sufficient to eliminate, to the extent required by the Regulations, the Adjusted Capital Account Deficit of the Member determined under Regulations Section 1.704-1(b)(2)(ii)(d) as quickly as possible in the event any Member unexpectedly receives any *(i)* distributions that, as of the end of such year, reasonably are expected to be made to a Member to the extent they exceed offsetting increases to such Member's capital account that reasonably are expected to occur during (or prior to) Company taxable years in which such distributions reasonably are expected to be made (other than increases pursuant to a minimum gain chargeback of the Agreement) or *(ii)* adjustments, allocations, or distributions described in Regulations Section 1.704-1(b)(2)(ii)(d)(4), (5) or (6). This subparagraph is intended to comply with Regulation Section 1.704-1(b)(2)(ii)(d) and should be so interpreted.

F.    Allocation of Nonrecourse Deductions

Company Nonrecourse Deductions shall be allocated to the Member, if any, that bears the economic risk of loss for the Member Nonrecourse Debt to which the Member Nonrecourse Deductions are attributable. If more than one Member bears the economic risk of loss for a Member Nonrecourse Debt, the Nonrecourse Deduction attributable to such Member Nonrecourse Debt shall be allocated among such Members in accordance with the ratios in which the Members share the economic risk of loss for such Nonrecourse Debt. Otherwise, Nonrecourse Deductions shall be allocated in the same manner as, and be subject to the same restrictions imposed upon Net Losses. Member Nonrecourse Debt shall be defined and determined in accordance with Regulations Section 1.704-2(b)(4). Company Nonrecourse Deductions shall be defined and determined in accordance with Regulations Section 1.704-2(b) and (c).

G.    Allocation of Income, Gains and Losses Related to Contributed Property

In accordance with Code Section 704(c) and the Regulations thereunder, income, gain, loss, and deduction with respect to any property contributed to the capital of Company shall, solely for tax purposes, be allocated among the Members so as to take account of any variation

30

between the adjusted basis of such property to Company for federal income tax purposes and its initial gross fair market value. In the event the initial gross fair market value of any Company asset is adjusted, subsequent allocations of income, gain, loss, and deduction with respect to such asset shall take account of any variation between the adjusted basis of such asset for federal income tax purposes and its initial gross fair market value under one of the methods allowed under Code Section 704(c) and the Regulations thereunder. Any elections or other decisions relating to such allocations shall be made by the Managers in any manner that reasonably reflects the purpose and intention of the Agreement. Allocations pursuant to this Subparagraph 5.1 G are solely for purposes of federal, state, and local taxes and shall not affect, or in any way be taken into account in computing, any member's Capital Account or share of Net Profits, Net Losses, or other items or distributions pursuant to any other provision of the Agreement.

H.    Allocation of Gain and Loss from Sale or Other Disposition of Property Not Revalued

If, in connection with the admission of an additional Member to Company or the liquidation of a Member's Interest in Company, Company property is not revalued pursuant to Regulations Section 1.704-1(b)(2)(iv)(f) and the Members' capital accounts are not adjusted accordingly, then, upon any subsequent sale or other disposition of Company property, gain or loss recognized upon the sale or other disposition shall be allocated among the Members so as to take into account the variation between the adjusted basis of such property and its fair market value as of the date the additional Member was admitted or the date the Member's Interest was liquidated, as the case may be, in the same manner as under Code Section 704(c).

I.    Allocation of Gains and Losses Related to Adjustments in Tax Basis

To the extent an adjustment to the adjusted tax basis of any Company asset pursuant to Code Sections 734(b) or 743(b) is required, pursuant to Regulations Section 1.704-1(b)(2)(iv)(m), to be taken into account determining Capital Accounts, the amount of such adjustment to the Capital Accounts shall be treated as an item of gain (if the adjustment increases the basis of the asset) or loss (if the adjustment decreases such basis), and such gain or loss shall be specially allocated to the Members in a manner consistent with the manner in which their Capital Accounts are required to be adjusted pursuant to such Section of the Regulations.

J.    Allocation to Avoid Adjusted Capital Account Deficit

Notwithstanding any other provision of this Article, no Member shall receive an allocation of Net Losses, net capital losses, Nonrecourse Deductions as defined in Regulations 1.704-2(b) and (c), or any other item of loss or deduction that would create or increase an Adjusted Capital Account Deficit of the Member. Any loss, or item thereof, that cannot be allocated to a Member as a result of the foregoing limitation shall be allocated to all Members. Any loss, or item thereof, allocated to all Members pursuant to the preceding sentence shall be taken into account in computing subsequent allocations of Net Profits or Losses or Net Capital Gain or Loss so that the net amount of any items so allocated and the profits, losses and all other items allocated

31

to each Member shall, to the extent possible, be equal to the net amount that would have been allocated to each Member if the allocations required by the preceding sentence had not been made.

    K.    Allocation of Gross Income to Restore Capital Account Deficit

In the event any Member has a distribution in his Capital Account at the end of any fiscal year which is in excess of the sum of *(i)* the amount the Member is obligated to restore pursuant to any provision of the Agreement, and *(ii)* the amount the Member is deemed to be obligated to restore pursuant to the penultimate sentences of Section 1.704-2(g)(1) and 1.704-2(i)(5) of the Regulations, such Member shall be specially allocated items of income and gain in the amount of such excess as quickly as possible, provided that an allocation pursuant to this subparagraph shall be made only if and to the extent that such Member would have a Capital Account with a deficit balance in excess of such sum after all other allocations provided for in this Paragraph 5.1 have been made as if Subparagraph 5.1.E relating to allocations under a qualified income offset hereof and this subparagraph were not in the Agreement.

    L.    Allocation of Capital Event Adjustments and Subsequent Effects

To the extent the gross fair market value of any asset of Company is increased or decreased for a "capital event" as described in Paragraph 4.3 relating to Capital Account adjustments for special events, any resulting book gain or loss shall be allocated as required for capital account purposes and subsequent allocations of income, gain, loss or deduction with respect to such asset shall take into account any difference between the adjusted basis of such asset for federal income tax purposes and its gross fair market value.

    M.    Allocation of Net Profits and Net Losses Consistent with Distributions

Notwithstanding any other provision of the Agreement, the Net Profits and Net Losses shall be allocated in a manner that is consistent with the requirements for distributions of cash described elsewhere in the Agreement, the requirements for distribution of assets of Company upon its dissolution and winding up strictly in accordance with capital account balances determined in accordance with these procedures described below and the requirements for the allocations to comply with applicable Regulations under Code Section 704(b).

    N.    Allocation of Income, Gain, Losses, and Deductions to Comply with Regulations and Intentions of Members

If the allocations described above are not consistent with the manner in which Members intend to divide Company distributions, the Managers are hereby authorized to divide and allocate Net Profits, Net Losses, and other items among Members so as to prevent the allocations from distorting the manner in which the Members intend the Company distributions to be divided among

Members pursuant to this Article V, but in a manner consistent with the requirements of Regulations Section 1.704-1(b)(2)(v). In general, Members anticipate that this divisions will be accomplished by specially allocating other Net Profits, Net Losses, and items of income, gain, loss, and deduction among the Members so that the net amount of the allocations and such special allocations to each such Member is zero.

If, for whatever reason, Managers determine that the allocation provisions of the Agreement are unlikely to be respected for federal income tax purposes, the Managers are granted the authority to amend the allocation provisions of the Agreement, to the minimum extent necessary to effect the plan of allocations and distributions provided in the Agreement. Further, Managers shall have the discretion to adopt and revise rules, conventions and procedures as they believe appropriate in any reasonable manner with respect to the admission of Members to reflect the Members' Interests in Net Profits, Net Losses and other items in Company at the close of the year.

O.    Order for Applying Allocation Provisions

The allocation provisions of this Paragraph 5.1 shall be applied in the following order from first to last:

(i)    Allocation of company minimum gain as required by Subparagraph C;

(ii)    Allocation of member's share of Minimum Gain as required by Subparagraph D;

(iii)    Allocation of Net Profits and gains under qualified income offset as required by Subparagraph E;

(iv)    Allocation of Nonrecourse Deductions as required by Subparagraph F;

(v)    Allocation of income, gains or losses related to contributed property as required by Subparagraph G;

(vi)    Allocation of gain and loss from sale or other disposition of property not revalued as required by Subparagraph H;

(vii)    Allocation of Net Profits as required by Subparagraph A;

(viii)    Allocation of Net Losses as required by Subparagraph B;

33

(ix)    Allocation of gains and losses related to adjustment in tax basis as required by Subparagraph I;

(x)    Allocations to avoid Adjusted Capital Account Deficit as required by Subparagraph J;

(xi)    Allocation of gross income to restore capital account deficit as required by Subparagraph K;

(xii)    Allocation of capital account adjustments and subsequent effects as required by Subparagraph L;

(xiii)    Allocation of Net Profits and Net Losses consistent with distributions as required by Subparagraph M;

(xiv)    Allocation of Net Profits, income gains, Net Losses and deductions to comply with regulations and intentions of Members as required by Subparagraph N.

5.2    DISTRIBUTIONS OF NET CASH FLOW BY COMPANY

Subject to any limitations found elsewhere in the Agreement and under law including the requirements of Section 17254 of the Act that the assets of Company after the distribution be in excess of all liabilities except for liabilities owed to Members for their Capital Contributions, Managers may, but are not required to do so, distribute any Net Cash Flow as defined below among Members in accordance with their respective Percentage Interest in Net Profits set forth in Exhibit B, but only to those persons or entities recognized on the books of Company as Members or as assignees of interests on the day of the distribution. With respect to any fiscal period, Net Cash Flow means all cash revenues of Company during that period (including interest or other earnings on the funds of Company), less the sum of reserves for the following amounts:

(i)    All payments of principal and interest on any indebtedness of Company;

(ii)    All payments for carrying costs or operating costs incurred incident to the operation of the business of Company and in accordance with the terms of the Agreement; and

(iii)    Reasonable working capital funds for contingencies incident to the conduct of the business of Company.

*Act § 17250, 17254*

34

5.3        ALLOCATIONS OF NET PROFITS AND LOSSES AND DISTRIBUTIONS IN RESPECT OF TRANSFERRED MEMBERSHIP INTERESTS

If any Interest is transferred, or is increased or decreased by reason of the admission of a new Member or otherwise, during any fiscal year of Company, each item of income, gain, loss, deduction, or credit of Company for such fiscal year shall be assigned pro rata to each day in the particular period of such fiscal year to which such item is attributable (i.e., the day on or during which it is accrued or otherwise incurred) and the amount of each such item so assigned to any such day shall be allocated to the Member based upon its respective Interest at the close of such day.

For the purpose of accounting convenience and simplicity, Company shall treat a transfer of, or an increase or decrease in, an Interest in Company which occurs at any time during a semi-monthly period (commencing with the semi-monthly period including the date hereof) as having been consummated on the first day of such semi-monthly period, regardless of when during such semi-monthly period such transfer, increase, or decrease actually occurs (i.e., sales and dispositions made during the first 15 days or any month will be deemed to have been made on the 16th day of the month).

Notwithstanding any provision above to the contrary, gain or loss of Company realized in connection with a sale or other disposition of any of the assets of Company shall be allocated solely to the parties owning Interests in Company as of the date such sale or other disposition occurs.

5.4        DISTRIBUTIONS OF ASSETS BY COMPANY

Distributions of assets with respect of an Interest in Company shall be made only to the Members who, according to the books and records of Company, are the holders of record of the interests in respect of which such distributions are made on the actual date of distribution. Neither Company nor any Member shall incur any liability for making distributions in accordance with the provisions of the preceding sentence, whether or not Company or the Member has knowledge or notice of any transfer or purported transfer of ownership of Interest in Company which has not been approved by unanimous vote of the Members.

5.5        LIMITATIONS ON RIGHTS TO DISTRIBUTIONS

No Member shall be entitled to any distribution from Company until Company actually makes the distribution. No Member shall have the right to demand that any distribution be paid in any form other than cash.
Act §17252(d), §17253(a) and §17253(b).

5.6        IMPAIRMENT OF CAPITAL AND LIMITATIONS ON DIVISION AND DISTRIBUTION OF NET PROFITS

35

Company may, from time to time, divide the net profits of its business and distribute the same to the Members of Company upon the basis stipulated in this Article V; provided that after distribution is made, the assets of Company are in excess of all liabilities of Company except liabilities to Members on account of their Capital Contributions after giving effect to all distributions, revaluations and allocations.

5.7     ORDER OF APPLYING DISTRIBUTIONS

Subject to Paragraph 2.4 relating to limitations on withdrawal of capital contributions by Members, Paragraph 5.5 relating to limitations on rights to distributions of assets by Company, and Paragraph 5.6 relating to impairment of capital and limitations on division and distribution of net profits and Paragraph 8.6 relating to limitations on payments made in dissolution, the provisions of the Agreement relating to cash distribution shall be applied in the following order:

(i)     Distribution of Net Cash Flow as permitted under Paragraph 5.2;

(ii)    Distribution of cash from the Purchase of a  Member's Interest as provided in Paragraph 9.2;

(iii)   Distribution of cash from payment of liabilities upon dissolution of Company as provided in Paragraph 8.5.

In exercising any discretion permitted under the Agreement concerning the distribution of assets, the Managers shall not be required to make any distribution under a given paragraph of the Agreement assigned a higher order before making a distribution under a lower priority paragraph of the Agreement.

## ARTICLE VI

## Accounting, Records, and Reporting

6.1        ACCOUNTING DECISIONS AND RELIANCE ON OTHERS

The Managers shall make all decisions as to accounting matters, except as otherwise specifically set forth herein..   The Managers may rely upon the advice of the independent accountants of the Company as to whether such decisions are in accordance with accounting methods followed for federal income tax purposes.

6.2        MAINTENANCE OF BOOKS AND RECORDS AND ACCOUNTING

The Managers shall cause the books and records of Company to be kept, and the financial position and the results of its operations recorded, in accordance with the accounting methods followed for federal income tax purposes.   The books and records of Company shall reflect all Company transactions and shall be appropriate and adequate for Company's business. The fiscal year of Company for financial reporting and for federal income tax purposes shall be the calendar year.

6.3        PROVISION OF ACCESS FOR MEMBERS TO ACCOUNTING RECORDS

The Managers shall cause all books and records of Company to be maintained at any office of Company or at Company's principal place of business, and each Member or holder of an Economic Interest, and his duly authorized representative, shall have access to them at such office of Company and the right to inspect and copy them at reasonable times.
*Act §17106.*

6.4        DELIVERY OF ANNUAL TAX INFORMATION TO MEMBERS

The Managers shall use their best efforts to deliver to each Member within 90 days after the end of each fiscal year all information necessary for the preparation of such Member's federal income tax return.  Company shall also use its best efforts to prepare, within 120 days after the end of each fiscal year, a financial report of Company for such fiscal year, containing a balance sheet as of the last day of the year then ended, an income statement for the year then ended, a statement of cash flows, and a statement of reconciliation of the Capital Accounts of Members.

6.5        HANDLING OF TAX MATTERS FOR COMPANY

One of the persons serving as Manager who is also a Member, or in the event no Manager is a Member, one of the Members shall be designated as "Tax Matters Partner" (as defined in Code Section 6231), to represent Company (at Company's expense) in connection with all examinations of Company's affairs by tax authorities, including resulting judicial and administrative proceedings, and to expend Company funds for professional services and costs associated therewith. In its capacity as "Tax Matters Partner", the designated Member shall oversee Company tax affairs in the overall best interests of Company. Unless the Members designate another Member to be "Tax Matters Partner," the Manager appointed to the office of president shall be the "Tax Matters Partner," provided the appointee is a Member.

6.6        FEDERAL INCOME TAX ELECTIONS MADE BY MANAGERS

The Managers on behalf of Company may make all elections for federal income tax purposes, including but not limited to, the following:

A.        Accounting Period

Managers may elect any annual accounting period for Company permitted under the Code.

B.        Accounting Method

For financial reporting purposes, the Managers may elect that the books and records of Company shall be kept according to any method of accounting applied in a consistent manner that shall reflect all transactions of Company and be appropriate and adequate for the purposes of Company. To the extent permitted by applicable law and regulations, the Managers may elect to use an accelerated depreciation method on any depreciable unit of the assets of Company; and

C.        Adjustment of Basis of Assets

In case of a transfer of all or part of the Interest of any Member, the Managers on behalf of Company may elect, pursuant to Code Sections 734, 743, and 754 of the Code, as amended (or corresponding provisions of future law) to adjust the basis of the assets of Company.

6.7        OBLIGATIONS OF MEMBERS TO REPORT ALLOCATIONS ON TAX RETURNS

38

Members are aware of the income tax consequences of the allocations made by Article V of the Agreement and hereby agree to be bound by the provisions of this Paragraph 6.7 in reporting their shares of Company income and loss for federal income tax purposes.

6.8      ANNUAL FILING OF LIST OF MANAGERS AND DESIGNATION OF AGENT FOR SERVICE OF PROCESS

Managers on behalf of Company shall, within ninety (90) days after filing the original Articles and annually thereafter on or before the last day of the month which the anniversary date of the filing of the original Articles occurs in each year, file with the Secretary of State an annual statement on a form prescribed by the Secretary of State and enclose any required filing fee.  The statement required to be filed must contain all of the information required by Act Section 17060.

*Act § 17060.*

## ARTICLE VII

### Transfer and Assignment of Interests

7.1      RESTRICTIONS ON TRANSFERS AND ASSIGNMENTS
         OF MEMBERSHIP INTERESTS

In addition to any other restrictions found in the Agreement, no Member shall assign, convey, sell, encumber or in any way alienate all or any part of his Interest in Company: *(i)* without registration or qualification under applicable federal and state securities laws, or unless he, she or it delivers an opinion of counsel satisfactory to Company that registration under such laws is not required; or *(ii)* if the Interest to be sold or exchanged, when added to the total of all other Interests sold or exchanged in the preceding twelve (12) consecutive months prior thereto, would result in the termination of Company for federal income tax purposes under Code Section 708(b)(1)(B).

[No Member shall be entitled to assign, convey, sell, encumber or in any way alienate all or any part of his Membership Interest in Company and as a Member except with the prior written consent of the other (non-transferring) Members [then holding a majority of non-transferred profits, or then holding a majority of non- transferred capital interests or constituting a majority in number of non-transferring Members] which consent may be given or withheld, conditioned or delayed (as allowed by the Agreement or the Act), as the other (non-transferring) Members may determine in their sole discretion.  Transfers in violation of this Paragraph 7.1 shall only be effective to the extent set forth in Paragraph 7.4, below.]
*Act § 17100(a)(2) and §17301.*

7.2      SUBSTITUTION OF MEMBERS AFTER TRANSFER
         OF A MEMBERSHIP INTEREST

A transferee of an Interest shall have the right to become a substitute Member with full management, participation, and voting rights under the Agreement only if *(i)* the requirements of Paragraph 7.1 relating [to the required consent of other Members and] to securities law requirements concerning  registration or qualification and tax requirements to avoid a termination are met, *(ii)* such Person executes an instrument satisfactory to the Remaining Members accepting and adopting the terms and provisions of the Agreement, and *(iii)* such person pays any reasonable expenses in connection with his, her or its admission as a new Member.  An assignee who becomes a substituted Member has, to the extent assigned, the rights and powers of a Member under the Articles, the Agreement and the Act.  An assignee who becomes a substituted Member is also liable for obligations to contribute to capital and to return any unlawful distributions made to assignee.
*Act § 17303(b).*

7.3       EFFECTIVE DATE OF PERMITTED TRANSFERS
          OF A MEMBERSHIP INTEREST

Any permitted transfer of all or any portion of a Membership Interest in Company will take effect on the first day of the month following receipt by the Members of written notice of transfer. Any transferee of an Interest in Company shall take subject to the restrictions on transfer imposed by the Agreement.

7.4       EFFECT OF TRANSFERS OF INTEREST IN VIOLATION OF AGREEMENT

Upon any transfer of an Interest in Company in violation of the Agreement, the transferee shall have no right to participate in the management of the business and affairs of Company or to become a Member thereof. The transferee shall hold only an economic interest and be entitled to an allocation of the share of Net Profits, Net Losses, distributions, and returns of capital to which the transferor of such Interest in Company would otherwise be entitled. Until the assignee of an Interest in Company becomes a Member, the assignor continues to be a Member and to have the power to exercise any rights and powers of a Member, including the right to vote.
*Act § 17301(a)(4).*

7.5       PLEDGE OR GRANT OF SECURITY INTEREST NOT A TRANSFER

The pledge or granting of a security interest, lien or other encumbrance in or against any or all of the Interest of a Member shall not cause the Member to cease to be a Member or to grant anyone else the power to exercise any rights or powers of a Member.
*Act § 17301(c).*

41

## ARTICLE VIII

### Dissolution, Winding Up and Disassociation Events

8.1        CONDITIONS OF DISSOLUTION OF COMPANY

Company shall be dissolved, its assets shall be disposed of, and its affairs wound up on the first to occur of the following:

(i)        The expiration of the period fixed for the duration of Company term as stated in its Articles;

(ii)        A determination by the unanimous written agreement of all Members that Company shall be dissolved and wound up;

(iii)        The sale of all or substantially all of the assets of Company unless Members holding a Majority-In-Interest consent to the continuation of business by Company; or

(iv)        The entry of a decree of judicial dissolution by a court of competent jurisdiction pursuant to California Corporations Code 17351.
*Act § 17350.*

[(v)        The occurrence of a Disassociation Event and the failure of either· *(a)* Company or the Remaining Members to purchase the Interest of the Former Member as provided in Paragraph 8.7 B, or *(b)* the other Members to provide written consent for the transfer resulting in the occurrence of the Disassociation Event or *(c)* Members holding a Majority-In-Interest to provide written consent to the continuation of business of Company provided in all cases that Company will have at least two remaining Members;]

8.2        FILING OF STATEMENT OF INTENT TO DISSOLVE COMPANY

As soon as possible following the occurrence of any of the events specified in Paragraph 8.1, Managers on behalf of Company shall execute a Certificate of Dissolution in such form as shall be prescribed by the Secretary of State and shall file the certificate as required by the Act. Upon the filing of the Certificate of Dissolution, the Company shall cease to carry on its business, except insofar as may be necessary for the winding up of its business. Its separate existence shall continue until the Certificate of Cancellation of articles of organization has been filed with the Secretary of State or until a decree dissolving the company has been entered by a court of competent jurisdiction. The Managers who filed the Certificate of Dissolution shall cause to be filed in the office of, and on a form prescribed by, the Secretary of State, a Certificate of Cancellation of Articles of Organization upon the winding up of the affairs of Company.
*Act § 17356.*

42

### 8.3    WINDING UP AFFAIRS OF COMPANY

Upon the occurrence of any of the events specified in Paragraph 8.1, Company shall continue solely for the purpose of winding up its affairs in an orderly manner, liquidating its assets, disposing of and conveying its property, collecting and dividing its assets, satisfying the claims of its creditors and prescribing and defending actions by or against company in order to collect and discharge obligations. No Member shall take any action that is inconsistent with, or not necessary to or appropriate for, winding up the business and affairs of Company.    To the extent not inconsistent with the foregoing, all covenants and obligations in the Agreement shall continue in full force and effect until such time as the assets have been distributed and Company has terminated.

*Act § 17354.*

### 8.4    RESPONSIBILITY FOR WINDING UP AFFAIRS OF COMPANY

Managers who have not wrongly dissolved Company or if none, the Members shall be responsible for overseeing the winding up and liquidation of Company, shall take full account of the liabilities of Company and its assets, shall cause its assets to be liquidated as promptly as is consistent with obtaining the fair market value thereof, and shall cause the proceeds therefrom, to the extent sufficient therefor, to be applied and distributed as next provided.    The persons responsible for winding up the affairs of Company shall give written notice of the commencement of winding up by mail for all known creditors and claimants whose addresses appear on the records of Company.

*Act § 17351.*

### 8.5    ORDER OF PAYMENT OF LIABILITIES UPON DISSOLUTION

In settling accounts of Company after dissolution, the Managers shall settle the liabilities of Company with payments in the following order, as required by the Act:

(i)    To creditors other than Members, in the order of priority as provided by law, except those to Members of Company on account of their contributions;

(ii)    To creditors who are Members in order of priority except amounts owed to Members on account of their contributions;

(iii)    To Members of Company in respect of their share of the Net Profits and other compensation by way of income on their contributions;

(iv)    To Members for return of their contributions; and

(v)    To Members of Company in accordance with the respective positive account capital balances after giving effect to all Capital Contributions, distributions, revaluations and allocations required under this Agreement.
*Act § 17353.*

## 8.6    LIMITATIONS ON PAYMENTS MADE IN DISSOLUTION

Except as otherwise specifically provided in the Agreement, each Member shall only be entitled to look solely at the assets of Company for the return of his positive capital account balance. Managers or Members winding up the affairs of Company shall be entitled to reasonable compensation. All payments to the Members upon the winding up and dissolution of Company shall be strictly in accordance with the positive capital account balance limitation and other requirements of Regulations Section 1.704-1(b)(2)(ii)(d).
*Act § 18352(c).*

## 8.7    CONSEQUENCES OF DISASSOCIATION EVENT

A.    Consent to Continue Business of Company

Upon the occurrence of any event, described as a condition for dissolution of Company under Paragraph 8.1 if any, Company shall dissolve unless the remaining Members holding a Majority-In-Interest consent in writing to the continuation of the business of Company. If the Member whose actions or conduct constitute one or more of the conditions of dissolution of company described in Paragraph 8.1 ("Former Member") or such Former Member's trustees or heirs, rightfully demands the return of the Capital Account of a Member by a written notice to the remaining Members, Company (with consent in writing of the remaining Members holding a Majority-In-Interest) may, within six (6) months following such written notice, purchase the Former Member's Interest as provided in Paragraph 8.7 B to avoid dissolution of Company.

B.    Purchase of Interest of a Member

Upon the occurrence of any Disassociation Event described as a condition for dissolution of Company under Paragraph 8.1 if any, and the unanimous consent by the remaining Members holding a Majority-In-Interest to continue the business of Company, and if applicable, the rightful demand for the return of its Capital Account by the Former Member or such Former Member's trustee or heirs, upon the inheritance or transfer by operation of law to any person, the other Members (the "Remaining Members") shall have an option to purchase such Membership Interest. Within ninety (90) days of the Unanimous Consent or within ninety (90) days of the receipt of the rightful demand for the return of its Capital Account by the Former Member or by such Former Member's trustee or heirs, or within ninety (90) days of the inheritance or transfer by operation of law to a person, the Remaining Members shall notify the Managers in writing of their desires to purchase a portion of the Former Member's Interest.

44

8.8        FAILURE TO SUBMIT NOTICE OF PURCHASE

The failure of any Remaining Member to submit a notice within the applicable period shall constitute an election on the part of the Remaining Member not to purchase any of the Former Member's Interest under Paragraph 8.7 B. Each Remaining Member shall be entitled to purchase a portion of the Former Member's Interest based on the Remaining Member's pro rata part on the date of the Unanimous Consent or the date of receipt of the rightful demand for the return of its Interest by the Former Member or such former Member's trustee or heirs.

8.9        ELECTION TO PURCHASE LESS THAN ALL OF AN INTEREST

In the event any Remaining Member elects to purchase none or less than all of its pro rata part of the Former Member's Interest pursuant to Paragraph 8.7 B, then, at its election, those Remaining Members can elect to purchase more than their pro rata part, i.e., the proportion that the Percentage Interest of the Former Member bears to the aggregate of the Percentage Interests of all Members and the Former Member. If the Remaining Members fail to purchase the entire interest of the Former Member, Company may elect to purchase the unpurchased portion of the Former Member's Interest. If none of the above elects to purchase, the same shall pass by operation of law to any assignee or shall remain in the hands of the Former Member, subject to any right of the holder of such interest to demand payment therefore according to California law. Notwithstanding any provision of the Agreement to the contrary, the remaining Members may mutually agree to an allocation of the Former Member's Interest to be purchased by each of them.

8.10       VALUATION OF INTEREST OF A MEMBER

For purposes of Paragraph 8.7, the Former Member's Interest shall be valued as a pro rata portion of the book value of all Interests as determined for federal income tax purposes, provided, however, if the Former Member or such Former Member's trustee or heirs or any Remaining Member electing to purchase or Company if it elects to purchase, deems the book value to vary from fair market value by more than ten percent (10%), such person shall be entitled to require an appraisal. In such event, the Former value of the Former Member's Interest shall equal the fair market value of the Interest as determined by agreement within ninety (90) days after the notice to remaining Members or, in case of a failure to agree within such ninety (90) day period, as determined by three appraisers, one selected by the Former Member or such Former Member's trustee(s) or heir(s), one selected by the Remaining Member, and one selected by the two appraisers so named. The fair market value of the Former Member's interest in Company shall be the average of the two appraisals closest in amount to each other. In the event the fair market value is determined to be within ninety-five percent (95%) of book value, the party requesting such appraisal shall pay all expense of the same otherwise incurred by the parties offering to enter into the transaction at the book valuation.

8.11       PAYMENT OF PURCHASE PRICE FOR MEMBERSHIP INTEREST

For purposes of Paragraph 8.7, the purchase price shall be paid by Company or the Remaining Member, as the case may be, either:  *(i)* in ten (10) equal annual installments of principal together with interest, commencing to accrue from the date of closing, at the then current Applicable Federal Rate (the "AFR") under Section 1274(d) of the Code for the month in which the first payment is made (or a rate per annum equal to what the AFR would be for such month under IRC Section 1274(d) of the Code if the AFR is no longer published) to fully amortize such purchase price over such ten (10) payments with the first payment being due and payable 60 days after the determination of the fair market value of the Former Member's Interest in Company, or *(ii)* within 60 days after the determination of the fair market value of the Former Member's Interest in Company, as Company or the Remaining Member, as the case may be, may elect in their sole discretion.

8.12        PURCHASE TERMS VARIED BY AGREEMENT

Nothing contained herein is intended to prohibit Members from agreeing upon terms and conditions for the purchase by Company or any Member of the Interest of any Member in Company desiring to retire, withdraw or resign, in whole or in part, as a Member (on such terms and conditions as may be agreed upon by the selling Member and Company or the remaining Members as the case may be), nor is anything herein intended to limit or otherwise affect the ability of a Member to demand a return of his, her or its contribution to Company as provided in the Act.

# ARTICLE IX

### Indemnification

9.1      INDEMNIFICATION OF MEMBERS AND MANAGERS

To the greatest extent not inconsistent with the Act and the other laws and public policies of the State of California, Company shall indemnify against expenses and liabilities any Member or Manager made a party or who was threatened to be made a party to any proceeding by Company or another because such party is or was a Member or Manager, as a matter of right, against all liability incurred by such person in connection with any action, suit, or proceeding or any threatened, pending or complete action of suit or proceeding; whether civil, criminal, administrative, or investigative provided that it shall be determined in the specific case in accordance with the procedures set forth in Paragraph 9.6 that indemnification of such person is permissible in the circumstances because the person has met the standards of conduct for indemnification set forth in Paragraph 9.5.

*Act § 17155.*

9.2      ADVANCE UNDERTAKINGS FOR INDEMNIFICATION

To the greatest extent not inconsistent with the Act and other laws and public policies of the State of California, Company shall pay for or reimburse the reasonable expenses incurred by a Member or Manager in connection with any such proceeding as incurred in advance of final disposition of the action, suit, or proceeding thereof if *(i)* the person furnishes Company a written affirmation of the person's good faith belief that he, she or it has met the standards of conduct for indemnification described in Paragraph 9.5, *(ii)* the person furnishes Company a written undertaking, executed personally or on such person's behalf, to repay the advance if it is ultimately determined by a court of competent jurisdiction that such person did not meet such standard of conduct and that such person is not entitled to be indemnified, and *(iii)* a determination is made in accordance with the procedures set forth in Paragraph 9.6 that based upon facts then known to those making the determination, indemnification would not be precluded under this Article IX.

The undertaking described above must be a general obligation of the person, subject to such reasonable limitations as Company may permit, but need not be secured and may be accepted without reference to financial ability to make repayment.  Company shall indemnify a Member or Manager who is wholly successful, on the merits or otherwise, in the defense of any such proceeding, as a matter of right, against reasonable expenses incurred by the person in connection with the proceeding without the requirement of a determination described in Paragraph 9.6.

47

9.3     ADVANCEMENT OF EXPENSES

Upon demand by a Member or Manager for indemnification or advancement of expenses incurred in defending a civil or criminal suit or proceeding, as the case may be, Company shall expeditiously determine whether the Member or Manager is entitled thereto in accordance with this Article IX. The indemnification and advancement of expenses provided for under this Article IX shall be applicable to any proceeding arising from acts or omissions occurring before or after the adoption of this Agreement.

9.4     INDEMNIFICATION OF OTHERS

Company shall be empowered, but shall not be obligated, to indemnify any person who is or was an employee or agent of Company to the same extent as if such person was a Member or Manager.

9.5     STANDARDS OF CONDUCT REQUIRED FOR INDEMNIFICATION

Indemnification of a Manager or Member is permissible under Paragraph 9.1 only if *(i)* the person conducted itself in good faith, and *(ii)* the person reasonably believed that its conduct was in or at least not opposed to Company's best interest; and *(iii)* in the case of any criminal proceeding, the person had no reasonable cause to believe his, her or its conduct was unlawful. The termination of a proceeding by judgment, order, settlement, conviction or upon a plea of nolo contendere or its equivalent is not, of itself, determinative that the person did not meet the standard of conduct described in this Paragraph 9.5.

9.6     PROCEDURES TO APPROVE INDEMNIFICATION

A determination as to whether indemnification of or advancement of expenses is permissible shall be made by any one of the following procedures:

(i)     By the Members not at the time parties to the proceedings holding a Majority-In-Interest; or

(ii)     By Members or Managers not parties to the proceedings in the manner prescribed in Paragraph 9.7 below.

9.7     COURT ORDER OF INDEMNIFICATION

A Member or Manager of Company who is a party to a proceeding may apply for indemnification from Company to the court, if any, conducting the proceeding or to another court of competent jurisdiction. On receipt of an application, the court, after giving notice the court considers necessary, may order indemnification if it determines:

48

(i)    In a proceeding in which the Member or Manager is wholly successful, on the merits or otherwise, the Member or Manager is entitled to indemnification under this section, in which case the court shall order Company to pay the Member or Manager his, her or its reasonable expenses incurred to obtain such court ordered indemnification; or

(ii)    The Member or Manager is fairly and reasonably entitled to indemnification in view of all the relevant circumstances, whether or not the Member or Manager met the standards of conduct set forth in Paragraph 9.5 above.

9.8    DESCRIBED INDEMNIFICATION RIGHTS AS NON-EXHAUSTIVE

Nothing contained in this Article shall limit or preclude the exercise or be deemed exclusive of any right under the law, by contract or otherwise, relating to indemnification of or advancement of expenses to any person who is or was a Member or Manager of Company or is or was serving at Company's request as a director, officer, partner, manager, trustee, employee, or agent of another foreign or domestic company, partnership, association, limited liability company, corporation, joint venture, trust, employee benefit plan, or other enterprise, whether for profit or not.

9.9    CONSTRUCTION OF INDEMNIFICATION RIGHTS

Nothing contained in this Article IX shall limit the ability of Company to otherwise indemnify or advance expenses to any person.    It is the intent of this Article to provide indemnification to Members and Managers to the fullest extent now or hereafter permitted by the law consistent with the terms and conditions of this Article IX.    Indemnification shall be provided in accordance with this Article IX irrespective of the nature of the legal or equitable theory upon which a claim is made including without limitation negligence, breach of duty, mismanagement, waste, breach of contract, breach of warranty, strict liability, violation of federal or state securities law, violation of the Employee Retirement Income Security Act of 1974, as amended, or violation of any other state or federal law.

9.10    DEFINITIONS FOR INDEMNIFICATION PROVISIONS

A.    "Expenses" mean all direct and indirect costs (including without limitation counsel fees, retainers, court costs, transcripts, fees of experts, witness fees, travel expenses, duplicating costs, printing and binding costs, telephone charges, postage, delivery service fees and all other disbursements or out-of-pocket expenses) actually incurred in connection with the investigation, defense, settlement or appeal of a proceeding or establishing or enforcing a right to indemnification under this Section, applicable law or otherwise.

B.    "Liabilities" mean the obligations (including one incurred by way of settlement) to pay a judgment, settlement, penalty, fine, excise tax (including an excise tax assessed with respect to an employee benefit plan), or reasonable expenses incurred with respect to a proceeding.

C.    "Party" means a person who was, or is threatened to be made a named defendant or respondent in a proceeding.

D.    "Proceeding" means any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative and whether formal or informal.

9.11    INSURANCE FUNDING OF INDEMNIFICATION

To the greatest extent not inconsistent with the Act and other laws and public policies of the State of California, Company may purchase and maintain insurance or other financial arrangement for the benefit of any person who is or was a Member or Manager, employee or agent, against any liability asserted against or expenses incurred by such person in any capacity or arising out of such person's service with Company, whether or not Company would have the power to indemnify such person against such liability. The other financial arrangements made by Company may include:

(i)    The creation of a trust fund;

(ii)    The establishment of a program of self-insurance;

(iii)    The securing of its obligation of indemnification by granting a security interest or other lien on any assets of the Company;

(iv)    The establishment of a letter of credit, guaranty or surety.

No financial arrangement may provide protection for a person adjudged by a court of competent jurisdiction, after exhaustion of all appeals therefrom, to be liable for intentional misconduct, fraud, or a knowing violation of law, except with respect to the advancement of expenses or indemnification ordered by a court.

Any insurance or other financial arrangement made on behalf of a person pursuant to this Paragraph 9.11 may be provided by the Company or other person approved by Managers, if any, or by Members, if no Managers exist.

# ARTICLE X

## Miscellaneous

### 10.1    ADDITIONAL DOCUMENTS AND ACTS

Each Member agrees to execute and deliver such additional documents and instruments and to perform such additional acts as may be necessary or appropriate to effectuate, carry out and perform all of the terms, provisions, and conditions of the Agreement and the transactions contemplated hereby.

### 10.2    AMENDMENTS

All amendments to the Agreement will be in writing and approved by the vote of the Members holding a Majority-In-Interest. *Act § 17059, § 17103(b).*

### 10.3    BINDING EFFECT

Subject to the provisions of the Agreement relating to transferability, the Agreement will be binding upon and inure to the benefit of Members, and their respective distributees, successors and assigns, but only to the extent that assignment and approval by all Members is in accordance with the Act, the Articles and the Agreement.

### 10.4    COMPLETE AGREEMENT

The Agreement and the Articles constitute the complete and exclusive statement of agreement among Members. The Agreement and the Articles replace and supersede all prior agreements by and among Members or any of them. The Agreement and the Articles supersede all prior written and oral statements and no representation, statement, or condition or warranty not contained in the Agreement or the Articles will be binding on the Members or have any force or effect whatsoever.

### 10.5    EXHIBITS

All Exhibits attached to the Agreement are incorporated and shall be treated as if set forth herein.

### 10.6    GENDER AND NUMBER IN NOUNS AND PRONOUNS

Common nouns and pronouns will be deemed to refer to the masculine, feminine, neuter, singular and plural, as the identity of the person or persons, firm or corporation may in the context require. The singular shall include the plural and the masculine gender shall include the feminine and neuter, and vice versa, as the context requires. Any reference to the Code,

51

Regulations, the Act, California Statutes or other statutes or laws will include all amendments, modifications, or replacements of the specific sections and provisions concerned.

10.7       HEADINGS

All headings herein are inserted only for convenience and ease of reference and are not to be considered in the construction or interpretation of any provision of the Agreement.

10.8       MULTIPLE COUNTERPARTS

The Agreement may be executed in several counterparts, each of which will be deemed an original but all of which will constitute one and the same instrument. However, in making proof hereof it will be necessary to produce only one copy hereof signed by the party to be charged.

10.9       NO THIRD PARTY BENEFICIARY

The Agreement is made solely and specifically among and for the benefit of the parties hereto, and their respective successors and assigns subject to the express provisions hereof relating to successors and assigns, and no other person will have any rights, interest, or claims hereunder or be entitled to any benefits under or on account of the Agreement as a third party beneficiary or otherwise.

10.10      NOT FOR BENEFIT OF CREDITORS

The provisions of the Agreement are intended only for the regulation of relations among Members and Company. The Agreement is not intended for the benefit of a creditor who is not a Member and does not grant any rights to or confer any benefits on any creditor who is not a Member or any other person who is not a Member, a Manager, or an officer.

10.11      NOTICES

Any notice to be given or to be served upon Company or any party hereto in connection with the Agreement must be in writing and will be deemed to have been given and received at the earlier of (a) the time when personally delivered to the address specified by the party to receive the notice or (b) five (5) days after deposited in the United States Mail for First Class delivery. Such notices will be given to a Member at the address specified in Exhibit A hereto, as it may be amended from time to time. Any Member or Company may, at any time by giving 5 days' prior written notice to the other Members and Company, designate any other address in substitution of the foregoing address to which such notice will be given. A writing includes a facsimile transmission followed by deposit of the original communication in the United States Mail for First Class Delivery.

*Act § 17001(ao), (as).*

10.12    REFERENCES IN THE AGREEMENT

Numbered or lettered articles, paragraphs and subparagraphs herein contained refer to articles, paragraphs and subparagraphs of the Agreement unless otherwise expressly stated.

10.13    RELIANCE ON AUTHORITY OF PERSON SIGNING AGREEMENT

In the event that a Member is not a natural person, neither Company nor any Member will *(a)* be required to determine the authority of the individual signing the Agreement to make any commitment or undertaking on behalf of such entity or to determine any fact or circumstance bearing upon the existence of the authority of such individual or *(b)* be required to see to the application or distribution of proceeds paid or credited to individuals signing the Agreement on behalf of such entity.

10.14    SEVERABILITY

If any provision of the Agreement is held to be illegal, invalid, or unenforceable under the present or future laws effective during the term of the Agreement, such provision will be fully severable; the Agreement will be construed and enforced as if such illegal, invalid, or unenforceable provision had never comprised a part of the Agreement; and the remaining provisions of the Agreement will remain in full force and effect and will not be affected by the illegal, invalid, or unenforceable provision or by its severance from the Agreement. Furthermore, in lieu of such illegal, invalid, or unenforceable provision, there will be added automatically as a part of the Agreement a provision as similar in terms to such illegal, invalid, or unenforceable provision as may be possible and be legal, valid, and enforceable.

IN WITNESS WHEREOF, all of the Members of SHORB DCE _____, LLC, A California Limited Liability Company, have executed the Agreement, effective the  1/18/07 .

MEMBER: _____

DAVID KWOK
_____


MEMBER: _____

_____


\* \* \*

54

## EXHIBIT A
SHORB DCE, LLC

## CAPITAL CONTRIBUTION AND VOTING PERCENTAGE OF MEMBERS AS OF

1/18/07

| MEMBER'S NAME | MEMBER'S ADDRESS | MEMBER'S CAPITAL CONTRIBUTION | MEMBER'S PERCENTAGE VOTING INTEREST |
|---|---|---|---|
| DAVID KWOK | | $ | 100% |
| | | | |
| | | | |
| | | | |
| | | | |
| TOTALS: | | $ | 100% |

55

**EXHIBIT B**

SHORB DCE, LLC

**PERCENTAGE INTERESTS IN
NET PROFITS AND NET LOSSES AS OF**

1/18/07

| NAME OF MEMBER | MEMBER'S NET PROFITS PERCENTAGE | MEMBER'S NET LOSSES PERCENTAGE |
|---|---|---|
| DAVID KWOK | 100% | 100% |
| | | |
| | | |
| | | |
| TOTALS: | 100% | 100% |

56

| In re:<br><br>**SHORB DCE, LLC**<br><br>Debtor(s). | CHAPTER: **7**<br><br>CASE NUMBER: **2:17-bk-14240-BR** |
| --- | --- |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**800 West 6th Street., Suite 940**
**Los Angeles, CA 90017**

A true and correct copy of the foregoing document entitled (*specify*):  **EXHIBITS A AND B TO INTERESTED PARTY CURT WANG'S MOTION FOR RELIEF FROM JUDGMENT GRANTING DEBTOR'S EMERGENCY MOTION FOR ORDER AUTHORIZING DISBURSEMENT OF SURPLUS FUNDS, PURSUANT TO FRCP 60(b) AND FRBP 9024**  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On   **7/24/2018**  , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**ATTORNEY FOR CREDITOR** Leslie A Cohen leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;allie@lesliecohenlaw.com
**ATTORNEY FOR U.S. TRUSTEE** Ron Maroko ron.maroko@usdoj.gov
**ATTORNEY FOR CREDITOR** Elmer D Martin elmermartin@gmail.com
**TRUSTEE** John J Menchaca (TR) jmenchaca@menchacacpa.com, ca87@ecfcbis.com;igaeta@menchacacpa.com
**U.S. TRUSTEE** United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov
**ATTORNEY FOR CREDITOR** Carol G Unruh cgunruh@sbcglobal.net
**ATTORNEY FOR CREDITOR** Steven Werth swerth@sulmeyerlaw.com, asokolowski@sulmeyerlaw.com;kmccamey@sulmeyerlaw.com;asokolowski@ecf.inforuptcy.com;swerth@ecf.inforuptcy.com
**ATTORNEY FOR CREDITOR** Thomas B. Ure tom@urelawfirm.com

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On   **7/24/2018**  , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**United States Bankruptcy Court**
**Honorable Barry Russell**
**255 E. Temple Street, Suite 1660 / Courtroom 1668**
**Los Angeles, CA 90012**

☑ Service information continued on attached page

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**9013-3.1.PROOF.SERVICE**

| In re: **SHORB DCE, LLC** | CHAPTER **7** |
|---|---|
| Debtor(s). | CASE NUMBER **2:17-bk-14240-BR** |

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 7/24/2018 | **Yolanda Segura** | /s/ Yolanda Segura |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                                    **F 9013-3.1**

East West Bank
135 N. Los Robles Avenue
Pasadena, CA 91101-1758

MENCHACA & COMPANY LLP CPA
835 WILSHIRE BLVD., STE. 300
LOS ANGELES, CA 90017-2655

Shorb DCE, LLC
910 Shorb St.., Unit F
Alhambra, CA 91803-2448

SulmeyerKupetz PC
333 S Hope St 35th Fl
Los Angeles, CA 90071-1406

Curt Wang
802 E, Mission Rd.
San Gabriel, CA 91776-2716

East West Bank
1001 Fair Oaks Ave
South Pasadena, CA 91030-3309

East West Bank
135 N. Los Robles
Pasadena, CA 91101-1758

Elke Coffey
912 Shorb St Unit A
Alhambra Ca 91803-2445

FRANCHISE TAX BOARD
BANKRUPTCY SECTION MS A340
PO BOX 2952
SACRAMENTO CA 95812-2952

INTERNAL REVENUE SERVICE
300 North Los Angeles Street
M/S 5022
Los Angeles, CA 90012

James Wang
802 E. Mission Rd.
San Gabriel, CA 91776-2716

LOS ANGELES COUNTY TREASURER AND TAX COLLECT
PO BOX 54110
LOS ANGELES CA 90054-0110

LOs Angeles County Tax Collector
225 N Hill Street
Los Angeles CA 90012-3253

Law Offices of Tom C Tsay Inc
208 E Valley Blvd Ste C
San Gabriel CA 91776-6514

Stephen Forde
1613 Chelsea Road
San Marino CA 91108-2419

The Wright Trust dated 11/19/1984
Carol G Unruh
3000 S Robertson Blvd Ste 215
Los Angeles, CA 90034-3156

William B Wright
Carol G Unruh
3000 S Robertson Blvd Ste 215
Los Angeles, CA 90034-3156

William B Wright as Trustee of the
William Barber Wright Revocable Trust
Carol G Unruh
3000 S Robertson Blvd Ste 215
Los Angeles, CA 90034-3156

JOHN J MENCHACA
835 Wilshire Boulevard, Suite 300
Los Angeles, CA 90017-2655

Kevin Tang
601 S Figueroa St Ste 4050
Los Angeles, CA 90017-5879

Leslie A Cohen
Leslie Cohen Law PC
506 Santa Monica Bl Ste 200
Santa Monica, CA 90401-2413

William B. Wright
c/o Law Offices Of Carol G. Unruh
3000 S. Robertson Blvd.
Suite 215
Suite 215
Los Angeles, CA 90034-3156

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).